1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| KING COUNTY, a Washington municipal corporation, | Civil Action No. |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| ALEX M. AZAR II, in his official capacity as SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Defendants. | |

## I.    INTRODUCTION

This is an action pursuant to the Administrative Procedure Act ("APA") challenging the U.S. Department of Health and Human Service's ("HHS") unlawful, premature termination of a five-year teen pregnancy prevention program grant award to Plaintiff King County ("King County" or the "County") three years into the program.

Established in 2010, Congress created the Teen Pregnancy Prevention ("TPP") Program to bring a rigorous, evidence-based focus to developing, studying, and replicating effective teen

**COMPLAINT** - 1

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

pregnancy prevention and adolescent health programs.  Lauded by medical groups and HHS itself as contributing to sharp declines in teen pregnancy over the past six years, and hailed as a "poster-child" for science-based policy, the TPP Program has been an unqualified success.

In July 2015, HHS awarded King County a five-year grant for a long-term study of its High School Family Life and Sexual Health—or FLASH—curriculum, a medically accurate, science-based sexual education program used widely throughout the County and elsewhere in the United States.  King County enlisted as study participants school districts in Minnesota and Georgia with higher than average teen pregnancy rates.

In July 2017, however, following the appointment of opponents of evidence-based programs, HHS abruptly informed all 81 TPP Program grantees (including King County) that it was terminating the Program two years early.  While no reason for this decision has been provided to the grantees, HHS officials have publicly offered shifting *post hoc* explanations, ranging from the unsupported claim that the grantee programs are ineffective to asserting that the Congressionally-mandated TPP Program is not in line with the President's proposed budget. Even if they could be credited, none of these explanations provides a basis for termination under HHS's own regulations.  And, none of them permits HHS to thwart Congress's clear mandate.

During the first two years of the grant, including just a few weeks before HHS sent notice of termination, HHS consistently praised the County for the quality of its study and program. HHS's about-face has stopped the study in its tracks, rendering useless three years of data and $3 million in federal funds spent; cut off several participating school districts before they have incorporated the High School FLASH curriculum into their health classes; and deprived high-risk students of quality pregnancy prevention education.

**COMPLAINT** - 2

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

HHS's actions were arbitrary, capricious, and contrary to law, and they have harmed and continue to harm King County and the students it serves through the TPP Program.  Accordingly, HHS's actions should be set aside and HHS should be required to solicit and process King County's application for continued funding.

## II.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise out of the laws of the United States.

2.      Venue is proper under 28 U.S.C. § 1391(e).  Defendants are an agency of the United States and an official of the agency sued in his official capacity and Plaintiff King County resides in this judicial district.

## III.      PARTIES

3.      Plaintiff King County, located in Washington State, operates one of the largest metropolitan health departments in the United States, serving a population of 2.1 million.  Through its Public Health Department, King County works to protect and improve the health and well-being of all residents as measured by increasing the number of healthy years that people live and eliminating health disparities.  As relevant to this action, in July 2015, King County received a five-year grant from HHS to conduct the first scientifically rigorous study of High School FLASH's effectiveness on sexual and reproductive health behaviors.  That grant was unlawfully terminated two years early by Defendant HHS.

4.      Defendant Alex M. Azar II is the Secretary of HHS, a federal agency headquartered in Washington, D.C.  He is sued in his official capacity.

**COMPLAINT** - 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

5.      Defendant HHS is a federal agency headquartered in Washington, D.C.  HHS administers the Teen Pregnancy Prevention Program, including King County's grant under the Program, which is the subject of this action.

## IV.      BACKGROUND

### *The Health Risks of Teen Pregnancy to Mother and Child*

6.      Approximately one in four teenaged women in the United States will become pregnant before the age of 20.[1]  While the rate of teen pregnancy in the United States has declined in recent decades, it remains higher than that of other industrialized countries.[2]

7.      The vast majority of teen pregnancies are unplanned—that is, pregnancies in which the mother has said that she did not intend or want to become pregnant.[3]

8.      Teen pregnancy is linked to a variety of major social concerns, such as poverty and poor outcomes for child well-being, health, and education.[4]

9.      For example, only 38% of women who bear children during their teen years receive a high school diploma;[5] teen mothers are more likely to live in poverty and rely on government assistance than mothers who delay childbearing until past their teen years;[6] and children born into poverty are at greater risk for health issues and delays in educational advancement.[7]

---

[1] Power to Decide [formerly The National Campaign to Prevent Teen & Unplanned Pregnancy], *Fast Facts: Teen Pregnancy in the United States* (Apr. 2016), https://powertodecide.org/what-we-do/information/resource-library/fast-facts-teen-pregnancy-united-states (citing data from the Centers for Disease Control).
[2] Guttmacher Institute, *Teen Pregnancy Rates Declined in Many Countries Between the Mid-1990s and 2011; United States Lags Behind Many Other Developed Nations* (Jan. 23, 2015), https://www.guttmacher.org/news-release/2015/teen-pregnancy-rates-declined-many-countries-between-mid-1990s-and-2011.
[3] Power to Decide, *Why It Matters*, https://powertodecide.org/what-we-do/information/why-it-matters.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] National Campaign to Prevent Teen and Unplanned Pregnancy, *Why It Matters*: *Teen Childbearing, Education, and Economic Wellbeing* (July 2012),

**COMPLAINT** - 4

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

10.     Teen mothers are also nearly twice as likely to forgo critical prenatal care in the first trimester of their pregnancies, which creates medical risks to child well-being.[8]  Teens have a higher risk of developing certain health problems during pregnancy (such as high blood pressure or anemia) than older women.[9]  Pregnant teens are also more likely than adult women to experience preterm birth.  The risks are even higher for teenage women who are younger than 15 years old and for those who do not receive prenatal care at all.[10]

11.     These issues are especially pronounced in rural areas where the birth rate of teenagers is almost 33% higher than in the rest of the country due to lack of access to health clinics, contraception, and counseling resources.[11]

### Federal Support for Evidence-Based Teen Pregnancy Prevention Initiatives and the Creation of the Teen Pregnancy Prevention Program

12.     Until 2010, most federal funding for teen pregnancy prevention initiatives was distributed without regard to whether the funded initiatives had been proven to be effective. Before then, little funding supported research on the efficacy of teen pregnancy prevention programs.  And the evidence that did exist failed to show that programs receiving funding were delivering on their promises to reduce teen pregnancy, delay sexual intercourse, or prevent other sexually risky behaviors.[12]

---

https://web.archive.org/web/20140713081524/https://thenationalcampaign.org/sites/default/files/resource-primary-download/childbearing-education-economicwellbeing.pdf.
[8] National Campaign to Prevent Teen and Unplanned Pregnancy, *Why It Matters: Teen Childbearing and Infant Health* (Oct. 2012), https://web.archive.org/web/20140803141657/https://thenationalcampaign.org/sites/default/files/resource-primary-download/childbearing-infant-health.pdf.
[9] The American College of Obstetricians & Gynecologists, *Having a Baby (Especially for Teens) Frequently Asked Questions for Teens* (Apr. 2015), https://www.acog.org/Patients/FAQs/Having-a-Baby-Especially-for-Teens.
[10] *Id.*
[11] Laura Santhanam, *Why Is the Teen Birth Rate So Much Higher in Rural Areas?*, PBS News Hour (Nov. 16, 2016, 10:28 AM), https://www.pbs.org/newshour/health/teen-birth-rate-higher-rural-areas.
[12] Sexuality Information and Education Council of the United States, *A Brief History of Federal Funding for Sex Education and Related Programs*, http://www.siecus.org/index.cfm?fuseaction=page.viewPage&pageID=1341&nodeID=1.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

13.     The lack of funding for evidence-based teen pregnancy prevention programs led the medical, public health, and scientific communities to call for federal funding for evidence-based interventions as well as new and innovative approaches to address teen pregnancy.

14.     To address that gap in funding, Congress established the TPP Program "to fund medically accurate and age appropriate programs that reduce teen pregnancy."[13]

15.     The TPP Program is administered by HHS through the Office of Adolescent Health ("OAH") and overseen by the Office of the Assistant Secretary of Health.

16.     Heralded as a "poster child" for evidence-based policy,[14] the TPP Program is designed to fund teen pregnancy prevention programs that have been proven by rigorous evaluation of their results to be effective at the community level, to test such programs with new populations and adapt them as required, and to develop and test new and innovative approaches using modern day technologies.  The program also seeks to evaluate the effectiveness of teen pregnancy prevention programs across the United States, and to expand those that are achieving results.

17.     The TPP Program focuses on proven results rather than pre-determined or ideological preferences.  It promotes curricula and other interventions that are scientifically proven to be effective and provides funds to study and evaluate new interventions in order to build a body of resources for evidence-based policy.  While some progressive advocates preferred the federal government to simply fund comprehensive sex education and contraception, and conservative advocates preferred an abstinence-only approach, the TPP Program's approach was unique: instead of advancing a particular political ideology, it posited that reliance on

---

[13] Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010), https://www.gpo.gov/fdsys/pkg/PLAW-111publ117/html/PLAW-111publ117.htm.

[14] Valerie Strauss, *Trump Administration Cuts Funding for Teen Pregnancy Prevention Programs*, Wash. Post (Sept. 7, 2017), https://www.washingtonpost.com/news/answer-sheet/wp/2017/09/07/trump-administration-cuts-funding-for-teen-pregnancy-prevention-programs-here-are-the-serious-consequences/?utm_term=.cf94ab0a8063.

**COMPLAINT** - 6

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

science and data would ultimately better address social needs and be a more effective use of government resources.[15]

18.      Many of the programs embraced by OAH and funded through the TPP Program include abstinence as part of a more comprehensive approach to sexual health and education.  A few of the TPP Program grants specifically emphasize abstinence because the particular characteristics of those projects met the rigorous standards for funding.  Through funding evidence-based approaches and studies based in scientific principles, the TPP Program has been described as providing "a library of proven choices from which communities can decide which best meets their needs."[16]  Put simply, the TPP Program funds interventions that are shown to effectively address teen pregnancy and/or that study new science-based methods, as opposed to funding programs based on political ideology.

19.      Since the TPP Program's creation in 2010, teen pregnancy rates have declined at an increasing rate and many—including OAH itself—have cited the TPP Program as contributing to this trend.

20.      In creating the TPP Program, Congress appropriated over $100 million and directed HHS to fund programs and studies as follows:

> $110,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants, of which not less than $75,000,000 shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors, of which not less than

---

[15] Charles Homer, *Teenage Pregnancy Prevention Is The Latest Front In The War On Science*, HealthAffairs: Health Affairs Blog (Aug. 18, 2017, 10:13 AM), https://www.healthaffairs.org/do/10.1377/hblog20170818.061589/full/.

[16] Valerie Strauss, *Trump Administration Cuts Funding for Teen Pregnancy Prevention Programs. Here are the Serious Consequence*s, Wash.Post (Sept. 7, 2017), https://www.washingtonpost.com/news/answer-sheet/wp/2017/09/07/trump-administration-cuts-funding-for-teen-pregnancy-prevention-programs-here-are-the-serious-consequences/?utm_term=.cf94ab0a8063.

**COMPLAINT** - 7

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

$25,000,000 shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy, and of which any remaining amounts shall be available for training and technical assistance, evaluation, outreach, and additional program support activities: Provided further, That of the amounts provided under this heading from amounts available under section 241 of the PHS Act, $4,455,000 shall be available to carry out evaluations (including longitudinal evaluations) of teenage pregnancy prevention approaches. [17]

21.    In April 2010, OAH issued two Funding Opportunity Announcements ("FOAs") related to the TPP Program.  One FOA sought applications for Tier 1 grant projects, which are designed to replicate program models that demonstrate positive impacts on key sexual behavioral outcomes, including reduction of teen pregnancy and delay of sexual activity.  The other FOA sought applications for Tier 2 grant projects, which are designed to develop and rigorously test new and innovative approaches to prevent teen pregnancy. [18]

22.    The FOAs for both Tier 1 and Tier 2 grant projects specified that the projects would be funded for a five-year grant period. [19]  The FOAs instructed applicants to, among other things, "provide a detailed five-year work plan and a timetable for the first year of the project" and to "create a logic model that provides an overview of the entire program for the five years of the cooperative agreement." [20]

23.    Between FY 2010 and FY 2014, OAH funded 102 grantees through competitively awarded grants as part of the TPP Program.  The grantees' projects reached more than half a

---

[17] Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010).

[18] Teenage Pregnancy Prevention (TPP): Research and Demonstration Programs and Personal Responsibility Education Program (PREP); Funding Opportunity Announcement and Application Instructions, http://wayback.archive-it.org/3909/20140324182153/http://www.hhs.gov/ash/oah/grants/assets/foa_tpp_tier_2.pdf [hereinafter "April 2010 Tier 2 FOA"]; Evelyn M. Kappeler and Amy Feldman Farb, *Historical Context for the Creation of the Office of Adolescent Health and the Teen Pregnancy Prevention Program*, J. Adolescent Health, 54, S3-S9 (2014).

[19] Teenage Pregnancy Prevention (TPP): Research and Demonstration Programs and Personal Responsibility Education Program (PREP); Funding Opportunity Announcement and Application Instructions, http://wayback.archive-it.org/3909/20140324182152/http://www.hhs.gov/ash/oah/grants/assets/funding_announcement_04012010.pdf [hereinafter "April 2010 Tier 1 FOA"]; April 2010 Tier 2 FOA.

[20] *Id*.

COMPLAINT - 8

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

million young people in 39 states and the District of Columbia.  The grantees also trained a combined 6,100 facilitators, created 3,800 community partnerships, and funded over 40 rigorous evaluation studies to identify the factors that contribute to the effectiveness of specific programs.[21]

***OAH Awards Additional Five-Year Pregnancy Prevention Program Grants, Including a Grant to Plaintiff King County***

24.     Since the first group of TPP Program grants was competitively awarded, Congress has continued to appropriate funds for the TPP Program through formal appropriations bills and continuing budget resolutions.

25.     To both extend the reach of existing evidence-based teen pregnancy prevention approaches to at-risk populations and to develop new interventions, OAH issued new FOAs in January 2015 requesting applications for a second cohort of competitive, five-year grants (collectively, the "2015 FOAs").  The 2015 FOAs announced various types of available awards, including for programs that provide capacity-building assistance to replicate evidence-based TPP Programs in defined service areas with demonstrated needs (known as Tier 1A grants), and for programs to replicate evidence-based TPP Programs to scale in communities with the greatest need (known as Tier 1B grants).

26.     As relevant to King County, the 2015 FOAs also announced awards for programs intended to "increase the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches for preventing teen pregnancy and related risk behaviors."[22]  Per the Tier 2B FOA, these Tier 2B grants were "designed to address gaps in the existing evidence and reduce adolescent sexual and reproductive health disparities," particularly

---

[21] Office of Adolescent Health, HHS, *Results from the OAH Teen Pregnancy Prevention Program*, https://www.hhs.gov/ash/oah/sites/default/files/tpp-cohort-1/tpp-results-factsheet.pdf.
[22] Office of Adolescent Health, Rigorous Evaluation of New or Innovative Approaches to Prevent Teen Pregnancy (Tier 2B) https://www.hhs.gov/ash/oah/sites/default/files/tier2b-foafile.pdf [hereinafter "Tier 2B FOA"].

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

in populations, such as LGBT youth and rural youth, that are "at disproportionate risk for teen

pregnancy" and "where limited evidence-based TPP Programs [are] currently available."[23]

27.     For purposes of these awards, OAH defined "innovation broadly as new or

promising approaches, strategies, interventions, or curricula, informed by scientific theory or

empirical evidence that may lead to or have the potential to result in a substantial reduction in

teen pregnancy rates, sexually transmitted infection (STIs) rates, and associated sexual risk

behaviors," including curricula that "had been in use for some years but ha[d] never been

rigorously evaluated."

28.     The Tier 2B FOA announced that OAH would fund approximately $18 million

for Tier 2B grants.

29.     Due to the "substantial programmatic involvement . . . anticipated between OAH

and the grantee during performance of the project," the Tier 2B FOA specified that the grants

would be funded "in the form of a five-year cooperative agreement with the grantee" under

which OAH, among other things, would review all implementation and evaluation plans as well

as "all program materials prior to use in the project to ensure the materials are medically accurate

and complete."[24]

30.     The Tier 2B FOA established five-year "project period[s]" and one-year "budget

periods" for the grants, meaning that for each of the five grant years, the recipient would be

required to submit a "[n]on-competing [c]ontinuation [a]pplication," consisting of a "progress

report for the current budget year, and work plan, budget and budget justification for the

upcoming year."  The Tier 2B FOA further stated that funding for these subsequent years would

---

[23] *Id.*
[24] Tier 2B FOA.

**COMPLAINT** - 10

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

be "generally level with the initial award amount and . . . contingent upon the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds."[25]

31.     Grounds for termination of any grant awarded under the Tier 2B FOA were limited to a grantee's failure to (1) "meet major milestones as required/defined by OAH"; (2) "receive OAH approval for their evaluation plan by the end of year one"; (3) "complete planning year milestones and receive OAH approval to begin implementation and evaluation of the intervention no later than 12 months after receipt of funding"; or (4) "collect and report on the full set of performance measures at any time during the grant cycle."[26]

32.     The Tier 2B FOA set forth detailed evaluation and review criteria for grant applicants.  The proposals were to be scored by an independent panel consisting of experts in teen pregnancy prevention drawn from academic institutions, non-profit organizations, state and local government, and other federal agencies.

### King County's FLASH Curriculum and 2015 FOA Application

33.     Over 30 years ago, King County developed a medically accurate sexual health education curriculum, known as Family Life and Sexual Health, that has been periodically updated to maintain medical and scientific accuracy.  In 2015, High School FLASH was again updated to align with health standards published by the Centers for Disease Control and Prevention. The goals of the 15-lesson, science-based High School FLASH curriculum are to prevent teen pregnancy, sexually transmitted diseases ("STDs"), and sexual violence, especially in vulnerable populations such as LBGT youth, teens in foster care, and youth who have experienced trauma.  In addition to high school, the FLASH curriculum is available with age-appropriate material for elementary, middle school, and special education classrooms.

---

[25] *Id.*
[26] *Id.*

**COMPLAINT** - 11

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

34.     High School FLASH prepares students to abstain from sex, use condoms and birth control when they do have sex, confirm consent before engaging in sexual activity, communicate with their families about sexual health, make decisions that minimize risk to their sexual health, and seek medical attention in order to take care of their reproductive health.  High School FLASH includes a variety of strategies designed to build skills in order to reduce rates of pregnancy, STDs, and sexual violence.  High School FLASH includes a strong family-involvement component in order to increase protective factors that support students in remaining abstinent, using birth control and condoms, and respecting others' decisions not to have sex. High School FLASH supports and respects diverse community values through its inclusive design, its use of the values questions protocol, and family homework, which encourages discussion about values between parent or guardian and child.

35.     FLASH is presently taught in every school district in King County; collectively, those communities have seen a 63% reduction in teen pregnancy rate since 2008.  FLASH has also received national acclaim and is used in 44 states.

36.     In its TPP Program grant application, King County proposed to recruit and randomize schools located in two regions outside of Washington State with higher-than-average teen pregnancy rates, provide baseline surveys of these students' sexual health, and then provide students with either the High School FLASH curriculum (taught by local health educators) or a standard control curriculum (taught by their regular health teacher).  Following administration of the curricula, King County proposed to survey students at three- and 12-month intervals in order to assess the long-term impact of High School FLASH on, among other things, initiation of sexual intercourse, use of contraceptives, STD testing, and family communication regarding sexual health.  For agreeing to participate, each of the schools would receive the High School

**COMPLAINT** - 12

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

FLASH curriculum for each of their teachers; in-person teacher training by King County health education specialists; and an annual stipend of $2,600. Each participating student was to receive a modest incentive such as a gift card to participate.

37.     In response to the 2015 FOA, King County submitted a Tier 2B grant proposal to conduct a five-year randomized control trial to test the efficacy of High School FLASH in what was to be the first-ever scientifically rigorous evaluation of the program.

38.     On July 1, 2015, OAH awarded King County a five-year, $5 million grant, with $1 million to be awarded annually. Reviewers of King County's application proposal found that it used "strategies . . . informed by science theory and empirical evidence"; "demonstrate[d] a very high level, impressive, relevant and accurate perspective on 'best practice' approaches to public health planning for achieving equitable [sexual reproductive health] for all youth"; and "fill[ed] a significant gap in rigorous research and evaluation and address[ed] disparities in adolescent [sexual reproductive health] by focusing on youth in high schools in a diverse, inclusive, and equitable manner."[27]

39.     On July 6, 2015, King County received a letter of congratulations from OAH Director Evelyn Kappeler, stating that the office was looking "forward to working with you over the next five years to support your project and ensure your continued success."[28] Ms. Kappeler also stated that the five-year grants awarded by OAH for all TPP Programs would serve 290,000 youth annually and 1.2 million youth in 38 states and the Marshall Islands.

40.     The Notice of Award and Cooperative Agreement received by King County along with Ms. Kappeler's letter established a five-year project period for the $5 million award spanning from July 1, 2015 to June 30, 2020. King County's Award fully funded its grant for

---

[27] *Id.*
[28] Letter from OAH Director Evelyn Kappeler to King County (July 6, 2015).

**COMPLAINT** - 13

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

the first year of the five-year program and indicated the exact amount of funding for each subsequent grant year, noting only that this "recommended future support" was "[s]ubject to the availability of funds and satisfactory progress of the project."

41.     In 2015, HHS convened a conference in Washington, D.C. for all the Tier 2B grantees at which it announced that Mathematica Policy Research would be providing technical assistance to the grantees on study design to ensure that grantees' ultimate evaluations would meet rigorous evidence review standards.

### The Early Work and Success of King County's TPP Program Evaluation Project

42.     Following receipt of its award from OAH, King County recruited 20 schools to participate in the FLASH study: 10 high schools in urban areas in Minnesota, and 10 high schools in rural and small metropolitan areas in Georgia.  Each of the selected schools was in an area that lacked adequate sexual and reproductive health education and had higher than average teen birth rates, with students who often had significantly fewer financial and educational resources than their peers in other parts of the country.

43.     Six school boards in Minnesota and Georgia unanimously voted to adopt High School FLASH and participate in the study.

44.     King County partnered with local agencies in Minnesota and Georgia to administer the study to more than 1600 students.

45.     King County has received numerous commendations in its reviews by OAH.   For example, OAH praised King County for having "successfully completed all of [its] planning year milestones" in year one and, subsequently, for focusing on "key objectives and major activities both to implement FLASH with high quality and to evaluate FLASH rigorously."

**COMPLAINT** - 14

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

46.     To the extent these reviews included minor recommendations for improvements moving forward, King County fully addressed them.

47.     King County complied with all program requirements throughout the grant.

**HHS's Abrupt Termination of the County's TPP Program Grant**

48.     In April 2016, the County submitted a non-competing continuation application for the second year of the grant.

49.     In July 2016, OAH made a second award of $1 million to King County.

50.     On November 4, 2016, OAH awarded the County an additional $360,948 in "carry over" funding—*i.e.*, funding not used in the prior fiscal year—in addition to the $1 million to use in year two of the FLASH grant.

51.     OAH continued to support the TPP Program grants during 2016 and the first half of 2017.  On April 26, 2017, for example, in honor of Teen Pregnancy Prevention Month, HHS touted "TPP grantees work to reach young people in greatest need using evidence-based/innovative strategies."

52.     OAH also held numerous conferences and workshops during this period aimed at supporting the grants, and advised grantees about their projects.

53.     OAH also praised King County's work under its grant.  In July 2016, at OAH's invitation, the County presented at HHS's Teen Pregnancy Prevention Conference on the topic of "Strategies for Designing, Evaluating and Delivering LGBTQ-Inclusive Sexual Health Education to Improve Outcomes for All Youth."  And in a May 17, 2017 review, OAH recognized the County because its "workplan addresses all of the OAH expectations for Tier 2B grantees, including rigorous evaluation of the intervention, collection of performance measures,

**COMPLAINT** - 15

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

packaging/dissemination of the intervention, health care linkages, and implementation of the intervention in safe and supportive, inclusive environments using a trauma-informed approach."

54.     During this time, preparations were well underway by OAH to fund the grants for year three in support of the full five-year projects.  In April 2017, King County submitted a non-competing continuation application for the third year of the grant.  King County frequently conferred with career staff at OAH regarding the trajectory of its study and received an assurance that its non-competing continuation application had been processed.

55.     Yet, OAH's recently appointed political leadership had other plans, shifting the agency's course dramatically.

56.     On June 5, 2017, Valerie Huber was appointed to serve as Chief of Staff in the office of the Assistant Secretary of Health at HHS, the office that oversees OAH.  Ms. Huber is a longtime opponent of the TPP Program which she now oversees, and her appointment followed the appointment of other opponents of evidence-based programs to key positions at HHS.

57.     Prior to serving at HHS, Ms. Huber was the president of Ascend, formerly known as the National Abstinence Education Association, an association that promotes abstinence-only-until-marriage (sometimes referred to as "sexual risk avoidance") education.  Researchers at Case Western Reserve University found the sexual education programs Ms. Huber ran when she served in state government in Ohio provided "false and misleading information," perpetuated "destructive, inaccurate gender stereotypes," and presented "religious convictions as scientific fact."  One curriculum said that teenagers who have sex before marriage should "be prepared to die."[29]

---

[29] Laura Lindberg, John Santelli & Sheila Desai, *Understanding the Decline in Adolescent Fertility in the United States, 2007-2012,* http://www.jahonline.org/article/S1054-139X(16)30172-0/pdf.

**COMPLAINT** - 16

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

58.     When interviewed regarding a study published in the widely-respected Journal of Adolescent Health that attributed the recent decline in teen pregnancy rates to increased access and use of contraception, Ms. Huber discounted the study as "biased" toward birth control.[30]

59.     Ms. Huber's opposition to science-based teen pregnancy prevention programs—including specifically the TPP Program—has continued during her tenure at HHS.

### HHS's Abrupt Termination of the County's TPP Program Grant

60.     On July 6, 2017, less than two months after King County's positive appraisal from OAH officials and within a few weeks of Ms. Huber joining OAH, the County received a Notice of Award for year three stating that "[t]his award also shortens the project period to end on June 30, 2018 at the end of this budget year."  The Award also advised of "closeout requirements" due to the fact that the grant was suddenly in its final "project period."

61.     At no time was King County provided any other explanation by the agency for the termination of its grant.  Ms. Kappeler held an informal webinar for grantees shortly after the termination, but did not provide any particular explanation as to why the grants were ended.

62.     Career employees at OAH previously working to support the grants expressed surprise that the grants were terminated.

63.     According to news accounts, several grantees were told that the decision came from Ms. Huber's office.

64.     On August 3, 2017, the County appealed the grant termination to OAH and requested that OAH "reverse its decision and continue the grant period for the full five years."[31]

65.     Now half a year later, the County has still received no response to its appeal.

---

[30] Julie Royner Kaiser, *Drop in Pregnancies Is Due to More Contraceptives, Not Less Sex, PBS Newshour (Sept. 2, 2016),* https://www.pbs.org/newshour/health/teen-pregnancies-contraceptives-less-sex.
[31] Letter from King County to Evelyn Kappeler, Director (Aug 3, 2017).

**COMPLAINT** - 17

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

66.    To date, HHS has not solicited non-competing continuing funding applications for years four and five of the five-year grant.

67.    In late September 2017, OAH notified grantees that they would no longer be receiving technical and evaluation support from Mathematica.

68.    HHS's abrupt decision to eliminate the County's grant funding was done outside the traditional federal budget process and is directly contrary to the TPP Program's appropriations statute.  Congress has continued to fund the TPP Program through annual appropriations that specifically mandate funds to be used for, among other things, "competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy."

69.    Congress has not yet passed an appropriation for FY 2018, but has continued to fund the TPP Program through a series of continuing budget resolutions.

### HHS's Shifting Public Explanations for Terminating TPP Program Grants

70.    HHS has not provided an explanation to King County for the termination of its grant.  When HHS has publicly addressed the grant terminations at large, it has given shifting explanations, stating, for example, that there was "strong evidence of negative impact or no impact" by the funded projects—a purported rationale that is contradicted by the agency's own evidence and is particularly irrational as applied to Tier 2B grants, as the whole purpose of these grants was to test the impact of innovative approaches.

71.    Other agency officials, such as HHS spokeswoman Diane Gianelli, have claimed that the cuts to the TPP Program are related to the President's FY 2018 Budget.  In an email to the *LA Times*, Ms. Gianelli stated "the President's FY 2018 Budget eliminated funding for the Teen Pregnancy Prevention Program, so our grants office informed the grantees of their June 30,

**COMPLAINT** - 18

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

2018 end date, to give them an opportunity to adjust their programs and plan for an orderly

closeout."  Not only does this explanation differ from the other public explanations provided by

the agency, but it also ignores that the President's budget proposal is merely a *proposal* and has

not been enacted by Congress.  Congress continues to fund the TPP Program, notwithstanding

the President's request that it not do so.

72.     At the same time, OAH has continued to herald King County and the results of

the TPP Program more generally.  In an October 16, 2017 review, OAH wrote that King County

"continues to do an outstanding job building, leveraging, and maintaining its partnerships in all

study communities."  As recently as February 12, 2018, OAH staff commended King County for

its work in rural areas under the grant and recommended that King County share its successful

strategies with the field.

73.     In OAH's Annual Report released in November 2017, the agency touted the

program for having "more than tripled the number of youth served in 2017 compared to 2016,

reaching 213,000 young people with evidence-based and evidence-informed teen pregnancy

prevention programs" and as "a model of a Federal program developing increasingly rigorous

portfolios of evidence."

74.     Also in November 2017, HHS announced that it was directing approximately $10

million in funds for "new research and evaluation collaboration to support and improve teen

pregnancy prevention and sexual risk avoidance programs" within HHS.[32]

---

[32] Press Release, HHS, HHS Announces New Efforts to Improve Teen Pregnancy Prevention & Sexual Risk
Avoidance Programs (Nov. 6, 2017), https://www.hhs.gov/ash/oah/news/news-releases/new-sexual-risk-avoidance-
programs/index.html.

**COMPLAINT** - 19

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

*HHS's Abrupt and Unexplained Termination of the Grant Has Injured and Continues To Injure King County And the Communities Its Program Serves*

75.    OAH's decision to abruptly cut funding for the 81 TPP Program grantees jeopardizes the well-being of individuals throughout the United States, including more than one million women and children.  It has been criticized by members of Congress, the medical community, and numerous community advocates.  For example, in a letter to then-HHS Secretary Tom Price, 37 Senators stated that the action is "short-sighted and puts at risk the health and well-being of women and our most vulnerable youth who depend on the evidence-based work that TPP Program grantees are doing across the nation."[33]  The letter further noted that "[t]he TPP Program is making a vital contribution to building a body of knowledge of what works to prevent teen pregnancy."[34]  Additionally, the American College of Obstetricians and Gynecologists has called HHS's action "a step backward for ensuring healthy moms and healthy babies."[35]  It has credited the TPP Program as contributing to the sharp declines in teen pregnancy rates over the past six years.[36]

76.    HHS's actions are irreparably harming the County and countless others.  For King County, the loss of years four and five of grant funding will mean that after spending $3 million in federal funds to study High School FLASH, King County will not complete the study.  The County will not be able to analyze the data amassed in the Georgia and Minnesota schools to produce an assessment of High School FLASH that is scientifically valid and useful to the many schools, locally and nationally, that use the curriculum—the sole purpose for which King County

---

[33] Letter from Patty Murray et al., U.S. Senators, to Thomas E. Price, Sec'y of HHS (July 21, 2017), https://www.help.senate.gov/imo/media/doc/071817%20Teen%20Pregnancy%20Program%20letter%20FINAL.pdf.
[34] *Id*.
[35] Statement of Haywood L. Brown, President, American College of Obstetrics and Gynecologists, *Unintended Pregnancy Prevention is Essential to Women's Health* (July 17, 2017), https://www.acog.org/About-ACOG/News-Room/Statements/2017/Unintended-Pregnancy-Prevention-is-Essential-to-Womens-Health.
[36] *Id*.

**COMPLAINT** - 20

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

was awarded the grant.  Nor will the high schools in Minnesota and Georgia, which together serve more than 20,000 students, obtain the promised detailed survey results on the sexual health of their students.  And due to the sequencing of the study, the schools in Georgia will not receive either the High School FLASH curriculum promised for each participating teacher (a $2,000 value) or the in-person training by County experts (an $11,000 value), which would have enabled these districts to provide high-quality sexual health education going forward.  The Georgia schools, moreover, which are chronically underfunded, will be deprived of $26,000 in stipend monies; their students likewise will not receive approximately $15,400 in incentive gift cards.

77.     Due to HHS's actions, King County will imminently be forced to cut two staff positions and has had to divert critical resources used for other core programmatic activities (such as updating other grade levels of FLASH, refining teacher training for those grades, and reviewing and updating FLASH family homework assignments for younger grade levels to promote family communication) in a so far unsuccessful attempt to secure alternative funding to continue the FLASH study.  To date, King County staff have spent over 200 hours seeking alternative funding, at a cost of over $24,000 in public health resources.

## V.     CLAIMS FOR RELIEF

### Count One
### (Administrative Procedure Act, 5 U.S.C. § 706(2))

### Defendants' Termination of the County's Grant Violates the
### Administrative Procedure Act

78.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

**COMPLAINT** - 21

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

79.     The Administrative Procedure Act provides, among other things, that a court

"shall . . . hold unlawful and set aside agency action . . . [that is] arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

80.     Defendants' termination of Plaintiff's grant constitutes final agency action,

reviewable under the APA.

81.     Defendants' termination of Plaintiff's grant is contrary to law.

82.     The 2017 Consolidated Appropriations Act mandated:

> That of the funds made available under this heading, $101,000,000 shall be for
> making competitive contracts and grants to public and private entities to fund
> medically accurate and age appropriate programs that reduce teen pregnancy and
> for the Federal costs associated with administering and evaluating such contracts
> and grants, of which not more than 10 percent of the available funds shall be for
> training and technical assistance, evaluation, outreach, and additional program
> support activities, and of the remaining amount 75 percent shall be for replicating
> programs that have been proven effective through rigorous evaluation to reduce
> teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other
> associated risk factors, and 25 percent shall be available for research and
> demonstration grants to develop, replicate, refine, and test additional models and
> innovative strategies for preventing teenage pregnancy: *Provided further*, That of
> the amounts provided under this heading from amounts available under section
> 241 of the PHS Act, $6,800,000 shall be available to carry out evaluations
> (including longitudinal evaluations) of teenage pregnancy prevention
> approaches.[37]

83.     This Appropriations Act, which remained in place through continuing budget

resolutions, requires that HHS fund the TPP Program.  In particular, the Continuing

Appropriations Act, 2018, as well as subsequent acts extending it, Congress appropriated to HHS

"[s]uch amounts as may be necessary, at a rate for operations as provided in the applicable

appropriations Acts for fiscal year 2017 and under the authority and conditions provided in such

---

[37] FY 2017 Consolidated Appropriations Act, Pub. L. No. 115-131, 131 Stat. 135, 536 (2017).

**COMPLAINT** - 22

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

Acts, for continuing projects or activities . . . that were conducted in fiscal year 2017."[38]

Congress mandated that such appropriations "shall be available to the extent and in the manner

that would be provided by the [fiscal year 2017 appropriations acts]."[39]  *Id.* §103.  In terminating

the County's grant midway through the program, HHS has ignored this statutory mandate and

has improperly impounded Congressionally appropriated funds.  HHS is acting contrary to law in

violation of the APA and Congressional mandates.

84.     HHS's actions are also contrary to the Congressional Budget and Impoundment

Control Act of 1974 (the "Impoundment Control Act"), which requires that the President make

appropriated funds "available for obligation," unless the President sends a special message to

Congress detailing a request to rescind or reserve funds and Congress then passes a rescission

bill rescinding the funding.  2 U.S.C. § 683(a).  There has been no transmission of a special

message to Congress by the President seeking to have TPP Program funding rescinded and

Congress has not otherwise acted to rescind the funding.  The President is thus required by the

Impoundment Control Act to expend the appropriated TPP Program funding.  Accordingly,

Defendants' termination of the TPP grants despite continued funding for the TPP Program

constitutes final agency action contrary to the Impoundment Control Act in violation of the APA.

85.     HHS's actions are also contrary to the agency's own regulations.  HHS's

regulations provide that a Federal award may be terminated in whole or in part only where the

grantee has failed to comply with the terms and conditions of an award, for cause, with consent

of the grantee, or by the grantee upon providing written notification of the reasons for such

termination.  *See* 45 C.F.R. § 75.372(a)(1)-(4).  HHS has terminated the County's grant without

---

[38] Continuing Appropriations Act, 2018 and Supplemental Appropriations for Disaster Relief Requirements Act,
2017, Pub. L. No. 115-56, § 101, 131 Stat. 1129, 1139-40; *see* Bipartisan Budget Act of 2018, Pub. L. No. 115-123
(amending Continuing Appropriations Act, 2018, to extend appropriations through March 23, 2018).
[39] 131 Stat. 1129, 1139-40.

**COMPLAINT** - 23

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

identifying any regulatory basis for the termination or following any of the specific procedures required by governing regulations.

86. To date, HHS has failed to provide a reasoned or legally sufficient justification for terminating Plaintiff's grant.  Indeed, HHS has failed to provide any justification to King County.

87. Thus, in terminating the grant award, Defendants acted arbitrarily, capriciously, and contrary to law in the following ways, among others:

    a. terminating Plaintiff's grant award and other TPP Program grant awards in the face of a Congressional mandate;

    b. terminating Plaintiff's grant award without grounds and otherwise failing to follow HHS grant termination procedures;

    c. failing to explain the basis of its decisions;

    d. providing shifting and unreasoned *post hoc* explanations for its decisions; and

    e. making decisions based on undue political interference by agency officials rather than merit.

**Count Two**
**(Administrative Procedure Act, 5 U.S.C. § 706(1))**

**Defendants Are Unlawfully Withholding and/or Delaying Action**

88. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

89. The APA provides, among other things, that a court "shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

90. Defendants' refusal to solicit, accept, and process Plaintiff's non-competing continuation grant funding application for each of the annual terms laid out in Plaintiff's five-

**COMPLAINT** - 24

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

year grant award is agency action that has been withheld and/or unreasonably delayed in

violation of, among other things, HHS's own regulations, the Consolidated Appropriations Act,

and the APA.

91.     Defendants' refusal to continue to process Plaintiff's grant funding for each year

of the five-year term is agency action that has been withheld and/or unreasonably delayed and

violation of this provision of the APA.

**Count Three**
**(Equitable Relief to Preserve Remedy)**

92.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth

herein.

93.     Defendants are poised to transfer or otherwise obligate funds at issue in this

action.

94.     Plaintiff is entitled to a full, fair, and meaningful process to adjudicate the

unlawful termination of its grant.

95.     Plaintiff will suffer irreparable injury if Defendants transfer, disburse, or

otherwise obligate the funds that are the subject of this action before final resolution of this

matter.  *See City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1427 (D.C. Cir.

1994).

96.     Accordingly, to ensure that Plaintiff has meaningful relief should it prevail in this

action, the Court should enjoin Defendants from transferring or otherwise obligating the funds at

issue.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.     Declare Defendants' termination of the Plaintiff's grant unlawful;

**COMPLAINT** - 25

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500

2.      Order Defendants to reinstate the terms of the Notice of Award, including, but not limited to, the five-year funding term;

3.      Order Defendants to reinstate FY18 funding;

4.      Order Defendants to solicit, accept, and process the County's application for FY19 funding;

5.      Enjoin Defendants from disbursing, transferring, or otherwise obligating Plaintiff's grant funds for years four and five of its grant until this matter is adjudicated;

6.      Award Plaintiff costs, attorneys' fees, and other disbursements for this action; and

7.      Grant any other relief this Court deems appropriate.

Dated: February 15, 2018.                    PACIFICA LAW GROUP LLP

By  *s/ Gregory J. Wong*
Gregory J. Wong, WSBA #39329
Athanasios P. Papailiou, WSBA #47591
1191 2nd Avenue, Suite 2000
Seattle, WA 98101
(206) 245-1700
Greg.Wong@pacificalawgroup.com
Athan.Papailiou@pacificalawgroup.com

DEMOCRACY FORWARD
Javier M. Guzman, D.C. Bar #462679 *(Pro Hac Vice forthcoming)*
Josephine T. Morse, N.Y. Bar #4505673 *(Pro Hac Vice forthcoming)*
Skye L. Perryman, D.C. Bar #984573, TX Bar #24060411 *(Pro Hac Vice forthcoming)*
1333 H Street NW, Washington, DC 20005
(202) 448-9090
jguzman@democracyforward.org
jmorse@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiff King County*

**COMPLAINT** - 26

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.17500