1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY, a Washington municipal
corporation,

                              Plaintiff,

        v.

ALEX M. AZAR II, in his official capacity as
Secretary, U.S. Department of Health and
Human Services; and THE U.S.
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

                              Defendant.

No. 2:18-cv-00242-JCC

PLAINTIFF'S COMBINED MOTION
FOR PRELIMINARY INJUNCTION
AND FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
MAY 4, 2018

**ORAL ARGUMENT REQUESTED**

## I.  INTRODUCTION

In 2010, Congress created the Teen Pregnancy Prevention Program ("TPP Program"), a grant program administered by the U.S. Department of Health and Human Services ("HHS") to develop, study, and replicate evidence-based teen pregnancy prevention programs.  This program has been widely hailed a policy success for contributing to sharp declines in teen pregnancy.  As the first set of five-year grants was coming to an end in July 2015, HHS awarded a second set of TPP Program grants.  Plaintiff King County was one of the 81 grantees in this second cohort and received a five-year grant to conduct a long-term study of its sexual health education curriculum,

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 1
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

FLASH (Family Life and Sexual Health).  During the first two years of the grant, HHS repeatedly praised King County for the quality of its study and program.  But in July 2017, HHS made an abrupt about-face: without any explanation, and despite King County's successful performance to date, HHS informed King County that it was terminating the grant two years early—after the third year of the five-year grant.  HHS likewise—and *en masse*—terminated each of the other grants in the program.  HHS officials did not provide any contemporaneous reason for their unlawful action; instead, they have offered to the public a range of shifting after-the-fact explanations.  Even if these post hoc justifications could be credited—and they cannot—none provides a lawful basis for termination under HHS's own regulations.  *See* 45 C.F.R. § 75.372(a)(1)-(4).

Moreover, HHS's premature termination of Plaintiff's funding also ignores Congress's explicit directive that HHS continue to distribute funds pursuant to the TPP Program.  Indeed, on March 23, 2018, Congress passed an appropriations bill that once again mandated full funding for the TPP Program.  Notwithstanding Congress's unequivocal intent to continue the TPP Program, HHS is refusing to take the steps necessary to enable King County to obtain year-four funding of its grant.  Under the terms of its five-year TPP Program grant, King County is required to submit a non-competing continuation application annually to obtain funds for the upcoming budget year.  HHS, however, does not intend to process King County's continuation application for year four of the grant without a Court order directing that it do so; and HHS has represented that processing the application will take two months when it does begin that effort. *See* Stipulated Mot. and Agreed Order for Preservation of Remedy and Briefing Scheduling for Expedited Cross-Motions for a Preliminary Injunction and Summary Judgment ("Stip. Mot."), ¶ 4, ECF No. 18.  King County cannot wait.  HHS's refusal to process these applications during

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 2
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

the pendency of this suit threatens to leave King County without a meaningful remedy.  If King County does not receive funding by August 1, 2018 (at the latest), then it cannot effectively complete its study, rendering three years of work useless.

HHS's decision to terminate all TPP Program grants, including King County's grant, was arbitrary, capricious, and contrary to law—in clear violation of the Administrative Procedure Act ("APA").  But absent an expeditious decision on the merits, any relief from this Court may come too late to matter.  Accordingly, King County immediately requests a preliminary injunction directing HHS to process King County's non-competing continuation application for its fourth budget year.  King County further requests expedited consideration of the instant summary judgment motion.  It is undisputed that HHS terminated King County's five-year grant without any explanation.  The Parties' dispute therefore is purely legal—whether that termination violated the APA because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).  No discovery is necessary to establish that which cannot be disputed: HHS's premature termination of King County's grant, without explanation, was unlawful and must be set aside.

## II.    FACTUAL BACKGROUND

### A.    Congress Established the TPP Program in 2010 and Has Continued to Direct HHS to Administer the Program in Each of the Following Years

Approximately one in four teenaged women in the United States will become pregnant before the age of 20, and teen pregnancy is linked to a variety of major social concerns.  Compl. For Decl. & Inj. Relief ("Compl.") ¶¶ 6-11, ECF No. 1.  Yet, prior to 2010, most federal funding for teen pregnancy prevention initiatives was distributed without regard to their efficacy.  Compl. ¶ 12.  In 2010, however, Congress shifted its approach by establishing the TPP Program and

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 3
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

appropriating over $100 million "for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy." Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010). Congress specified that the TPP Program was to be administered by HHS through the Office of Adolescent Health ("OAH") and overseen by the Office of the Assistant Secretary of Health. H.R. Conf. Rep. No. 111-366, at 1042-43 (2009) (adopting Senate position explained in S. Conf. Rep. No. 111-66, at 160 (2009)). And Congress directed OAH to spend the appropriated funds across two tiers of grants: Tier 1 grants, designed to replicate programs that had demonstrated positive impacts on key sexual behavioral outcomes, and Tier 2 grants, designed to develop and test new and innovative approaches to teen pregnancy prevention.

The TPP Program was heralded as a "poster child" for evidence-based policy. Compl. ¶¶ 15-16. Rather than base funding decisions on political ideology, Congress instead designed the Program to focus on proven results, funding initiatives that were shown to effectively address teen pregnancy or that studied new science-based methods for tackling the problem. Compl. ¶¶ 17-18. And, indeed, since the TPP Program's creation in 2010, teen pregnancy rates in the United States declined sharply—with many, including OAH itself, citing the TPP Program as contributing to the trend. Compl. ¶ 19.

Congress has appropriated funds for HHS to continue administering the TPP Program every year since the Program's inception. In the Consolidated Appropriations Act of 2017, Congress mandated that "of the funds made available under this heading, $101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy." Pub. L. No. 115-31, 131 Stat. 135, 536 (2017). Through continuing resolutions, Congress continued to fund government

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 4
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

programs, including the TPP Program, "to the extent and in the manner that would be provided by" the Consolidated Appropriations Act of 2017.  Pub L. No. 115-56, §§ 101, 103, 131 Stat. 1129, 1139-41 (2017).   And, on March 23, 2018, Congress passed the Consolidated Appropriations Act of 2018, funding TPP through substantially the same language as above.[1]

**B.    Until Recently, OAH Funded and Administered the TPP Program as Required by Congress**

In April 2010, in accordance with Congress's mandate, OAH issued two Funding Opportunity Announcements ("FOAs"), one that requested applications for Tier 1 grants (for replicating evidence-based programs) and another that requested applications for Tier 2 grants (for testing new and innovative approaches).  Compl. ¶ 21; Declaration of Benjamin Link ("Link Decl.") ¶¶ 20-21, Exs. T, U.   Both FOAs specified that the projects would be funded for a five-year period.  Compl. ¶ 22.   Between FY 2010 and FY 2014, OAH funded 102 entities as part of this first cohort of five-year TPP Program grantees.   Compl. ¶ 23.   These projects collectively reached more than half a million young people, trained 6,100 facilitators, and created 3,800 community partnerships across the United States.  *Id.*

In January 2015, toward the end of the first grant period, OAH issued new FOAs requesting applications for a second cohort of competitive, five-year grants.  Compl. ¶ 25; Link Decl. ¶ 19, Ex. S.   These FOAs were further specialized, announcing four types of available awards.  As relevant to King County, Tier 2B awards were intended "to increase the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches for preventing teen pregnancy and related high risk behaviors."  Link Decl. ¶ 19, Ex.

---

[1]    The Consolidated Appropriations Act of 2018 provides that "$101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy…."  H.R. 1625, Div. H, Title II, 115th Cong. (forthcoming Pub. L. No. 114-141).

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 5
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

S.  Just as with the first cohort of grants, Tier 2B awards were "in the form of a five-year cooperative agreement … [which] is an award instrument of financial assistance where substantial programmatic involvement is anticipated between OAH and the grantee." *Id.*  OAH continually refers to the "five-year project period" for grantees.  *Id.*  The five-year "project periods" included one-year "budget periods," meaning that for each year of the five-year project period, "grantees are required to submit a noncompeting application." *Id*.  This non-competing continuation application consisted of "a progress report for the current budget year, and work plan, budget and budget justification for the upcoming year." *Id*.

C.     **King County Received Five-Year Cooperative Agreement and Subsequently Earned Accolades from HHS for Successful Implementation**

King County proposed to conduct a five-year randomized control trial to test the efficacy of its highly-acclaimed sexual health education curriculum, known as High School FLASH. Compl. ¶¶ 33, 37; Declaration of Andrea Gerber ("Gerber Decl.") ¶¶ 6-7; Declaration of Heather Maisen ("Maisen Decl.") ¶¶ 6-7.  King County had developed and updated the award-winning FLASH curriculum over the course of 30 years, and incorporated it into every school district in King County, where, notably, there has been a 63 percent reduction in teen pregnancy rates since 2008.  Compl. ¶¶ 33-35; Gerber Decl. ¶¶ 3, 7; Maisen Decl. ¶ 4.  However, King County did not know with certainty *how* the FLASH curriculum contributed to the decline in the teen birth rate, so it proposed a study to evaluate the curriculum's efficacy. Gerber Decl. ¶ 7.  King County proposed to use a TPP Program grant to recruit and randomize schools located in two regions outside of Washington State with higher-than-average teen pregnancy rates; provide baseline surveys of these students' sexual health; offer either the FLASH curriculum or a standard

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

control-group curriculum; and then test the efficacy of FLASH at both 3- and 12-month intervals.  Compl. ¶ 36; Gerber Decl. ¶¶ 11-12; Maisen Decl. ¶¶ 10-13.

On June 29, 2015, OAH awarded King County a five-year, $5 million Tier 2B grant, with $1 million to be awarded annually.  Compl. ¶ 38; Gerber Decl. ¶ 8, Ex. A.  Reviewers at HHS praised King County's application,[2] and, in a congratulatory letter, OAH Director Evelyn Kappeler stated that her office was looking "forward to working with [King County] over the next five years to support [its] project and ensure [its] continued success."  Compl. ¶ 39; Gerber Decl. ¶ 9, Ex. B.  The Notice of Award and Cooperative Agreement that accompanied Ms. Kappeler's letter established a "project period" for the $5 million grant award spanning from July 1, 2015 to June 30, 2020.  Compl. ¶ 40; Gerber Decl. ¶ 8, Ex. A; Maisen Decl. ¶ 9.

After receiving its award, King County recruited 20 schools in Minnesota and Georgia and obtained parental consent for participating students.  Compl. ¶ 42; Gerber Decl. ¶ 12; Maisen Decl. ¶ 10.  OAH repeatedly commended the FLASH curriculum, the quality of King County's study design, and its progress conducting the study, including praising it for completing "all of [its] planning year milestones" in year one.  Compl. ¶ 45; Gerber Decl. ¶ 15, Ex. F.

On April 4, 2016, King County submitted a non-competing continuation application for funding in year two, per the requirements of the Tier 2B FOA.  Compl. ¶ 48; Gerber Decl. ¶¶ 10, 22.  In July 2016, OAH made a second award of $1 million to King County, followed by an additional $360,948 in "carry over" funding.[3]  Compl. ¶¶ 49-50; Gerber Decl. ¶ 10, Ex. C and D.

---

[2]    Reviewers found that the County's proposal used strategies "informed by scientific theory or empirical evidence"; "demonstrate[d] a very high level, impressive, relevant and accurate perspective on 'best practice' approaches"; "fill[ed] a significant gap in rigorous research and evaluation"; and "address[ed] disparities ... by focusing on youth in high schools in a diverse, inclusive, and equitable manner."  Maisen Decl. ¶ 22, Ex. A.

[3]    Funding permitted to be carried over from the prior fiscal year.

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 7
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

King County continued to successfully implement its work plan, earning accolades from OAH, including in a May 2017 review in which OAH noted that King County's "workplan addresses all of the OAH expectations for Tier 2B grantees." Compl. ¶ 53; Gerber Decl. ¶ 18, Ex. I. Indeed, throughout 2016 and early 2017, OAH continued to support the TPP Program more generally, touting its benefits and holding training workshops and conferences, including one where it invited King County to present on its work. Compl. ¶¶ 51-53; Gerber Decl. ¶ 15; Link Decl. ¶ 23, Ex. W.

**D.  In 2017 OAH Prematurely Terminated King County's Grant As Well As All Other Grants Issued Under the TPP Program**

During the spring of 2017, preparations were well underway by OAH career staff to fund the grants for year three in support of the full five-year project period. Link Decl. ¶ 3, Ex. C. On April 4, 2017, King County submitted its second non-competing continuation application to obtain funding for year three of its grant. Compl. ¶ 54; Gerber Decl. ¶ 17. In doing so, King County conferred with career staff at OAH regarding the trajectory of its project and planned for future grant years. *Id.*

On June 5, 2017, Valerie Huber, a longtime opponent of the TPP Program and evidence-based programs more generally, was appointed to serve as Chief of Staff in the Office of the Assistant Secretary of Health at HHS, the office that oversees OAH. Comp. ¶ 56. Shortly after Ms. Huber's appointment, in the first week of July 2017, to King County's surprise, OAH issued a Notice of Award for year three that—with a single sentence and no explanation—prematurely terminated King County's five-year grant with a single sentence and no explanation: "This award also shortens the project period to end on June 30, 2018 at the end of this budget year." Compl. ¶ 60; Gerber Decl. ¶ 19, Ex. J; Maisen Decl. ¶ 18. OAH's award letter advised

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 8
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

King County of "closeout requirements" due to the fact that the grant was suddenly ending. Compl. ¶ 60; Gerber Decl. ¶ 19, Ex. J. As discussed *infra* in Section II.E., all of the TPP Program grants were cancelled under similar circumstances.

King County appealed the termination of its grant on August 3, 2017. Compl. ¶ 64; Maisen Decl. ¶ 22, Ex. A. More than seven months later, King County still has not received a response. Compl. ¶ 65; Maisen Decl. ¶ 23. Moreover, while King County has previously been required to submit non-competing continuation applications in April in advance of receiving each year of funding, Gerber Decl. ¶ 22, HHS has stated that it will no longer process King County's applications absent a court order. Stip. Mot. ¶ 4.

HHS has never explained to King County why its grant was terminated. Gerber Decl. ¶ 20; Maisen Decl. ¶¶ 19-20. But after receiving widespread criticism for terminating all grants under the TPP Program, the Agency has publicly offered a range of post hoc rationalizations for its decision. For example, HHS has stated that there was "strong evidence of negative impact or no impact" by the funded projects. This statement is belied, however, by the Agency's own evidence, particularly with respect to King County, whose work HHS has continued to praise even after notifying it that it was terminating the project early. Compl. ¶¶ 70, 72; Gerber Decl. ¶ 21, Ex. H. Additionally, other Agency officials, such as HHS spokeswoman Diane Gianelli, have claimed that the cuts are related to the President's FY 2018 Budget. Compl. ¶¶ 70-71. But at the time of this statement the President's budget was merely a *proposal* and had not been enacted by Congress. And Congress expressly declined to adopt the President's proposal to discontinue the TPP Program and has continued to fund the TPP Program through the fourth year of the grants. Consolidated Appropriations Act of 2018, H.R. 1625, 115th Cong. Div. H, Title II (forthcoming Pub. L. No. 114-141).

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 9
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**E.    Recently Produced Documents from HHS Show the Agency's Arbitrary Actions**

HHS's lack of transparency with the public and grantees, including King County, led Democracy Forward Foundation, a counsel in this case, to file a Freedom of Information Act ("FOIA") request in August 2017 to seek information concerning the Agency's abrupt decision to terminate all grants under the TPP Program.  Link Decl. ¶ 1, Ex. A.  After months of refusing to produce documents, HHS made its first production in the FOIA litigation on March 9, 2018.  Link Decl. ¶ 2, Ex. B.  Those documents reveal that the decision to terminate the TPP Program grants was made hastily, without any record of reasoned decision-making, and under the influence of political appointees who have long opposed evidence-based policy.

The documents show that on May 18, 2017—consistent with the discussions King County had with OAH staff in the spring of 2017—OAH Director Kappeler, a career civil servant who has worked for HHS in administrations of both parties, approved funding of the existing TPP Program grantees for "the third year of the five-year project period."  *See* Link Decl. ¶ 3, Ex. C (also stating that in fiscal year 2015 "OAH awarded funding through the TPP Program to a total of 84 grantees for five-year project period.").  But after the "Policy Team" suddenly stepped in, *see* Link Decl. ¶ 4, Ex. D, Director Kappeler and her staff were excluded from discussions about terminating the grants.  Indeed, as of June 27, 2017—just days before King County's grant was terminated—OAH staff were still unaware of what action was being taken on the grants, despite having informed HHS political appointees that the grantees were having to lay off staff because of the uncertainty.  *Id.* ¶ 6, Ex. F; *see also id.* ¶ 5, Ex. E (as of June 21, 2017, OAH staff was waiting for the policy team to determine "what…[it] actually wants to do"); *id.* ¶ 12, Ex. L (memo to file from Kappeler noting that career staff were not made aware of actions "until the last minute").

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 10
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

During the first week of July 2017, OAH informed grantees, including King County, that their grants would be terminated as of June 30, 2018.  The FOIA-produced documents reveal that Ms. Huber and other opponents of evidence-based programs were directly involved in terminating the TPP Program grants.  *Id*. at ¶ 10, Ex. J.  OAH staff were given no explanation for the Agency's decision to terminate the grants until after the letters were issued.  *Id*. ¶ 12, Ex. L (Kappeler noting that OAH staff was not made aware of the grant action until the last minute and was not provided with guidance on communications to the grantees until days after the grants were terminated); *Id*. ¶ 9, Ex. I (career employee at OAH noting that OAH staff were not issued information or talking points regarding the decision to cut the grants as of the date of the grant termination).

In addition to bypassing input from the experts at OAH, HHS acted without regard to Congress's appropriation for TPP Program grants.  This is a departure from how HHS has terminated grants under other Congressionally-created programs, in which they did not take action to terminate "until after Congressional action made it clear there was a lack of appropriation."  *Id.* ¶ 12, Ex. L.

### F.    King County is Facing Imminent and Irreparable Harm

As a result of HHS's unlawful action, King County faces imminent and irreparable harm. If not replaced, the loss of years four and five of TPP Program funding will mean that after spending $3 million in federal funds to study FLASH, King County will not be able to complete the study and produce a scientifically valid assessment of the curriculum.  Compl. ¶ 76; Gerber Decl. ¶ 24; Maisen Decl. ¶¶ 24-25, 28.  King County's Public Health Fund, the source of funding for the FLASH curriculum, cannot replace the lost $2 million; it lacks sufficient revenue and depends on grants to fund research.  Declaration of Michael Gedeon ("Gedeon Decl.") ¶¶ 7,

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 11
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

15-16.  King County will soon be forced to cut two staff positions, and has already diverted critical resources away from other programmatic activities in an attempt to secure alternate funding.  Compl. ¶ 77; Gerber Decl. ¶ 23; Maisen Decl. ¶¶ 26-28.  Despite almost 250 staff hours at a cost of over $27,000 in public health resources, King County has thus far been unsuccessful in finding substitute funding.  Compl. ¶ 77; Maisen Decl. ¶¶ 26-27; Gedeon Decl. ¶ 18.

And the harm extends far beyond King County.  The high schools in Minnesota and Georgia, serving more than 20,000 students, will not obtain the promised detailed survey results on the sexual health of their students.[4]  Compl. ¶ 76; Gerber Decl. ¶ 14.  More generally, all interested parties—including schools around the country, public health and education professionals, and HHS itself—will lose the benefit of understanding the efficacy of the FLASH curriculum and its role in improving sexual health outcomes among teens.  *Id.*

### III. LEGAL STANDARD

To obtain a preliminary injunction, King County must establish (1) a likelihood of success on the merits; (2) that irreparable harm is likely in the absence of preliminary relief; (3) that the balance of equities tips in the County's favor; and (4) that a preliminary injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit applies a sliding-scale approach in which these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  This balancing is known as the "serious

---

[4]    Moreover, due to the sequencing of the study, the schools in Georgia will not receive either the High School FLASH curriculum promised for each participating teacher (a $2,000 value) or the in-person training by County experts (an $11,000 value), which would have enabled these districts to provide high-quality sexual health education going forward.  Compl. ¶ 76; Gerber Decl. ¶ 14.  The Georgia schools, which are chronically underfunded, will also be deprived of $26,000 in stipend monies and their students likewise will not receive approximately $15,400 in incentive gift cards.  *Id.*

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 12
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

questions" test, meaning that a court may grant a preliminary injunction "where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Cottrell*, 632 F.3d at 1131 (internal quotations and citations omitted). Further, when the government is a party, the balance of equities factor merges with the public interest factor. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013).

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the questions are purely legal in nature, a court can resolve a challenge to a federal agency's action on a motion for summary judgment. *See Fence Creek Cattle Co v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

## IV. ARGUMENT

### A. The Court Should Grant Summary Judgment In Favor Of King County Because Defendants' Termination Of The County's Grant Was Unlawful

HHS's early termination of King County's TPP Program—with no contemporaneous reasoned explanation and in violation of its own regulations and Congress's clear intentions— was arbitrary, capricious, and contrary to law. Accordingly, summary judgment must be granted for King County.[5]

---

[5] King County moves for summary judgment on Count One of its Complaint. Count Two, based on "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), is addressed through the request for a preliminary injunction ordering the processing of Plaintiff's non-competing continuation application. Count Three, based on equitable relief to preserve remedy, has been addressed by Defendants' representation that it will preserve and refrain from obligating any monies appropriated for the TPP Program through August 31, 2018. Jt. Mot. ¶ 3.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

1.  **HHS Failed To Provide Any Explanation For Unlawfully Terminating King County's Grant**

The APA protects those affected by final executive decisions from arbitrary, capricious, and unlawful actions.  It specifically authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Terminations of grants are final agency actions under the APA and ripe for review.  *See City of Kansas City v. HUD*, 923 F.2d 188, 194 (D.C. Cir. 1991).  Such agency actions are arbitrary and capricious when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Agency action is instead valid "if a reasonable basis exists for [the agency's] decision."  *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations and citations omitted).  A reasonable basis exists where the agency "considered the relevant factors and *articulated* a rational connection between the facts found and the choices made."  *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1093 (emphasis added).

Here, HHS's termination of King County's grant is an extreme example of arbitrary decision-making: HHS not only failed to articulate a rational reason for unlawfully cutting short the grant, it failed to offer *any reason at all*.  King County never received an *explanation* from HHS for the termination of its grant, receiving instead only one threadbare sentence in the Notice of Award from July 6, 2017 effectuating the termination itself: "This award also shortens the

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 14
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

project period to end on June 30, 2018 at the end of this budget year." Gerber Decl. ¶ 19, Ex. J.

That is insufficient as a matter of law.  "It is a basic principle of administrative law that the

agency must articulate the reason or reasons for its decision." *Pac. Coast Fed'n of Fishermen's*

*Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005).  Thus, when an

agency terminates a grant but provides no contemporaneous "reasoned explanation," that

termination is arbitrary and capricious.  *See City of Kansas City*, 923 F.2d at 194.  Indeed, it is

impermissible to "infer an agency's reasoning from mere silence." *Pac. Coast Fed'n of*

*Fishermen's Ass'ns*, 426 F.3d at 1091 (internal citation omitted).  The propriety of HHS's action

must be judged by the grounds it invoked at the relevant time, and here, because HHS offered no

explanation, a court would "be compelled to guess at the theory underlying the agency's action."

*SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).  Thus, HHS's failure to offer any

contemporaneous explanation for its decision, much less a reasoned one, renders its decision

arbitrary and capricious.

### 2.  HHS's Post Hoc Explanations Fail As A Matter Of Law

Rather than provide a timely explanation, HHS instead has publicly provided shifting,

after-the-fact explanations for terminating the TPP Program in response to criticism of its

actions.  But in judging the propriety of agency action, courts are not allowed to "consider [] post

hoc justification[s]" when evaluating an agency's decision-making. *Nat'l Wildlife Fed'n v. Nat'l*

*Marine Fisheries Serv.*, 524 F.3d 917, 932 n.10 (9th Cir. 2008).  Yet even if the Court could

credit these after-the-fact justifications, they are inconsistent, non-sensical, and merely

demonstrate that HHS's decision was not based on a record of reasoned decision-making.

One post hoc rationalization offered by HHS was its assertion that there was "strong

evidence of negative impact or no impact" by the TPP Program projects.  Compl. ¶ 70; Link

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Decl. ¶ 22, Ex. V.  There is no basis for this assertion, either in the case of King County or the TPP Program as a whole.  First, HHS has not identified any such evidence with respect to King County.  Nor could it, because King County consistently met all performance standards and received numerous commendations from HHS itself—even following the terminations.  Compl. ¶¶ 45-47; Gerber Decl. ¶¶ 15-16, 18, 21; Maisen Decl. ¶ 14; Link Decl. ¶ 23, Ex. W.  HHS's belated explanation of negative results "runs counter to the evidence before the agency," and is therefore insufficient as a matter of law.  *State Farm*, 463 U.S. at 43.[6]  Further, HHS's post hoc explanation is irrelevant to King County because it has a Tier 2B grant, the very purpose of which was to *test the impact* of innovative approaches.  *See* Link Decl. ¶ 19, Ex. S (Tier 2B grants intended "to increase the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches").

Moreover, documents obtained in the FOIA action show that leaders within OAH itself questioned representations made by HHS in the press regarding the effectiveness of the TPP Program.  OAH Director Kappeler e-mailed the Office of the Assistant Secretary on July 26, 2017 about an article published by the *Associated Press* and *New York Times*, which included statements made by an HHS spokesperson about the effectiveness of the TPP Program.  According to Director Kappeler, that article contained "several errors" about TPP Program evaluations.  Link Decl. ¶ 11, Ex. K.  Director Kappeler noted that she and others at OAH were "not clear where some of the statements" in the HHS quote were coming from and offered to

---

[6]    Indeed, OAH has continued to praise King County long after terminating the grant.  On October 16, 2017, OAH wrote that King County "continues to do an outstanding job building, leveraging, and maintaining its partnerships in all study communities."  Compl. ¶ 72; Gerber Decl. ¶ 21, Ex. H.  As recently as February 12, 2018, OAH staff commended King County for its work in rural areas under the grant and recommended that King County share its successful strategies with the field.  *Id.*

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 16
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

provide the Office of the Assistant Secretary with "accurate data" concerning the TPP Program.
*Id.* Consequently, even if it could be properly considered, HHS's after-the-fact claim that the
TPP Program was ineffective runs counter to the evidence before HHS. *State Farm*, 463 U.S. at
43.

Other post hoc rationalizations from HHS are equally problematic. For instance, HHS
told the press that the grants had been terminated because of the President's FY 2018 budget
request to eliminate the TPP Program. Compl. ¶¶ 70-71. But the President's proposed budget
request does not unilaterally establish the government's budget, and Congress has funded the
TPP Program since 2010 and continues to do so. Indeed, this statement only reiterates that HHS
disagrees with Congress's policy decision to create and continue to fund the TPP Program.

Moreover, the process that led to the grant termination further reveals the arbitrary nature
of HHS's decision. HHS had planned to continue full grant funding, but briskly reversed course.
Link Decl. ¶¶ 4-11, Exs. D-K. Career staff at OAH were excluded from the hastily-made
decision to terminate the grants and were not provided with information concerning the
Agency's decision until *after* the decision was made. *See id.* ¶ 12, Ex. L (OAH was not "aware
of the grant action until the last minute" and was not provided with "official talking points" until
July 13, 2017, well after the grants had already been cut). Indeed, one career OAH employee e-
mailed OAH staff and informed them that decisions had been made regarding the grant
terminations but that she "ha[s] not been issued any guidance or talking points" they could use
when fielding calls from grantees. *Id.* ¶ 9, Ex. I. Lacking a reason for the terminations, the
employee was forced to ask staff to write down questions to forward to senior HHS leadership.
*Id.*

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 17
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

More fundamentally, the documents reveal that, in contrast to the Agency's practice in prior Presidential transitions, HHS cut all TPP Program grants notwithstanding Congress's continued funding of the program. Indeed, when admonished by leadership for questioning the termination of the grants, Director Kappeler stated that in prior Presidential transitions "grants were not ended until after Congressional action made it clear there was a lack of appropriation." *Id*. at Ex. L. Here, there has been no lapse in or lack of TPP Program appropriations.

In sum, HHS's decision—made abruptly and in isolation of those Agency officials expert in and most familiar with the TPP Program, without any reason given to the grantees, and justified by post hoc rationalizations lacking any factual support—bears all the hallmarks of arbitrary and capricious agency action. It therefore cannot stand under the APA.

### 3. HHS Failed to Comply with Its Own Regulations

HHS's premature termination of King County's grant was also contrary to HHS's own regulations, in violation of the APA. *See Nat'l Envtl. Dev. Assocs. Clean Air Proj. v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("It is 'axiomatic … that an agency is bound by its own regulations … [and] an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations.'"). HHS regulations define "termination" as "the ending of a Federal award, in whole or in part at any time prior to the planned end of period of performance," and specify that the "period of performance" is synonymous with the "project period." 45 C.F.R. § 75.2. These regulations provide that HHS may terminate a federal award in whole or in part only where: (1) the grantee has failed "to comply with the terms and conditions of the award;" (2) "for cause;" (3) "with the consent" of the grantee; or (4) "by the [grantee]" upon providing written notification of the reasons for such termination. *See* 45 C.F.R. § 75.372(a)(1)-(4). In terminating the grants prior to the planned end of the five-year "project

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 18
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

period," HHS has not even purported to rely on any of the four grounds outlined in its regulations.  None apply in any event.  First, King County complied with all the program requirements throughout the grant.  Compl. ¶ 47; Gerber Decl. ¶ 16; Maisen Decl. ¶ 14.  The County was in good standing with OAH prior to the termination and was consistently praised for its work.  Compl. ¶¶ 45-47; Gerber Decl. ¶¶ 15, 18, 21.  Second, HHS did not terminate King County's grant for "cause" and there would be no basis for doing so.  Gerber Decl. ¶ 20; Maisen Decl. ¶ 21.  And, finally, King County has never consented to nor requested the termination of its grant.  *Id.*  Accordingly, HHS's actions are contrary to its own regulations and thus violate the APA.

### 4.  HHS Acted Contrary to the Continuing Appropriations Act of 2018, the Consolidated Appropriations Act of 2017, and the Impoundment Control Act

HHS's termination is also contrary to law because it violates a clear mandate from Congress.  The APA authorizes a reviewing court to hold unlawful and set aside agency action found to be "not in accordance with law" and to "compel agency action unlawfully withheld." 5 U.S.C. §§ 706(1), (2)(A).  In the Consolidated Appropriations Act of 2017, Congress continued the TPP Program and appropriated funds to HHS for the grantees' third budget period, which began on July 1, 2017.  Pub. L. No. 115-31, 131 Stat. 135, 536.  In the Continuing Appropriations Act of 2018, and subsequent continuing resolutions amending it, Congress maintained appropriations for the TPP Program.  Pub L. No. 115-56, §§ 101, 103, 131 Stat. 1129, 1139-41.  In doing so, Congress had already funded a significant portion of year four of

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 19
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

the TPP grants, a funding year that begins on July 1, 2018.[7]  Congress has reaffirmed its commitment to the program, funding the TPP Program in FY2018 at the same levels as FY2017. On March 23, 2018, the President signed the Consolidated Appropriations Act, 2018, which mandates $101 million for the TPP Program.  Consolidated Appropriations Act, 2018, H.R. 1625, Div. H, Title II, 115th Cong. (forthcoming Pub. L. No. 114-141).

Notwithstanding that there has been no interruption in Congressional appropriations for the TPP Program and Congress has specifically directed funds to the program, HHS has nonetheless refused to process applications or otherwise prepare for disbursement of these funds. In so doing, HHS acted in contravention of Congress's directive, and therefore not in accordance with law in violation of the APA.  *See Montana v. Brinegar*, 380 F. Supp. 861 (D. Mont. 1974) (finding unlawful the Office of Management and Budget's refusal to spend federal highway funds based on the Office's own inflation concerns—a reason not authorized by the Federal-Aid Highway Act); *see also Nat'l Council of Comm. Mental Health Ctrs., Inc. v. Weinberger*, 361 F. Supp. 897, 901-03 (D.D.C. 1973) (same with respect to Department of Health, Education and Welfare's refusal to expend appropriated funds on grants that met criteria in Community Mental Health Centers Act).

HHS's unlawful withholding of appropriated funds violates not just the Consolidated Appropriations Act of 2018, but also the Impoundment Control Act of 1974, 2 U.S.C. § 681,

---

[7]     Prior to Congress's passage of the Consolidated Appropriations Act of 2018, several acts amended the Continuing Appropriations Act of 2018 to extend appropriations at existing levels until Congress passed the full spending bill.  *See, e.g.*, Bipartisan Budget Act of 2018, Pub. L. No. 115-123 (2018). In particular, these acts provided HHS with 173 days of funding for the TPP Program grants. Because the notices of award provide for HHS to fund the TPP Program grants through five "budget periods" that begin on July 1 of each year of the five-year "project period" of the grant, the Act had appropriated funding for the TPP Program through December 21, 2018. Now, with the Consolidated Appropriations Act of 2018, Congress has fully funded the TPP Program through June 31, 2019.

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 20
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

which limits the Executive Branch's ability to withhold funds appropriated by Congress. Under the Impoundment Control Act, the President can propose rescission of specific funds through a "special message," but both the House and Senate must approve that rescission within 45 days. 2 U.S.C. § 683(a)-(b). As both the Office of Management and Budget and the Government Accountability Office have recognized, agency withholdings of appropriated funds based on budget proposals to eliminate programs "constitute impoundments that agencies may make only after the President transmits a special message to Congress."[8] In other words, "the President does not have unilateral authority to refuse to spend [appropriated] funds." *In re Aiken Cty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013).

The Supreme Court weighed in soon after the Impoundment Control Act was passed to affirm an order directing the Executive Branch to spend money appropriated by Congress for certain projects. *See Train v. City of New York*, 420 U.S. 35 (1975). The Court interpreted statutory language that appropriated funds "shall be allotted" as requiring the Executive to disburse those funds. *Id.* The language appropriating funds for the TPP Program is similarly mandatory. The Consolidated Appropriations Act, 2018, states that "$101,000,000 *shall be for* making competitive contracts and grants." Pub. L. No. 115-131, 131 Stat. 135, 536 (emphasis added); H.R. 1625, Div. H, Title II, 115th Cong. (forthcoming Pub. L. No. 114-141). Without a rescission bill from Congress, HHS's refusal to make the TPP Program funds available violates the Impoundment Control Act, and therefore is not in accordance with law.

---

[8]     Gov't Accountability Off., B-329092, *Impoundment of the Advanced Research Projects Agency-Energy Appropriation Resulting from Legislative Proposals in the President's Budget Request for Fiscal Year 2018* 5 (2017), https://www.gao.gov/assets/690/688941.pdf, (citing OMB Circular No. A-11, pt. 3, § 112.2 (updated July 2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/assets/a11_current_year/a11_2017.pdf).

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 21
Case No. 18-cv-00242-JCC

1    In sum, HHS's failure to provide any contemporaneous explanation, let alone a reasoned

2    one, and its disregard for its own regulations and Congress's mandate to fund TPP Program

3    grantees was contrary to law.  Accordingly, King County is entitled to summary judgment.

**B.    The Court Should Enter A Preliminary Injunction Requiring HHS to Process King County's Fourth-Year Non-Competing Continuation Application**

In addition to summary judgment, a preliminary injunction is necessary to prevent any disruption to the grant process.  All four of the preliminary injunction factors weigh heavily in favor of this Court immediately ordering HHS to process King County's non-competing continuation application for the fourth budget year of its TPP Program grant.

**1.    The County Prevails On the Merits**

For the reasons discussed *supra* in Section IV.A, King County prevails on the merits.

**2.    Absent Preliminary Relief, King County Will Suffer Irreparable Harm**

Irreparable harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  Here, King County has already suffered such harm and is at imminent risk of suffering additional harm.  Under the terms of its TPP Program grant, King County must submit applications for non-competing continuation funding each year to obtain funds for the following grant period.  *See* Link Decl. ¶ 19, Ex. S.  The submission of the applications is the only method for King County to obtain its funding for the following budget year.  Gerber Decl. ¶ 22.  HHS, however, does not intend to process the applications for the 2018 budget year in the absence of a court order.  Stip. Mot. ¶ 4.  HHS has also represented that it will need a minimum of two months to process the applications.  *Id.*  As a result, the parties respectfully request that the Court

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 22
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

render a decision by May 30, 2018 so that King County can have its promised funds disbursed in time to continue the FLASH research study.  Jt. Mot. ¶ 7.

The County's inability to have its year four application processed and funds disbursed means that it cannot complete its study absent such funding—itself irreparable harm.  *See Weinberger,* 361 F. Supp. at 901 ("[T]he Court entered a preliminary injunction ordering defendants to review and fully process by normal criteria all pending applications, and to take measures necessary under 31 U.S.C. § 200 to prevent all unobligated and unspent funds for the first-year grant programs from lapsing").  King County will be forced to abandon midstream its study of the FLASH curriculum (wasting three years and $3 million of work), to imminently lay off two employees, and to deprive the schools in Georgia and Minnesota of their promised benefits for participation.  Compl. ¶ 76-77; Gerber Decl. ¶ 24; Maisen Decl. ¶¶ 24-28.  These programmatic cuts harm both King County and the communities it serves.  *See, e.g.*, *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d. 962, 980 (7th Cir. 2012); *Planned Parenthood Ariz., Inc. v. Betlach*, 899 F. Supp. 2d 868, 886 (D. Ariz. 2012).  Moreover, despite expending significant resources in an attempt to do so (to date, almost 250 hours at a cost of over $27,000 in public health resources), King County has not been able to secure alternate funding.  Compl. ¶ 77; Maisen Decl. ¶¶ 26-27; Gedeon Decl. ¶ 18.  This as-yet-unsuccessful effort is diverting resources from King County's core public health mission.  *See Doe v. Trump, No. C17-0178JLR,* 2017 WL 6551491, at *23 (W.D. Wash. Dec. 23, 2017) (administrative action "threatens the organizational Plaintiffs' mission, services, and goodwill, and therefore causes them irreparable harm.").

Finally, without judicial intervention, HHS has made clear its intention to obligate the funds through a new grant process to new grantees.  Jt. Mot. ¶ 3.  But the Ninth Circuit has

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 23
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

repeatedly held that injunctive relief is appropriate to prevent a defendant from disbursing disputed funds in a manner that would render an injury irremediable. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (affirming preliminary injunction freezing the defendant's assets where there was an "inability to recover monetary damages, if relief [was] not granted."); *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1085-86 (9th Cir. 2004) (affirming preliminary injunction freezing the defendant's assets). Plaintiff accordingly seeks judicial intervention to ensure that the conditions for fourth-year funding are in place, the promised funds are available, and that Plaintiff has meaningful relief should it prevail in this litigation.

### 3. The Balance of Equities and the Public Interest Merit a Preliminary Injunction

Considered together, the balance of equities and public interest factors merit an order requiring HHS to process King County's application for year-four funding. *See Drakes Bay Oyster Co.*, 747 F.3d at 1092. King County, the schools and communities participating in the study, and the public at large would all be harmed if this Court does not enter an injunction that would allow King County to continue the FLASH study. The public has an interest in the orderly management and completion of grant-funded projects, not to mention a substantial interest in the particular results that would come from King County's study. The prospect that the first three years of King County's work, supported by taxpayer funds, would be rendered useless as a result of HHS's action is also contrary to the public interest. It is no surprise then that 37 Senators and the American College of Obstetricians and Gynecologists, as well as multiple other groups, have made clear the harm to the public caused by HHS's premature termination of these important grants. Link Decl. ¶¶ 16-18, Exs. P, Q, R. On the other side of the scale, restoring the pre-termination status quo does not impose any cost on the government,

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 24
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

for an injunction would only require it do what it is already obligated to do—process King County's year-four applications in order to expend funds that have been appropriated by Congress.

## V.  CONCLUSION

The Court should grant King County's motion for a preliminary injunction and order HHS to process King County's non-competing continuation application for the fourth year of the TPP Program grant.  The Court should also grant King County's motion for summary judgment and set aside HHS's unlawful termination of King County's grant.

DATED this 29th day of March, 2018.

PACIFICA LAW GROUP LLP

By  *s/ Gregory J. Wong*
        Gregory J. Wong, WSBA #39329
        Athanasios P. Papailiou, WSBA #47591
        1191 2nd Ave, Suite 2000
        Seattle, WA 98118
        Tel: (206) 245-1700
        Fax: (206) 245-1750
        greg.wong@pacificalawgroup.com
        athan.papailiou@pacificalawgroup.com

DEMOCRACY FORWARD

        Javier M. Guzman, *(Admitted Pro Hac Vice)*
        Josephine T. Morse, *(Admitted Pro Hac Vice)*
        Skye L. Perryman, *(Admitted Pro Hac Vice)*
        1333 H St. NW
        Washington, DC  20005
        (202) 448-9090
        jguzman@democracyforward.org
        jmorse@democracyforward.org
        sperryman@democracyforward.org

*Attorneys for Plaintiff King County*

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 25
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

1

2

<u>**CERTIFICATE OF SERVICE**</u>

3        I hereby certify that on this 29th day of March, 2018, I electronically filed the foregoing

document with the Clerk of the United States District Court using the CM/ECF system which

4

5 will send notification of such filing to all parties who are registered with the CM/ECF system.

6

7

8        DATED this 29th day of March, 2018.

9

10        _s/ Tricia O'Konek_

Tricia L. O'Konek

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMBINED MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT - 26
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750