IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY, a Washington municipal corporation, | ) |
| | ) Case No.: 2:18-CV-00242-JCC |
| Plaintiff, | ) |
| | ) DEFENDANTS' OPPOSITION TO |
| | ) PLAINTIFF'S MOTION FOR A |
| vs. | ) PRELIMINARY INJUNCTION AND |
| | ) FOR SUMMARY JUDGMENT, AND |
| ALEX M. AZAR II, in his official capacity as | ) CROSS-MOTION TO DISMISS OR FOR |
| Secretary, U.S. Department of Health and Human | ) SUMMARY JUDGMENT |
| Services; and THE U.S. DEPARTMENT OF | ) |
| HEALTH AND HUMAN SERVICES, | ) NOTE ON MOTION CALENDAR: |
| | ) MAY 4, 2018 |
| Defendants. | ) |
| | ) **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 3

PROCEDURAL HISTORY .............................................................................................. 8

ARGUMENT ................................................................................................................... 9

   I.  Plaintiff Is Not Entitled to a Preliminary Injunction ............................................... 9

      A.  Plaintiff's APA Claims (Counts I & II) Are Unlikely to Succeed on the Merits ....... 10

         1.  Plaintiff's Interpretation Would Violate the Anti-Deficiency Act ...................... 10

         2.  Plaintiff's Award Documents Reserve HHS's Discretion Not to Make
            Continuation Awards in Future Years ................................................................ 13

         3.  HHS Regulations Governing "Termination" Do Not Negate the Plain Terms of
            Plaintiff's Awards ............................................................................................ 14

         4.  Neither the Impoundment Control Act Nor the Appropriations Laws Support
            Plaintiff's APA Claims ..................................................................................... 16

         5.  HHS's Decision Not to Issue Future Continuation Awards Is "Committed to
            Agency Discretion" and Unreviewable ............................................................ 18

         6.  HHS's Decision Was Not Arbitrary or Capricious Under the APA ..................... 21

      B.  The Remaining Preliminary Injunction Factors Do Not Support Relief ................... 22

         1.  Plaintiff's Delay Undermines Its Assertion of Irreparable Harm ........................ 22

         2.  The Balance of Equities Favors HHS ................................................................ 23

         3.  Plaintiff's Requested Relief Will Deprive the Public of the Opportunity to
            Compete for TPP Program Funds ...................................................................... 23

   II.  The Court Should Dismiss or Enter Summary Judgment on All of Plaintiff's Claims .... 24

CONCLUSION .............................................................................................................. 24

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - i

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

# **TABLE OF AUTHORITIES**

**CASES**

*Alan Guttmacher Inst. v. McPherson*,
   597 F. Supp. 1530 (S.D.N.Y. 1984)...........................................................................20

*Alan Guttmacher Inst. v. McPherson*,
   805 F.2d 1088 (2nd Cir. 1986)..................................................................................20

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .....................................................................................9

*Am. Trucking Ass'n, Inc. v. Delaware River Joint Toll Bridge Comm'n*,
   458 F.3d 291 (3d Cir. 2006).......................................................................................22

*Apter v. Richardson*,
   510 F.2d 351 (7th Cir. 1975) .....................................................................................20

*Ass'n of Nat. Advertisers, Inc. v. F.T.C.*,
   627 F.2d 1151 (D.C. Cir. 1979)..................................................................................22

*Autonomy, Inc. v. TASC, Inc.*,
   No. 15-cv-505, 2015 WL 7313380 (E.D. Va. Nov. 19, 2015) ...................................12

*Bennett v. Spear*,
   520 U.S. 154 (1997)....................................................................................................16

*Cal. Human Dev. Corp. v. Brock*,
   762 F.2d 1044 (D.C. Cir. 1985)..................................................................................19

*Cessna Aircraft Co. v. Dalton*,
   126 F.3d 1442 (Fed. Cir. 1997)..................................................................................12

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)....................................................................................................19

*City of New Haven v. United States*,
   634 F. Supp. 1449 (D.D.C. 1986)...............................................................................17

*Cmty. Action of Laramie Cty. v. Bowen*,
   866 F.2d 347 (10th Cir. 1989) ...................................................................................19

*Cray Research, Inc. v. United States*,
   44 Fed. Cl. 327 (1999)................................................................................................12

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - ii

*Davis & Assocs., Inc. v. District of Columbia*,
  501 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................ 10, 12

*Fed. Crop Ins. Corp. v. Merrill*,
  332 U.S. 380 (1947) ................................................................................................ 13

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ................................................................................................ 17

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .................................................................................. 22

*George v. Bay Area Rapid Transit*,
  577 F.3d 1005 (9th Cir. 2009) ................................................................................ 21

*Grassetti v. Weinberger*,
  408 F. Supp. 142 (N.D. Cal. 1976) ......................................................................... 20

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ................................................................................................ 19

*Hercules, Inc. v. United States*,
  516 U.S. 417 (1996) ................................................................................................ 12

*In re Aiken Cty.*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................................ 17

*Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conf. of Bldg. Officials*,
  79 F.3d 1153 ..................................................................................................... 22, 23

*Kletschka v. Driver*,
  411 F.2d 436 (2nd Cir. 1969) .................................................................................. 20

*Leiter v. United States*,
  271 U.S. 204 (1926) .......................................................................................... 11, 12

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .......................................................................................... 18, 19

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ................................................................................................ 16

*Md. Dep't of Human Res. v. Dep't of HHS*,
  *854 F.2d 40 (4th Cir. 1988)* ..................................................................................... 10

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - iii

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

*Midwater Trawlers Coop. v. Dep't of Commerce*,
    282 F.3d 710 (9th Cir. 2002) ........................................................................................ 21

*Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*,
    991 F.2d 536 (9th Cir. 1993) ........................................................................................ 23

*Navajo Nation v. Azar*,
    No. 18-cv-2253, 2018 WL 1092155 (D.D.C. Feb. 28, 2018).......................................... 14

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*,
    475 F.3d 1136 (9th Cir. 2007) ...................................................................................... 21

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ...................................................................................... 22

*Off. of Pers. Mgmt. v. Richmond*,
    496 U.S. 414 (1990)............................................................................................. 10, 13

*Phila. Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*,
    553 F. Supp. 2d 433 (E.D. Pa. 2008) ............................................................................ 20

*Pub. Citizen v. Stockman*,
    528 F. Supp. 824 (D.D.C. 1981) ................................................................................... 16

*RCS Enters. v. United States*,
    57 Fed. Cl. 590 (2003) ................................................................................................. 11

*Sam Gray Enters. v. United States*,
    250 F.3d 755 ................................................................................................................ 11

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) ........................................................................................ 9

*Siebert v. Gene Sec. Network, Inc.*,
    75 F. Supp. 3d 1108 (N.D. Cal. 2014) .......................................................................... 14

*Trout Unlimited v. Lohn*,
    No. C05-1128C, 2005 WL 3242262 (W.D. Wash. Nov. 30, 2005) ............................ 16, 17

*United States ex rel. Bauchwitz v. Holloman*,
    671 F. Supp. 2d 674 (E.D. Pa. 2009) ............................................................................ 15

*Vance-Warren Comprehensive Health Plan, Inc.*,
    DAB No. 2180, 2008 WL 2649498 (H.H.S. Dep't App. Bd. June 18, 2008) .................. 5, 15

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - iv

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

*W. Radio Servs. Co. v. Glickman*,
   123 F.3d 1189 (9th Cir. 1997) ................................................................. 16, 17

*Williams v. District of Columbia*,
   902 A.2d 91 (D.C. 2006) ................................................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................. 9

**STATUTES**

5 U.S.C. § 701(a)(2) ......................................................................................... 18, 19

5 U.S.C. § 704 ......................................................................................................... 16

31 U.S.C. § 1341 ................................................................................................ passim

31 U.S.C. § 1341(a)(1) ............................................................................................ 10

Consolidated Appropriations Act, 2010
Pub. L. No. 111-117 (2009) ...................................................................................... 3

Consolidated and Further Continuing Appropriations Act, 2016
Pub. L. No. 114-113 ................................................................................................. 7

Consolidated Appropriations Act, 2017
Pub. L. No. 115-31 ................................................................................................... 3

Continuing Appropriations Act, 2018
Pub. L. No. 115-56 ................................................................................. 7, 8, 17, 18

Consolidated Appropriations Act, 2018
Pub. L. No. 115-141 ................................................................................................ 8

**UNITED STATED CONSTITUTION**

U.S. Const. art I, § 8, cl. 1 .................................................................................... 10

**RULES**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 24

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 24

Fed. R. Civ. P. 56 .................................................................................................... 24

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - v

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

**REGULATIONS**

45 C.F.R. § 75.2 ........................................................................................................... 6, 14

45 C.F.R. § 75.309(a) ........................................................................................................ 6

**OTHER AUTHORITIES**

H.R. 3358, 115th Cong. (2017) ......................................................................................... 8

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - vi

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

# INTRODUCTION

Plaintiff, a grantee under the Teen Pregnancy Prevention Program (TPP Program), is suing for emergency relief now after learning last July from the U.S. Department of Health and Human Services (HHS) that HHS would not award further funds through continuation grants for current TPP Program projects in the next fiscal year. Although understandably disappointed about this programmatic change, Plaintiff knew from the beginning that its TPP Program grant was an annual commitment only, and that the government could change its funding priorities in any future year. Contrary to Plaintiff's assertions, this case is not about grant termination. No grant has been terminated. Rather, the issue is whether an awardee of a one-year grant may convert that limited benefit into a multi-year government obligation, before Congress has appropriated funds for all years and without affording the agency the discretion to decide whether to renew the grant or open the award to new competition. Plaintiff asks this Court to compel HHS to renew its grant for two more years, even though the agency has inherent discretion not to award a grant for future years and is barred by law from obligating public funds until Congress appropriates that money.

Plaintiff voluntarily accepted that its current project might not receive funding for future years when it agreed to participate in the program. Plaintiff's theory of grant awards is disproven by federal law and the grant terms themselves. By accepting funds, Plaintiff accepted all grant terms, including a proviso that it had no guarantee of funding beyond each one-year "budget period." Indeed, HHS could give no such guarantee because federal law prohibits it from obligating funds beyond the period of any appropriation. Moreover, the decision whether to recompete grant funds under a new appropriation or to make a non-competitive continuation award is committed to HHS's discretion and not subject to judicial review. A decision otherwise

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 1

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

could upend the statutorily-mandated discretionary grant regime under which HHS funds more than $30 billion of biomedical research, prevention and treatment projects annually.

Plaintiff contends that HHS's lawful exercise of discretion not to make continuation awards violates the Administrative Procedure Act (APA), but the claim has no merit. Plaintiff attempts to bolster its claim by contending that the decision violates the Impoundment Control Act, which is equally meritless. Plaintiff is not within the zone of interests protected by the Impoundment Control Act and no effort to bootstrap such a claim to the APA can manufacture standing. The Impoundment Control Act exists to protect Congress's control over Executive spending, not to guarantee a flow of funding to would-be beneficiaries. Even if Plaintiff could sue under the Impoundment Control Act, no "final agency action" exists that the statute would prohibit. As of the time of suit, HHS had only taken preliminary steps to recompete TPP Program funds—it did not "impound" those funds by doing so.

Plaintiff expresses disappointment over HHS's decision not to renew grants, but that disappointment does not amount to a legal claim. Plaintiff will receive no further funding without recompeting, but it accepted its grant awards with these one-year budget terms. As a result, Plaintiff's emphasis on the alleged success of its program, Pl.'s Br. at 6-10, even if true, is immaterial to the key question before this Court: whether a legal right to more funding exists.

Also immaterial are Plaintiff's assertions about the involvement or non-involvement of certain HHS officials in the decision not to make continuation awards. *See* Pl.'s Br. at 8-11. Even assuming the truth of Plaintiff's factual allegations, its claims for relief still lack merit. Plaintiff had no entitlement to a five-year grant, and HHS had discretion to determine how the appropriated funds for FY 2018 would be awarded. Accordingly, the Court should dismiss the complaint with prejudice or, alternatively, enter judgment in favor of HHS on Plaintiff's claims.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 2

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

**BACKGROUND**

I. **Under the TPP Program, HHS Provided One-Year Grants and Retained Discretion to Issue Continuation or Competing Awards in Future Years**

Congress appropriated $110 million to HHS to administer the TPP Program in 2010. Pub. L. No. 111-117 (2009). As of the date of this suit, this funding had been appropriated annually (with minor changes in amount) through fiscal year (FY) 2017. Pub. L. No. 115-31, 131 Stat. 135, 536 (May 5, 2017). Congress funded the TPP Program for making "*competitive* contracts and grants." *Id.* (emphasis added).

HHS issued new Funding Opportunity Announcements (Funding Announcements) for the TPP Program in 2015. Those Funding Announcements stated that HHS would fund awards using a one year "budget period"—that is, awarding one year of funds at a time—and a five-year "project period," subject to Congress's future appropriations and to HHS's discretion whether to continue awards or issue a new competition for funding. The Funding Announcements, therefore, did not guarantee funding for any year beyond the first year. Rather, the Funding Announcements stated that for "[e]ach year of the approved project period, grantees are required to submit a noncompeting application which includes a progress report for the current budget year, and work plan, budget and budget justification for the upcoming year." *See, e.g.*, Tier 1A Funding Opportunity Announcement, Office of Adolescent Health, Dep't of Health & Human Servs., Jacobson Decl., Ex. A, at 72 (2015). The Funding Announcements also explained that "recipients must comply with all terms and conditions outlined in their grant awards, the [HHS] Grants Policy Statement, requirements imposed by program statutes and regulations and HHS grant administration regulations, as applicable." *Id.* at 68.

Plaintiff, a TPP Program participant, received its first notice of award in the summer of 2015, offering financial assistance for one year (July 1, 2015 to June 30, 2016), and

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 3

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

"recommended future support" for subsequent budget years.  *See* King County FY 2015 Notice of Award, Gerber Decl., Ex. A, at 1.  As in the Funding Announcement, the award noted that future funding was contingent on HHS approval.  The FY 2015 award stated that grantees must "comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in applicable [HHS] Grant Policy Statements," and hyperlinked to those policies on HHS's website.  *Id.* at 5.  The FY 2017 award twice warned that grantees accept those terms and conditions when they draw down award money.  *See, e.g.*, King County FY 2017 Notice of Award, Gerber Decl., Ex. J, at 1 (Box. No. 16), 3-4 ¶ 1.

The Grants Policy Statement incorporated into those awards repeatedly declares that continuation awards after the budget year are contingent on HHS's approval, which is based in part on its discretion over whether government interests have changed so that future funds should be recompeted.  When describing the "project period" system, the Grants Policy Statement cautions that although "project period[]" may "indicat[e] the [operating division's] intention to provide continued financial support" beyond the budget period, such projections

> are contingent on satisfactory progress, the availability of funds, and *the continued best interests of the Federal government*.  They are not guarantees that the project or program will be funded or will be funded at those levels, and they create *no legal obligation to provide funding beyond the ending date of the current budget period* as shown in the [notice of award].

Grants Policy Statement, U.S. Dep't of Health & Human Servs., Jacobson Decl., Ex. B, at I-34 (emphasis added).  The "Terms and Conditions" of the Grants Policy Statement further reserves HHS's broad discretion not to make a continuation award:

> An [operating division] may decide not to make a non-competing continuation award within the current competitive segment for one or more of the following reasons:
> • Adequate Federal funds are not available to support the project.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 4

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

- A recipient failed to show satisfactory progress in achieving the objectives of the project.
- A recipient failed to meet the terms and conditions of a previous award.
- *For whatever reason, continued funding would not be in the best interests of the Federal government.*

*Id.* at II-89 (emphasis added).

Under the "project period" system, grants are "programmatically approved" for up to five years, "but are funded in annual increments called budget periods." *Id.* at I-34. Continuation awards are not guaranteed, so grantees must submit annual "request[s] to [HHS's Office of Adolescent Health] for continued funding" known as a "non-competing continuation application[s]." Guidance for Preparing a Non-Competing Continuation Grant Application, Office of Adolescent Health, U.S. Dep't of Health & Human Servs. (Nov. 2016), Jacobson Decl., Ex. C, at 3.[1] If HHS approves a grantee's request—whether an initial award or a continuation award—the grantee receives a "Notice of Award" that includes the "approved project period and budget period start and end dates," and the "amount of Federal funds authorized for obligation by the recipient" within the next "budget period." Jacobson Decl., Ex. B, at I-33.

The discretionary character of HHS's decision-making regarding continuation awards is reinforced by the absence of an internal appeal right unless the denial was based on the grantee's failure "to meet the terms and conditions of a previous award." *Id.* at II-89. When HHS makes a policy decision not to issue continuation awards, the departmental appeals board "has no power to review" the decision because such decisions "generally are matters committed to the federal agency's discretion." *In re Vance-Warren Comprehensive Health Plan, Inc.*, DAB No. 2180, 2008 WL 2649498, at *1 (H.H.S. Dep't App. Bd. June 18, 2008).

---

[1] *See also* Jacobson Decl., Ex. B, at I-16 (defining non-competing continuation application as "a request … for funding the second or subsequent budget period within an approved competitive segment").

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 5

**II.      HHS's Grant "Termination" Procedures Are Inapplicable to Continuation Awards**

HHS's announcement that it had reevaluated government interests and would not issue future continuation awards did not "terminate" Plaintiff's existing award funding because its past awards did not obligate any future funding.  "Termination" is a term of art in HHS regulations concerning grants; not every decision to discontinue funding constitutes a "termination," and a decision not to issue future continuation awards is not a termination at all.

HHS's regulations include definitions that illuminate the distinction between terminating a grant and declining to issue a future continuation award.  A "termination" is "the ending of a Federal award, in whole or in part, at any time prior to the planned end of period of performance." 45 C.F.R. §  75.2.  The "period of performance" is the "time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award," such as "orders placed for property and services" and "contract and subawards."  45 C.F.R. §  75.2; *see also id.* §  75.309(a) ("A non-Federal entity may charge to the Federal award only allowable costs incurred during the period of performance," subject to limited exceptions for pre-award costs necessary to carry out the work approved under the award).  "Project period" is defined by cross-reference to the substantive definition of a "period of performance."  *Id.*

As applied to Plaintiff's continuation awards, the time during which the grantee can incur new obligations—i.e., the "period of performance" during which an award cannot be terminated except consistent with HHS regulations—is the "budget period."  Grantees obtain funding one "budget period" at a time after submitting and obtaining HHS approval for their detailed budgets and work plans.  The Notice of Award "show[s] the amount of Federal funds *authorized for obligation*" by the grantee, which is limited to a particular "budget period."  In contrast, "any future-year commitments" are those funds the agency projects (but does not guarantee) will be

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 6

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

awarded to the grantee in remaining years of the "project period." Jacobson Decl., Ex. B, at I-33 (emphasis added). The reference to "project period" in the grant documents confers no authority on Plaintiff to incur new obligations beyond the "budget period" and accordingly cannot be equated with the "period of performance" used in the regulations. This reading also comports with the Anti-Deficiency Act, discussed further below, which prohibits federal agencies from obligating funds before an appropriation exists. Here, the term "project period" in the grant documents includes future fiscal years not yet appropriated by Congress. Under the Anti-Deficiency Act, the term cannot create an obligation beyond any one-year "budget period."

**III.     Continuing Resolutions Banned HHS From Obligating Future TPP Funds**

HHS generally considered and renewed funding for TPP Program grantees during the summer using funds appropriated for the fiscal year ending that September. For example, funds for the budget period from July 1, 2016 through June 30, 2017, came from the FY 2016 appropriations, which expired September 30, 2016. *See* Pub. L. No. 114-113, 129 Stat. 2242, 2617 (enacted Dec. 18, 2015).

When Plaintiff filed suit, Congress had approved several continuing resolutions to fund the government through March 23, 2018, while negotiating a FY 2018 budget. Most important among the continuing resolutions was the Continuing Appropriations Act, 2018, Pub. L. No. 115-56, 131 Stat. 1129, 1139 (enacted Sept. 8, 2017) (2018 Act). Subsequent continuing resolutions simply modified the 2018 Act to extend the budget deadline. Although the 2018 Act funded the government during FY 2018 "at a rate for operations as provided in the applicable appropriations Acts for fiscal year 2017," it contained exceptions to maintain the funding prerogatives of Congress and the President during budget negotiations.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 7

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

Two exceptions in the 2018 Act are relevant here. First, section 109 specifically limited

agencies' ability to award grants for programs that depend on further appropriations:

"Notwithstanding any other provision of this Act . . . no grants shall be awarded for such

programs funded by this Act that would impinge on final funding prerogatives." 131 Stat. at

1141. Second, section 110 required that the 2018 Act be "implemented so that only the most

limited funding action of that permitted in the Act shall be taken in order to provide for

continuation of projects and activities." *Id.*

## PROCEDURAL HISTORY

Funding for the TPP Program in FY 2018 (which began October 1, 2017) was a subject

of significant debate. The HHS House appropriations bill would have declined to fund the

program. H.R. 3358, 115th Cong. (2017). Disagreement over the future of the TPP Program

was a factor in the larger budget impasse. *See* Jennifer Haberkorn & Sarah Ferris, *Planned

Parenthood Defunding Threatens Government Spending Package*, Politico, Mar. 7, 2018,

Jacobson Decl., Ex. D. On March 23, 2018, however, Congress passed a full-year appropriations

statute for FY 2018 that renewed the program using the same language that appeared in the FY

2017 appropriations bill. Pub. L. No. 115-141, 132 Stat. 348 (2018).

When HHS issued a FY 2017 Notice of Award to Plaintiff in the summer of 2017, the

agency announced that it would not issue continuation awards for the remaining "project period"

years. *See, e.g.*, Gerber Decl., Ex. J, at 1. If Congress renewed TPP Program funding, HHS

would recompete those funds by issuing a new Funding Announcement, for which Plaintiff could

apply. Kretschmaier Decl., ¶¶ 4-5. The agency publicly announced its change in policy

priorities. "Teen Pregnancy Prevention Program Facts," Press Release, Office of the Assistant

Secretary for Health, U.S. Dep't of Health & Human Servs., Aug. 28, 2017, Jacobson Decl., Ex.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 8

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

E.  In July 2017, it informed grantees in their award documents for the 2017-18 "budget period" that the "project period" of their awards would end in 2018.  Plaintiff has since drawn down FY 2017 funds and thus accepted the change in the project period and the underlying terms.  Kretschmaier Decl., ¶ 3.  Seven months later, Plaintiff filed this suit.  Over a month later, Plaintiff sought preliminary injunctive relief.  ECF No. 20.

## ARGUMENT

### I.    Plaintiff Is Not Entitled to a Preliminary Injunction

To succeed on its request for a preliminary injunction, Plaintiff must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Plaintiff cannot establish a "serious question" on the legal merits of its position, much less a "reasonable likelihood of success."  Plaintiff has no entitlement to further funding.  Every time it accepted a TPP Program grant, Plaintiff acknowledged that it had no legal right to future awards within the "project period," and that HHS could deny continuation awards in future years by deciding, "for whatever reason," that issuing continuation awards was not in the federal government's interest.  Jacobson Decl., Ex. B, at II-89.  Plaintiff also accepted HHS's decision when it drew down funds for the FY 2017 budget period.  Plaintiff's effort to recast its

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 9

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

relationship with HHS as a "five-year" grant would vitiate the terms of its grant and violate the Anti-Deficiency Act. The delay in Plaintiff's request and the harm that would befall both HHS and the public if injunctive relief were granted further weigh against Plaintiff's motion. The Court, therefore, should both reject Plaintiff's unlawful termination theory—for it is impossible to "terminate" a grant that has not been awarded—and deny its motion.

### A. Plaintiff's APA Claims (Counts I & II) Are Unlikely to Succeed on the Merits

#### 1. Plaintiff's Interpretation Would Violate the Anti-Deficiency Act

Plaintiff's asserted basis for relief would violate the Anti-Deficiency Act. Congress has primary authority over federal spending, *see* U.S. Const. art. I, § 8, cl. 1, and the Anti-Deficiency Act enforces that authority. 31 U.S.C. § 1341.[2] The Anti-Deficiency Act forbids agencies from "spend[ing] money in excess of that appropriated by Congress." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 430 (1990).[3] Thus, HHS's ability to commit to fund a TPP Program grant for any year is constrained by whether an appropriation exists for that year.

Following Congress's directive, "the Supreme Court … and other federal courts have explicitly and repeatedly held that *all* contracts for future payments of money, in advance of or in excess of existing appropriations, are void ab initio" unless Congress provides otherwise. *Davis*

---

[2] As relevant here, the Anti-Deficiency Act provides that an "officer or employee of the United States Government . . . may not – (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation" or "(B) involve [the] government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341(a)(1).

[3] This prohibition applies to grants and cooperative agreements. *See Md. Dep't of Human Res. v. Dep't of HHS*, 854 F.2d 40, 42 (4th Cir. 1988) (applying Anti-Deficiency Act principles to grant distribution decisions of HHS); *see also* GAO Principles of Federal Appropriations Law, 3rd ed., vol. 2, ch. 10, at 10-43, GAO-06-382SP [hereinafter "*GAO Red Book*"] (2015), *available at* https://www.gao.gov/assets/210/202819.pdf ("Of course, grant obligations and expenditures are subject to the act.").

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 10

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

*& Assocs., Inc. v. District of Columbia*, 501 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Williams v. District of Columbia*, 902 A.2d 91, 94 (D.C. 2006)).  Absent congressional authority to make "multi-year" commitments, an agreement obligating a payment of money is valid only if (1) the obligation is contingent on an "appropriation be[ing] made available" and (2) "the government … affirmatively continue[s] the [commitment] for such subsequent year; thereby, in effect … making a new [commitment] under the authority of such appropriation for the subsequent year." *Leiter v. United States*, 271 U.S. 204, 206-07 (1926) (invalidating a multi-year lease).

*Leiter* is the foundational case.  There, the plaintiff leased office space to government agencies "for terms of four and five years."  271 U.S. at 205.  The leases "stipulated annual rentals" and were made contingent on Congressional appropriation.  *Id.*  But before the full term of the leases expired, the government cancelled its lease for future years, even though Congress eventually appropriated funds to lease office space. *Id.* at 206-07.  The Court held that because "at the time [the leases] were made there was no appropriation available for the payment of rent after the first fiscal year," the leases violated the Anti-Deficiency Act and "created no binding obligation against the United States after the first year."  *Id.* at 207.  The contract would have been "binding for any subsequent year" only if, in addition to making the contract contingent on appropriations, the government had "affirmatively continue[d] the lease for such subsequent year … making a new lease under the authority of such appropriation for the subsequent year."  *Id.*

After *Leiter*, unless another congressional directive states otherwise (and no such authority is invoked here), a "subject to availability" clause is insufficient to permit multi-year funding.  *GAO Red Book*, vol. 2, ch. 6, at 6-55.  The government instead effectively has an

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 11

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

option contract. *RCS Enters. v. United States*, 57 Fed. Cl. 590, 595 (2003) (a "true option" governed by *Leiter* is one the government can "decline to exercise" for future years).[4]

Plaintiff's view of TPP Program awards runs counter to the Anti-Deficiency Act. Plaintiff insists that HHS obligated itself in 2015 to award unappropriated funds through 2020, even though no such multi-year authority exists. The Anti-Deficiency Act prescribes, and the TPP Program grant documents promise, a "one-year contract followed by a series of government renewal options" that can be "exercised only by the government's affirmative action." *Cray Research, Inc. v. United States*, 44 Fed. Cl. 327, 332 (1999). HHS could not lawfully commit the government to "future payment of money in advance of, or in excess of, an existing appropriation." *Hercules, Inc. v. United States*, 516 U.S. 417, 427 (1996); *see also Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1449 (Fed. Cir. 1997).

Plaintiff cannot rely on statements in the Funding Announcements, *see, e.g.*, Pl.'s Br. at 5, to create a multi-year funding obligation. *See GAO Red Book*, vol. 2, ch. 6, at 6-55 ("If a 'subject to availability' clause were sufficient to permit multiyear contracting, the effect would be automatic continuation from year to year unless the government terminated," which violates the Anti-Deficiency Act). The Funding Announcements must be read in the context of other

_____

[4] *See also Sam Gray Enters. v. United States*, 250 F.3d 755 (table), 2000 WL 701733 (Fed. Cir. May 31, 2000) (rejecting five-year lease because "'[a]nnual appropriations' can be obligated only in the specified fiscal year" and plaintiff showed no appropriation for a multi-year contract); *Autonomy, Inc. v. TASC, Inc.*, No. 15-cv-505, 2015 WL 7313380, at *5 n.7 (E.D. Va. Nov. 19, 2015) (plaintiffs' claimed understanding that agency was "authorized . . . to commit the federal government to purchase . . . in advance of obtaining funds" suggests "such an understanding . . . was unreasonable as a matter of law") (citing *Leiter*, 271 U.S. at 207, and the Anti-Deficiency Act, 31 U.S.C. § 1341); *Cray Research, Inc. v. United States*, 44 Fed. Cl. 327, 333 (1999) (rejecting claim that would have "obligate[d] the CIA to make payments for all five years of the contract, so long as Congress appropriates funds each year," without having the option to renew); *Davis*, 501 F. Supp. 2d at 80.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 12

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

grant documents that explain grantees lack an entitlement to future continuation awards, and they must conform to the Anti-Deficiency Act, which bars any right to future funds unless the government affirmatively exercises its option to continue the relationship.[5]

**2. Plaintiff's Award Documents Reserve HHS's Discretion Not to Make Continuation Awards in Future Years**

Plaintiff's theory of TPP Program awards is also contrary to the terms of those awards. The TPP Program grant awards reserved HHS's discretion not to make continuation awards if HHS decides "[f]or whatever reason, continued funding would not be in the best interests of the Federal government." Jacobson Decl., Ex. B, at II-89. Plaintiff accepted these terms.

Each Notice of Award states that "[a]cceptance of the grant terms and conditions is acknowledged by the grantee when funds are drawn or otherwise obtained from the grant payment system." Gerber Decl., Exs. A, C, & J, at 1; *see also id.*, Ex. J, at 3 (reiterating same). The terms required Plaintiff to comply with "grant policy terms and conditions contained in applicable [HHS] Grant Policy Statements" and it linked to the Grants Policy Statement. *Id.* The Grants Policy Statement provides that "[a]n [operating division] may decide not to make a non-competing continuation award" if "[f]or whatever reason, continued funding would not be in the best interests of the Federal government." Jacobson Decl., Ex. B, at II-89; *id.* at I-34 ("projected levels of future support [from project periods] are contingent on . . . the continued best interests of the Federal government").

---

[5] Even if Plaintiff were correct about the grant documents' meaning (and as demonstrated below, it is not), the government cannot be bound by the acts of agents beyond the scope of their actual legal authority. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *see also Richmond*, 496 U.S. at 426. HHS is unauthorized to agree to the future award scheme Plaintiff describes.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 13

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

The Grants Policy Statement controls. Plaintiff, by accepting its award, acknowledged that HHS could, in its discretion, decline to approve a continuation award. No statute or regulation impaired HHS's authority to deny a continuation award. *See Navajo Nation v. Azar*, No. 18-cv-2253, 2018 WL 1092155, at *5 (D.D.C. Feb. 28, 2018) (applying Grants Policy Statement terms to grant dispute); *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1124 (N.D. Cal. 2014) (same). Indeed, any regulation interfering with HHS's ability to decline a continuation award would violate the Anti-Deficiency Act. Plaintiff thus asks this court to negate the express terms of its own awards, after drawing funds and thus accepting those terms.[6]

### 3. HHS Regulations Governing "Termination" Do Not Negate the Plain Terms of Plaintiff's Awards

The regulations confirm that HHS did not enter an arrangement that violates the Anti-Deficiency Act. Plaintiff seizes on the phrase "period of performance," but its brief never mentions the definition of that term. For good reason: "period of performance" is the "time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award." 45 C.F.R. § 75.2. For purposes of Plaintiff's award, "the amount of Federal funds authorized for obligation" is limited to a particular budget period. Jacobson Decl., Ex. B, at I-33. Because Plaintiff could not incur obligations beyond the year for which funds were appropriated, the period of performance for those awards was the budget period.

The regulations have a single cross-reference between "project period" and "period of performance," 45 C.F.R. § 75.2, but that cannot overcome the substantive definition of "period of performance" in the regulations. The "work authorized under the Federal award" by HHS is

---

[6] Indeed, Plaintiff's position is even further removed from the terms of its most recent grant, as Plaintiff's 2017 award explicitly declares that "[t]his award also shortens the project period to end on June 30, 2018 at the end of this budget year." Gerber Decl., Ex. J, at 1.

the one year of work authorized by the Notice of Award, and "the time during which the non-Federal entity may incur new obligations to carry out [that] work" is the "budget period," the only period for which funds are available for obligation to the grantee. A cross-reference cannot override that definition, particularly when doing so would violate the Anti-Deficiency Act.

The awards' plain terms reinforce this conclusion. The Grants Policy Statement, incorporated in each award, states that the "amount of Federal funds authorized for obligation by the recipient" are for the current budget period only. Jacobson Decl., Ex. B, at I-33. The Notice of Award accordingly "only committed [HHS] to fund[] the grant for the current budget period due to dependency upon the annual Congressional appropriations process." *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 681 (E.D. Pa. 2009). The future funding projections in the Notices of Award "[we]re not guarantees that the project [would] be funded beyond the end date of the current budget period." *Id.*

Agency practice confirms these straightforward realities. Grantees submit, and HHS approves, budgets and work plans for continuation applications year-by-year. Jacobson Decl., Ex. C, at 3. Future years of a "project period" are merely estimates of future support. Actual support is fixed only after a grantee applies and HHS approves a continuation award. Refusal of a continuation award, moreover, is treated very differently from a "termination" of grant funds already available to the grantee. Terminations are afforded enhanced due process procedures and appeal rights.[7] Plaintiff's view of its grant would displace the regulations, the parties' understanding of the law at the time, and common agency practice. It must be rejected.

---

[7] Plaintiff claims it tried unsuccessfully to "appeal" to HHS, Pl.'s Br. at 9, but no appeal rights exist when no "termination" has occurred. *See Vance-Warren*, 2008 WL 2649498, at *1.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 15

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

### 4. Neither the Impoundment Control Act Nor the Appropriations Laws Support Plaintiff's APA Claims

#### a. Plaintiff Does Not Fall Within the "Zone of Interests" Protected by the Impoundment Control Act or Appropriations Laws

Before the Court can consider Plaintiff's "impoundment" claim or any other appropriations law violation, Plaintiff must establish a cause of action under the APA. Its claim must "fall[] within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [its] complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). Plaintiff fails to meet this basic threshold. Congress enacted the Impoundment Control Act to control the federal purse, not to give private citizens a platform to second-guess spending decisions. *See Pub. Citizen v. Stockman*, 528 F. Supp. 824, 830 n.1 (D.D.C. 1981) (private groups not in the "zone of interests" of the Impoundment Control Act because it was "clearly enacted to safeguard Congress's interests, not those of private citizens"). Plaintiff accordingly has a cause of action under neither the Impoundment Control Act nor the APA.

#### b. HHS Has Not Taken "Final Agency Action" With Respect to TPP Funds

Plaintiff's impoundment and appropriations claims also fail because they challenge non-final agency action. Review under the APA is limited to "final agency action." 5 U.S.C. § 704. Agency action is "final" if (1) it "mark[s] the consummation of the agency's decisionmaking process" and is therefore not tentative or interlocutory, and (2) it determines the "rights or obligations" of the parties. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). The APA "insulates from immediate judicial review the agency's preliminary or procedural steps." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Trout Unlimited v. Lohn*, No. C05-

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 16

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

1128C, 2005 WL 3242262, at *4 (W.D. Wash. Nov. 30, 2005) (quoting *Franklin v.*

*Massachusetts*, 505 U.S. 788, 797 (1992)).

To date, neither HHS nor any Executive branch official has taken reviewable action that

could be construed as an "impoundment." HHS has merely determined that it will not make

continuation awards for FY 2108 and that funds available under the new appropriation will be

recompeted, a process in which Plaintiff would be free to participate. Kretschmaier Decl., ¶¶ 3-

5; Letter from Barbara P. Clark, Acting Assistant Secretary of Legislation, U.S. Dep't of Health

& Human Servs., to Sen. Patty Murray, Nov. 22, 2017, Jacobson Decl., Ex. F (HHS will

"continue to distribute funds in accordance with the parameters set by Congress" if the TPP

Program is refunded). HHS's activity to date reflects "preliminary or procedural steps" not

subject to judicial review. *See Glickman*, 123 F.3d at 1196.[8]

### c. HHS Complied With the 2018 Continuing Appropriations Act While In Effect, and Did Not "Impound" Funds By Doing So

Even on the merits, the claim must fail. Plaintiff relies on an unsubstantiated theory that

HHS is withholding appropriated funds under sections 101 and 103 of the 2018 Act. Pl.'s Br. at

19-20. But HHS is not withholding funds. It simply decided to recompete TPP Program funds.

Plaintiff's theory misunderstands HHS's obligations under the continuing resolutions. An

agency operating under a continuing resolution "may determine the pattern of its obligations . . .

so long as it operates under a plan which will keep it within the rate for operations limit set by

---

[8] Plaintiff's cited cases, Pl.'s Br. at 20-21, are readily distinguished. Almost all involve President Nixon's use of impoundment to "shap[e] domestic policy to his liking [by] withholding funds from various programs he did not favor." *City of New Haven v. United States*, 634 F. Supp. 1449, 1454 (D.D.C. 1986). Here, HHS has issued no final decision regarding TPP funds, let alone a *refusal*—such as occurred in Plaintiff's cited cases—to allocate appropriated funds. The only non-Nixon-era case Plaintiff cites merely analogizes to impoundment in a footnote without any substantive discussion. *See In re Aiken Cty.*, 725 F.3d 255, 261 (D.C. Cir. 2013).

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

the resolution." *GAO Red Book*, vol. 2, ch. 8, at 8-15.  Therefore, "[i]f an agency usually

obligates most of its annual budget in the first month or first quarter of the fiscal year, it may

continue that pattern." *Id.*  Here, HHS typically obligates TPP Program funds by issuing awards

in late June.  It did not need to obligate funds for the TPP Program while the continuing

resolutions were in effect because current year grantees were funded through June 2018, based

on FY 2017 appropriations.  HHS breached no obligation by observing its customary timetable.[9]

### 5. HHS's Decision Not to Issue Future Continuation Awards Is "Committed to Agency Discretion" and Unreviewable

Given that neither the agency's regulations nor the grant documents afford Plaintiff a

right to multi-year funding, the choice whether to obligate appropriated TPP Program funds on a

non-competitive basis or to recompete those funds is committed to HHS's discretion and

therefore unreviewable here.  "[U]nder § 701(a)(2) agency action is not subject to judicial review

to the extent that such action is committed to agency discretion by law." *Lincoln v. Vigil*, 508

U.S. 182, 190-91 (1993) (internal quotation marks and citation omitted).  Section 701(a)(2)

precludes review where "a court would have no meaningful standard against which to judge the

agency's exercise of discretion," including situations where the agency decision "involves a

complicated balancing of a number of factors which are peculiarly within its expertise." *Id.* at

191 (internal quotation marks and citation omitted).

---

[9] Plaintiff's theory regarding sections 101 and 103 of the 2018 Act would run afoul of other provisions.  Section 109 states that "no grants shall be awarded for such programs funded by this Act that would impinge on final funding prerogatives."  Section 110 also required that the statute be "implemented so that only the most limited funding action of that permitted in the Act shall be taken."  Obligating funds to grantees before March—when grants need not be awarded until the close of the fiscal year—would not be "the most limited funding action" possible.

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 18

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

HHS's discretion over whether to make continuation awards or recompete funds is evident from the absence of a meaningful standard by which a court could judge it. Neither the TPP Program nor regulations provide any guidance about that decision. And grantees understood that continuation awards could change if, "[f]or whatever reason, continued funding would not be in the best interests of the federal government." Jacobson Decl., Ex. B, at II-89. The absence of "law to apply" in this area indicates that it is committed to agency discretion. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971).

An agency's decision on how to spend appropriated grant funds also falls within its unique area of expertise. Section 701(a)(2) applies to an agency's decision to spend appropriated funds "as long as the agency allocates funds … to meet permissible statutory objectives" and Congress has not "put[] restrictions in the operative statutes" to prohibit particular expenditures. *Lincoln*, 508 U.S. at 193 (addressing lump-sum appropriations). Plaintiff alleges no violation of the statutory guidelines for appropriated TPP funds, but merely protests the decision not to make continuation awards. "[T]he allocation of grant funds among various eligible recipients, none of which has any statutory entitlement to them, is traditionally a matter 'committed to agency discretion by law,'" for it "shares with agency decisions not to prosecute . . . a 'general unsuitability for judicial review.'" *Cal. Human Dev. Corp. v. Brock* , 762 F.2d 1044, 1052 (D.C. Cir. 1985) (Scalia, J., concurring) (quoting *Heckler v. Chaney*, 470 U.S. 821, 823 (1985)). Unsurprisingly, courts facing similar issues have concluded that decisions regarding the award of grants or contract renewal are committed to agency discretion.[10]

---

[10]  *See Cmty. Action of Laramie Cty. v. Bowen*, 866 F.2d 347, 354 (10th Cir. 1989) ("Without manageable substantive standards against which to judge HHS' exercise of discretion, our review would amount to nothing more than an impermissible ad hoc assessment of the fairness of agency action. We are not empowered to ask whether HHS's decision was wise in the

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

The court's decision in *Alan Guttmacher Inst. v. McPherson*, 597 F. Supp. 1530 (S.D.N.Y. 1984), *aff'd*, 805 F.2d 1088 (2nd Cir. 1986), points to the appropriate result here. In *Guttmacher*, the plaintiff operated a publication funded by a grant awarded by the Agency for International Development (AID) under the Foreign Assistance Act. *Id.* at 1534. AID did not renew the grant after finding that it was "economic[ally] superfluous" and promoted "abortion as a family-planning tool"; plaintiff sued, alleging that the non-renewal violated that act. *Id.* at 1533. Like the TPP Program, the Foreign Assistance Act gave substantive guidelines for administering funds under the program, but the court nonetheless held that AID's decision was committed to agency discretion. *Id.* at 1535-36. Although the Foreign Assistance Act "might … permit a court to decide whether a project was particularly inappropriate for funding," it did not "give courts any guidance in sorting among the many projects consistent with the goals stated." *Id.* at 1536. Because "it would be virtually impossible for a court to make a determination that [plaintiff's publication] served such an important role … that its rejection by [AID] was an abuse of discretion," such decision was unreviewable under the APA. *Id.* at 1537.

The same conclusion holds for HHS's decision to recompete funds appropriated under the TPP Program. Nearly 500 applications competed for 81 grants HHS awarded from the TPP Program in its last competitive grant cycle. Kretschmaier Decl., ¶ 2. The TPP Program's

---

absence of controlling guidelines . . . . Funding determinations are 'notoriously unsuitable for judicial review.'"); *Apter v. Richardson*, 510 F.2d 351, 355 (7th Cir. 1975) ("medical merits of NIH decisions on training grants may be committed to the unreviewable discretion of the agency"); *Kletschka v. Driver*, 411 F.2d 436, 443 (2nd Cir. 1969) (not "feasible" to review V.A. decision "awarding or refusing to award research grants," which "involves a determination . . . [on] the relative merits of the many proposed research projects for which funds are sought"); *Grassetti v. Weinberger*, 408 F. Supp. 142, 150 (N.D. Cal. 1976); *accord Phila. Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, 553 F. Supp. 2d 433, 439 (E.D. Pa. 2008) (holding that the APA does not "empower[] a district court to review an agency's refusal to renew a contract or to accede to particular contract terms").

statutory authorization provides no guidance by which a court may evaluate whether HHS abused its discretion by declining to issue continuation awards in order to recompete the funds. That decision is accordingly unreviewable under the APA.

### 6. HHS's Decision Was Not Arbitrary or Capricious Under the APA

Even if HHS's decision were reviewable, Plaintiff could not establish that it was arbitrary and capricious. That standard is "highly deferential," *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007), requiring only a "rational connection between the facts found and the choices made," *Midwater Trawlers Coop. v. Dep't of Commerce*, 282 F.3d 710, 716 (9th Cir. 2002). Moreover, "the party challenging an agency's action . . . bears the burden of proof." *George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1011 (9th Cir. 2009).

HHS did not act arbitrarily or capriciously by exercising its rights under the terms of Plaintiff's grants. The Grants Policy Statement, which controls the parties' conduct, emphasized that (1) HHS carries "no legal obligation to provide funding beyond the ending date of the current budget period" and (2) future continuation awards could be denied if, "[f]or whatever reason, continued funding would not be in the best interests of the Federal government." Jacobson Decl., Ex. B, at I-34, II-89. HHS's policy concerns with the current TPP Program are a matter of public record. *See* Jacobson Decl., Exs. E-F. In accepting the funds under its grant, Plaintiff agreed that HHS had broad discretion to decline to issue continuation awards.

Carried to its logical conclusion, Plaintiff's claimed entitlement to further funding suggests that any administration could bind future administrations to fund a select set of grantees for defined projects for an untold number of years, so long as Congress appropriates the funds. That theory, if accepted, could hamstring otherwise appropriate policy adjustments. Likewise, Plaintiff identifies no basis (and there is none) why political appointees should be excluded from

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 21

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

HHS's discretionary decision-making prerogatives.  Political appointees "must remain receptive to the concerns of the politicians whose constituents are affected by their decisions[,]" *Am. Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n,* 458 F.3d 291, 303 (3d Cir. 2006), and thus political appointees carry out the policies of the administration.  Should Plaintiff wish for new political appointees and new policies at HHS, its recourse is at the polls—not in the courts.  *See Ass'n of Nat. Advertisers, Inc. v. F.T.C.,* 627 F.2d 1151, 1174-75 (D.C. Cir. 1979) (noting the importance of not "plung[ing] courts into the midst of political battles concerning the proper formulation of administrative policy" and explaining that courts "serve as guarantors of statutory and constitutional rights, but not as arbiters of the political process").

**B.  The Remaining Preliminary Injunction Factors Do Not Support Relief**

**1.  Plaintiff's Delay In Seeking Relief Undermines Its Assertion of Irreparable Harm**

Plaintiff had actual notice of its potential claim when it received its FY 2017 Notice of Award in July 2017.  Yet Plaintiff waited nearly seven months to file suit, long after accepting the grant terms by drawing down funds.  The purported justification for this delay appears to be Plaintiff's August 2017 appeal letter.  Pl.'s Br. at 9.  But Plaintiff tarried six more months before bringing suit, while maintaining that it was under no obligation to exhaust administrative appeals prior to seeking relief in court.  *See, e.g.*, Maisen Decl., Ex. A, at 3 n.1.  Even after filing suit, Plaintiff waited six more weeks to seek injunctive relief from this Court.  ECF No. 20.

This eight-month delay in seeking relief betrays a "lack of urgency and irreparable harm" that dooms Plaintiff's motion.  *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (three-month delay in filing motion for preliminary injunction "undercut [plaintiff's] claim of irreparable harm"); *Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conf. of Bldg. Officials*, 79

F.3d 1153 (table), 1996 WL 117447, at *2 (9th Cir. 1996). Plaintiff's briefing explains neither the seven-month gap between learning of HHS's decision and filing this lawsuit nor the additional six-week delay in seeking injunctive relief. This Court "may legitimately think it suspicious that the party who asks to preserve the status quo through interim relief has allowed the status quo to change through unexplained delay." *Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (internal quotations and citation omitted).

### 2. The Balance of Equities Favors HHS

Plaintiff's tardy demand for injunctive relief has created significant administrative problems for HHS. To recompete TPP Program funds and obligate them before the fiscal year ends as required by law, HHS must announce a new funding opportunity. But Plaintiff is demanding a new continuation award by June. The processing of those requests will double the workload of staff responsible for administering the TPP Program because HHS will, in effect, be administering two different TPP Programs. Kretschmaier Decl., ¶¶ 5-7. HHS is already defending TPP Program claims in three other courts, and this has created significant uncertainty regarding how TPP Program funds will be awarded in the future. *Id.*, ¶ 6.

### 3. Plaintiff's Requested Relief Will Deprive the Public of the Opportunity to Compete for TPP Program Funds

A preliminary injunction would harm the public at large in two significant ways. First, although Congress directed HHS to issue "competitive contracts and grants" using TPP Program funds, Plaintiff's eleventh-hour request for relief would tie up HHS's grant-making process and deprive the public of the opportunity to participate in a competitive grant process. Second, injunctive relief could cast significant uncertainty on agencies that use "project periods" to structure grants for projects funded through annual appropriations. Plaintiff's theory would confer a vested property interest upon all grantees with multi-year projects, subject only to each

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 23

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

grantee's compliance with the terms of their grants and appropriations by Congress to fund the work. This theory is not only contrary to controlling precedent, it would harm the public fisc by mandating ongoing funding of projects that no longer advance the government's best interests.

## II. The Court Should Dismiss, or Enter Summary Judgment On, All of Plaintiff's Claims

HHS moves to dismiss the complaint under Rule 12(b)(1) or 12(b)(6), or for summary judgment according to Rule 56. Judgment under Rule 12(b)(1) or 12(b)(6) is appropriate if, assuming the truth of all well-pleaded factual allegations in the complaint, Plaintiff has failed either to establish this Court's jurisdiction or to state a claim upon which relief can be granted. Judgment under Rule 56 is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Neither the TPP Program appropriation nor HHS's regulations guarantee Plaintiff a full five years of funding. Indeed, the grant documents provide that grantees have no enforceable legal right to funds in future project years and that HHS has the right not to issue continuation awards if "[f]or whatever reason, continued funding would not be in the best interests of the Federal government." Jacobson Decl., Ex. B, at II-89. For these reasons, and the reasons stated above in Section I of the Argument, Plaintiff's claims should be dismissed.[11]

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction and for summary judgment, grant HHS's cross-motion to dismiss or for summary judgment, and either dismiss Plaintiff's complaint with prejudice or enter judgment in favor of HHS.

---

[11] Plaintiffs are no longer pursuing Count III of their complaint, addressed to preservation of a remedy. *See* Pl.'s Br. at 13 n.5.

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

DATED: April 17, 2018.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

RUTH A. HARVEY
Director, Commercial Litigation Branch

JOEL McELVAIN
Assistant Director, Federal Programs Branch

MICHAEL J. QUINN
Senior Litigation Counsel
Commercial Litigation Branch

/s/ *Jonathan E. Jacobson*
ALICIA M. HUNT
JONATHAN E. JACOBSON
Trial Attorneys
United States Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St. NW, 10th floor
Washington, D.C. 20005
Tel: (202) 353-7971
Fax: (202) 514-9163
E-mail: Jonathan.E.Jacobson@usdoj.gov

/s/ *Michael J. Gerardi*
MICHAEL J. GERARDI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7223
Washington, D.C. 20530
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: Michael.J.Gerardi@usdoj.gov

*Attorneys for Defendants*

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 25

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

1
2
## CERTIFICATE OF SERVICE

     I hereby certify that on April 17, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                       */s/ Jonathan E. Jacobson*
                       JONATHAN E. JACOBSON

Defendants' Opposition and Cross-Motion
Case No. 2:18-CV-00242-JCC - 26

UNITED STATES DEPARTMENT OF
JUSTICE
1100 L St. NW, 10TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971