Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY, a Washington municipal
corporation,

                              Plaintiff,

        v.

ALEX M. AZAR II, in his official capacity as
SECRETARY, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES; and the
U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

                              Defendants.

No. 2:18-cv-00242-JCC

PLAINTIFF'S COMBINED REPLY IN
SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION
AND SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS'
CROSS MOTION

NOTE ON MOTION CALENDAR:
MAY 4, 2018

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

King County explained in its opening brief that HHS's decision to shorten the project period for its five-year grant to conduct a long-term randomized, control study of its FLASH curriculum, without explanation and in contravention of its own regulations, was an unlawful termination under HHS's grantmaking regulations. Under bedrock principles of administrative law, this termination must be set aside as arbitrary, capricious, and contrary to law.

In response, Defendants attempt to recast their action as something other than a termination and recast King County's suit as a demand for payment under the two remaining years of its grant. Neither assertion is correct. Defendants' claim that King County's grant had a one-year period of performance is contrary to HHS's regulations, guidance documents, and the grant award documents. And King County is not claiming an unconditional right to future funding, but merely seeking to enforce the basic Administrative Procedure Act ("APA") requirements that, having awarded King County a grant with a five-year period of performance, HHS must adhere to its regulations and engage in reasoned decisionmaking when funding the grant.

As Defendants acknowledged in a companion case, *Policy and Research, LLC v. HHS* ("*P&R*"), No. 18-cv-346 (D.D.C.), no court has ever accepted their arguments. Morse Decl. Ex. A (Tr. of Apr. 18, 2018 Mot. Hr'g in *P&R*, ECF No. 20) at 66:12-67:4 ("*P&R* Mot. Hr'g"). To the contrary, Defendants have asserted the exact same arguments in three other federal courts to defend their simultaneous termination of the 81 Teen Pregnancy Prevention Program ("TPP Program") grants. In every case, courts have rejected those arguments, vacated the terminations, and required HHS to process the grantees' year-four applications.[1] Their arguments are as meritless the fourth

---

[1] *See* Morse Decl. Ex. B (Tr. of Apr. 19, 2018 Oral Ruling in *P&R*, ECF No. 21) ("*P&R* Ruling"); Morse Decl. Ex. C (Order Granting Permanent Inj., *Planned Parenthood of Greater Wash. & N. Idaho v. HHS* ("*PPGW*"), No. 18-cv-55, ECF No. 36 (E.D. Wash. Apr. 24, 2018) ("*PPGW* Order"); Morse Decl. Ex. D (Mem. Op., *Healthy Teen Network v. Azar* ("*HTN*"), No. 18-cv-468, ECF No. 35 (D. Md. Apr. 25, 2018)) ("*HTN* Op.").

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 1
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

time as they were the first. Accordingly, the Court should grant summary judgment to King County, vacate the termination, and require HHS to process King County's year-four application in compliance with HHS's regulations.[2]

# I. ARGUMENT

## A. HHS's Decision to Terminate King County's Grant Violated HHS's Governing Regulations and the Administrative Procedure Act.

As explained in King County's opening brief, HHS awarded the County a grant with a five-year period of performance, and HHS's regulations limit terminations to specific circumstances that Defendants do not claim apply here. *See* Dkt. # 20 (Pl.'s Br.) at 6-7, 18-19; *see also* 45 C.F.R. § 75.372. Defendants argue that the period of performance is actually one year, making HHS's termination regulations inapplicable and leaving them free to "shorten[] the project period," Dkt. # 23-1 (Exs. to Gerber Decl.), Exs. A, J at 2, 52, at their whim.[3] These arguments cannot be squared with the text of HHS's governing regulations, the grant documents, or agency practice, much less the APA and caselaw that plainly subjects HHS's actions to this Court's review.

### 1. HHS awarded King County a grant with a five-year period of performance.

#### a.) Under HHS's grantmaking regulations and the terms of the grant documents, King County's grant has a five-year period of performance.

HHS has long approved grants for multi-year project periods that are funded in annual budget periods. *See, e.g., S. Mut. Help Ass'n, Inc. v. Califano*, 574 F.2d 518, 519 (D.C. Cir. 1977) (discussing a multi-year grant issued under the "Project Period System" by HHS's predecessor

---

[2] On April 20, 2018, HHS issued a Funding Opportunity Announcement ("FOA") purporting to fund new TPP Program grants. *See* Morse Decl. Ex. E. In light of this development and the Court's March 27, 2018 order (Dkt. # 19 (Min. Order) at 2) that Defendants "preserve and refrain from obligating, through August 31, 2018, any monies appropriated for the TPP Program that would fund King County's grant," the County is not advancing its Impoundment Act claim at this time, but reserves the right to do so going forward as facts surrounding the execution of the new FOA develop.

[3] All references to declaration exhibits filed before this motion use the ECF page numbers at the top of the page.

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 2
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

agency). Consistent with this longstanding practice and the language of HHS's grantmaking regulations, 45 C.F.R. part 75, HHS awarded a grant to King County for a five-year "period of performance," also called a "project period." *See* Dkt. # 21-1 (Exs. to Maisen Decl.), Ex. A at 2-4. Defendants' attempt to recast King County's award as a "one-year grant," Dkt. # 26 (Defs.' Br.) at 1, over which Defendants maintained complete and unfettered discretion, fails as a reading of HHS regulations, the grant documents, and decades of agency practice.

In fulfilling Congress's directives to award TPP Program grants for innovative teen pregnancy interventions, HHS issued a FOA for Tier 2B grant awards, specifying that the *"five-year* grant[s]" would each be "in the form of a *five-year* cooperative agreement" with a "project period . . . up to *five years*" and a "*period of performance . . . not to exceed 5 years.*" Dkt. # 21-1, Ex. A at 28, 40, 41 (capitalization altered; emphasis added). Consistent with the annual appropriations for the TPP Program, the FOA explained that the grants are "generally approved for a project period of up to five years" but are "*funded* in annual increments (budget periods)," and that grantees would be required to submit a "noncompeting application" in advance of each year of the "approved project period." Dkt. # 21-1, Ex. A at 41, 92 (emphasis added); *see also*, *e.g.*, Dkt. # 28 (Jacobson Decl.), Ex. C at 331 (recommending grantees' noncompeting continuation applications include a "work plan for the upcoming budget year (July 1 – June 30) [that] should include the long-term goal(s) that spans the life of the *five-year grant project*" (emphasis added)).

The FOAs further specified that the "budget period," unlike the "project period" and the "period of performance," was "12 months." Dkt. # 21-1, Ex. A at 42 (capitalization altered). Thus, funding "beyond the first year of the grant is generally level with the initial award amount," but is

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 3
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

contingent upon "the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds." Dkt. # 21-1, Ex. A at 41. The FOAs went on to make clear that, so structured, the work under the grant was authorized to extend for five years. For example, they set forth "expectations of grantees throughout the five-year project period," Dkt. # 21-1, Ex. A at 20; required that applicants "include a detailed work plan for the five-year project period," Dkt. # 21-1, Ex. A at 75; and provided that applicants describe how the intervention "can be replicated by others by the end of the five-year grant" and "marketed and disseminated to others interested in replication after the end of the five-year grant." Dkt. # 21-1, Ex. A at 55.

HHS's use of the terms "project period" and "period of performance" was not accidental; rather, those are defined terms under HHS's regulations. 45 C.F.R. § 75.2. "Project period" and "Period of performance" are synonyms. *Id.* ("Definitions: . . . Project period (see Period of performance).");  *see also PPGW* Order at 19:4-5 ("[T]he plain language of this regulation explains that these terms hold the same meaning."). A "termination" under HHS's regulations is defined as the "ending of a Federal award, in whole or in part, at any time prior to the planned end of [the] period of performance." 45 C.F.R. § 75.2; *see also PPGW* Order at 14:13-14 (emphasis omitted). Thus, HHS's regulations explicitly define the ending of an award prior to the planned end of the project period as a termination. *See P&R* Ruling at 13:23-14:18; *HTN* Op. at 9.

These definitions are likewise reflected in the TPP Program grant documents. HHS issued Notices of Award providing a five-year "project period" spanning from "July 1, 2015 to June 30, 2020" and a one year "budget period" from July 1 to June 30. *See, e.g.*, Dkt. # 23-1 (Exs. to Gerber Decl.), Ex. A at 2. These Notices included a schedule of quarterly and annual financial reporting for the full five years of the grant. *Id.* Along with their initial Notice of Award, King County also

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 4
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

received a letter from Evelyn Kappeler, the Director of the Office of Adolescent Health ("OAH"), stating that OAH was looking "forward to working with you over the next five years to support your project and ensure your continued success." Dkt. # 23-1, Ex. B at 16. HHS's internal documents also show that the agency viewed King County's grant as a five-year endeavor under the project period system. For example, in a May 2017 memo, Director Kappeler "[a]pproved" the annual continuation funding of the existing TPP Program grantees (a decision subsequently overridden by political appointees, *see* Dkt. # 20 at 10) for "the third year of the five-year project period." *See* Dkt. # 22-1 (Exs. to Link Decl.), Ex. C at 24-25; *see also id.* at 24 ("In FY15, OAH awarded funding through the TPP Program . . . for a five-year project period."). Thus, under HHS's regulations, the FOAs, and the terms of its grant, King County was awarded a grant with a five-year period of performance, known in HHS's parlance as a project period.

Defendants agree that the grant's "project period" was five years. Dkt. # 26 at 3. They also agree that a "termination" is the ending of a federal award before "the planned end of [the] period of performance." *Id.* at 6 (quoting 45 C.F.R. § 75.2); *see infra* § I.A.2. This should resolve the question of whether HHS's decision to "shorten[] the project period" of King County's grant, Dkt. # 23-1, Exs. A, J at 2, 52, was a "termination" under HHS's regulations. Defendants, however, maintain that the "planned . . . period of performance" for King County's grant is not the five-year "project period," but the one-year "budget period," such that the regulatory limits on "termination" apply only when grant funding is canceled within a discrete budget period. Dkt. # 26 at 6.

Defendants' argument flatly contradicts HHS's grantmaking regulations, which nowhere use the term "budget period," and, as noted above, explicitly equate "project period" and "period of performance." *See* 45 C.F.R. § 75.2. Defendants dismiss the significance of this clear regulatory

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 5
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

language as a mere "cross-reference," Dkt. # 26 at 14, but the regulatory history shows a far more considered decision. *See HTN* Op. at 9 n.6 ("This cross-reference is a recent, and considered, addition to HHS regulations."). Historically, HHS used the phrase "project period" to mean "the period established in the award document during which HHS awarding agency sponsorship begins and ends." 45 C.F.R. § 74.2 (1997), superseded by 45 C.F.R. part 75 as stated in 45 C.F.R. § 75.104(b). In 2014, HHS amended its grantmaking regulations to implement government-wide regulations known as the "Uniform Guidance." *See* Federal Awarding Agency Regulatory Implementation of Office of Management and Budget's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 79 Fed. Reg. 75871, 75872 (Dec. 19, 2014). The Uniform Guidance uses the term "period of performance" rather than "project period." *See* 2 C.F.R. § 200.77. When HHS adopted the Uniform Guidance, it included "certain amendments, based on existing HHS regulations, to supplement the guidance as needed for [HHS]"—one of which was the addition of the agency's long-preferred term, "project period," as a synonym of the Uniform Guidance's term "period of performance." 79 Fed. Reg. at 75875-76, 75896. When HHS made additional "technical amendments" to its grant regulations in 2016 to reflect "existing law or HHS policy," it did nothing to disturb the definition inserted in 2014, once again underscoring that the "project period" is the "period of performance." Health and Human Services Grants Regulation, 81 Fed. Reg. 89393, 89393-96 (Dec. 12, 2016).

Defendants do not identify a single regulation or other authority equating "budget period" with "period of performance." To the contrary, HHS's consistent practice outside of this case has been to differentiate between periods of performance and the budget periods through which they are funded. HHS has issued countless FOAs providing for one-year budget periods and multi-year

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 6
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

periods of performance, uniformly equating "period of performance" and "project period."[4] Indeed, just *one day* after arguing in its opposition brief that budget periods and periods of performance are identical, HHS issued a FOA with a "Budget Period" of 12 months but a "Period of Performance" of five years. *See* Morse Decl. Ex. H (FOA for the Nat'l Ctr. for Chronic Disease Prevention & Health Promotion) at 11-12 ("Approximate Period of Performance Length: 5 year(s) . . . Budget Period Length: 12 month(s)").[5] *See also P&R* Ruling at 17:23-18:1 ("[The TPP Program FOA], and other similar announcements, plainly demonstrate that HHS has traditionally considered the period of performance of grant-funded projects to extend for a significantly longer time than the budget period.").[6] Defendants' expedient litigation position cannot be squared with its historical practice.

Defendants have not identified a single non-litigation document that equates "budget period" to "period of performance," and they conceded in *P&R* that HHS's 2007 Grants Policy Statement ("2007 GPS") does not do so. *See P&R* Mot. Hr'g at 31:1-8. Nonetheless, they claim here that the 2007 GPS "states that the 'amount of Federal funds authorized for obligation by the recipient' are for the current budget period only." Dkt. # 26 at 15 (quoting Dkt. # 28, Ex. B at 156).

---

[4] *See, e.g.*, Morse Decl. Ex. F (FOA for Support for Expectant & Parenting Teens, Women, Fathers, & Their Families) at 54-55 ("We will fund grants in annual increments (budget periods) and generally for a project period of up to 3 years although we may approve shorter project periods. . . . Period of Performance: Not to exceed 3 years[.] Budget Period Length: 12 months[.]"); Morse Decl. Ex. G (FOA for Communities Addressing Childhood Trauma) at 4 ("OMH anticipates that awards will be funded in annual increments ranging from $325,000 to $400,000 each year for a five year period of performance.").

[5] *See also* Morse Decl. Ex. H at 9 (referring to "the five-year period of performance"); *id.* at 10 (referring to "the first year of the period of performance"); *id.* at 12 ("The total period of performance comprises the initial competitive segment and any subsequent non-competitive continuation award(s).").

[6] Even in its new TPP Program FOA, issued the day after the *P&R* Ruling, HHS did not claim that the period of performance was equal to the budget period and shorter than the project period; instead, it simply dropped the term "period of performance." *Compare* Morse Decl. Ex. E at 25 ("Project Period: Not to exceed 2 years[.] Budget Period Length: 12 months") *with* Dkt. # 21-1, Ex. A at 41-42 ("Period of Performance: Not to exceed 5 years[.] Budget Period Length: 12 months"). Suddenly dropping this phrase in the new FOA cannot erase the agency's longstanding practice of viewing "period of performance" and "project period" as one and the same.

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 7
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

In fact, the cited portion of the 2007 GPS merely requires Notices of Award to state the "[a]pproved project period and budget period start and end dates" and the "[a]mount of Federal funds authorized for obligation by the recipient." Dkt. # 28, Ex. B at 156. It does not connect the authorized funds to the definition of budget period or project period. *See also P&R* Ruling at 16:2-3 ("The Court does not see the policy statement language upon which the agency purports to rely.").

Defendants' newfound attempt to equate the "period of performance" with the "budget period," such that a multi-year project consists of several periods of performance, is also impossible to square with other portions of HHS's governing regulations and guidance. For example, 45 C.F.R. §§ 75.381 and 75.386 provide detailed "closeout" procedures for completion "at the end of the period of performance," such as liquidating obligations and refunding unobligated balances, that are not required and would make no sense at the end of each budget period. Similarly, 45 C.F.R. § 75.342(b)(1) distinguishes between "annual reports [due] before the anniversary dates of multiple year Federal awards" and the "final performance report . . . due 90 calendar days after the period of performance end date." These provisions would be nonsensical and duplicative if periods of performance were limited to one year, with grantees submitting annual reports and a "final" performance report each year. Unsurprisingly, this is not how HHS has interpreted these requirements historically or with respect to King County. *See*, *e.g.*, Dkt. # 28, Ex. B at 251-52 (requiring the "Final Financial Status Report" and "Final Progress Report" at "the end of the project period"); *see also* Dkt. # 23-1, Ex. J at 64 ("Once the project period has ended the organization is required to submit a Final Program Progress report . . . .").

Finally, as Judge Jackson explained in *P&R*, over and above the regulatory and grant text,

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 8
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

"common sense dictates that the 'budget period' and 'period of performance' are not intended to be the same thing." *P&R* Ruling at 19:8-10. The TPP Program facilitates

> grants for projects that scientific studies have previously proven to reduce the rates of teen pregnancy within communities, and it also finances research projects to develop innovative new techniques to achieve this goal. Neither of those objectives can be accomplished overnight. And it strains credulity to suggest, as HHS does here, that the agency ever intended these goals to be accomplished in a single year. For these projects to have any chance of being successful and, thus, for the agency to be a good and effective steward of the taxpayer dollars that it receives from Congress for this purpose, the period of performance . . . ha[s] to extend beyond just one year.

*Id.* at 19:12-25. In sum, common sense, HHS's regulations, the underlying grant materials, and precedent refute HHS's revisionist interpretation of its grantmaking regulations.

### b.) *King County's TPP Program grant does not violate the Antideficiency Act.*

To support their contention that King County's five-year award was simply a series of one-year grants, Defendants argue that a contrary interpretation would create an Antideficiency Act ("ADA") violation. Dkt. # 26 at 10-13. But even if one sets aside the fact that HHS has—for decades—funded public health programs through multi-year grants without a reported ADA violation, nothing in the ADA calls the grant's five-year period of performance into question.

The ADA provides, in pertinent part, that an "officer or employee of the United States Government . . . may not . . . involve [the] government in a contract or obligation for the payment of money before an appropriation is made." 31 U.S.C. § 1341(a)(1)(B). King County's grant creates no such obligation. To the contrary, as outlined above, King County's grant was structured to have multi-year performance periods but be funded in annual budget periods. As provided by the agency's regulations, the FOAs, and the Notices of Award, HHS agreed to obligate funds for each budget period only if a Congressional appropriation allowed. This is why King County was

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 9
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

required to submit a "noncompeting application" each year of the "approved project period," Dkt. # 21-1, Ex. A at 92, and why the funding for subsequent years of King County's grant is "contingent upon the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds" and subject to HHS's regulations, where the agency has expressly codified the circumstances in which it can terminate a grant before the end of the period of performance. Dkt. # 21-1, Ex. A at 41; *accord* Dkt. # 23-1, Ex. A at 2 (Notice of Award stating that "recommended future support" is "subject to the availability of funds and satisfactory progress of the project" (capitalization altered)).

Defendants, notably, muster no authority saying that this project period system contravenes the ADA. This is for good reason: King County's grant and the project period system fully comport with the rule enunciated in *Leiter v. United States*, 271 U.S. 204 (1926), where the Supreme Court invalidated a leasing contract with a government agency that purported to provide for payments after the first year out of as-yet-unappropriated funds. 271 U.S. at 207. *See PPGW* Order at 13:9-14:6 (distinguishing *Leiter* and rejecting Defendants' ADA argument). Given that the funding for each budget period of King County's award is only ever obligated from—and is conditioned on the availability of—the applicable appropriation, and must otherwise conform to HHS's regulations, the structure of the grant avoids any *Leiter* issue. *See* U.S. Gen. Accounting Office, GAO-04-261SP, Principles of Federal Appropriations Law, 5-43 (2004) ("Multiyear arrangements may be permissible, even without specific statutory authority, if they were structured in such a way that the agency, at [the] time of contract award, incurs *no financial obligation*." (emphasis added)); *see also P&R* Ruling at 18:22-19:7 (describing conditions and "further safeguard[s]" that ensure that TPP grants comply with the ADA); *HTN* Op. at 11-12 ("[T]he [ADA] only has

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 10
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

relevance if the court's interpretation would require a federal officer or employee to authorize funding beyond an existing appropriation. There is no reason to think it would.").

Defendants attempt to reframe King County's suit as a demand for payment. *See* Dkt. # 26 at 10. But the County has never argued that it has a contractual right to this funding and recognizes that HHS was not obliged to automatically fund its grant beyond the first budget year. King County demands only that having awarded a grant with a five-year period of performance, HHS adhere to the dictates of the APA and its own regulations in funding or terminating future budget years. These regulations enumerate the only valid bases for terminating a grant award prior to the end of the project period. *See* 45 C.F.R. § 75.372(a) (permitting termination by HHS for "fail[ure] to comply with the terms and conditions of the award" and "for cause"); *accord*, *e.g.*, Dkt. # 21-1, Ex. A at 3. Given that there is no dispute that King County's grant was and remains fully funded by Congress,[7] the only issue is whether HHS, having cabined its discretion, acted in accord with its regulations and engaged in reasoned decision-making. As explained below, it did not.

### 2. HHS's decision to end prematurely King County's five-year grant was a "termination" subject to 45 C.F.R. § 75.372.

In "shorten[ing] the project period to end on June 30, 2018," two years prior to the planned end of the grant in June 2020, Dkt. # 23-1, Exs. A, J at 2, 52, HHS ended Plaintiff's grant "prior to the planned end of [the] period of performance" and therefore "terminated" the grant within the meaning of its regulations. *See* 45 C.F.R. § 75.2. In an attempt to escape the plain language of

---

[7] On March 23, 2018, Congress passed the Consolidated Appropriations Act, once again mandating that "$101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy . . . ." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348. Notwithstanding this appropriation, HHS has not reinstated King County's terminated grant.

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 11
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

HHS's regulations and King County's grant, Defendants contend that the regulation simply does not apply to a "decision not to issue future continuation awards." Dkt. # 26 at 6.

HHS has made this argument before and been soundly rejected. First, in *Southern Mutual Help Association*, the D.C. Circuit considered a five-year grant awarded by HHS's predecessor agency, the Department of Health, Education, and Welfare ("HEW"), under the same "Project Period System," in which "projects are approved for multi-year support, but are funded in annual increments called budget periods" and grantees "must file annual, noncompeting applications for continued funding." 574 F.2d at 519. HEW rejected the plaintiff's application for the third budget year, taking the same position HHS does here: that despite being approved for a "five-year project," the original grant was actually "composed of five individual one year grants (and corresponding budget periods)," such that the decision not to continue the grant "did not result in the termination of [the] grant" but rather constituted a "pre-award decision related to an application for the additional grant." *Id.* at 526. The D.C. Circuit rejected the government's argument, holding "that the action taken by HEW was a termination" that was subject to the agency's regulations governing the circumstances in which a grant may be terminated. 574 F.2d at 528.[8]

Second, the exact arguments Defendants make in this case have been rejected by all three courts to consider them. *See P&R* Ruling at 13:20-21 ("HHS terminated plaintiffs' [TPP Program] grants within the meaning of the regulations."); *PPGW* Order at 28:6-7 ("Defendants' conduct was a termination and is subject to the standards found in 45 C.F.R. § 75.372 . . . ."); *HTN* Op. at 8 ("[T]he clear text of the regulations defines the challenged action as a termination."). As Judge

---

[8] Although HEW's decision not to renew the funding for the *Califano* plaintiff appears to have been performance-based, the basis for the termination was not a factor in the Court's decision.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Jackson explained in *P&R*, "[v]iewed in the light of the regulation's plain language, the termination question in this case is . . . a fairly simple one." *P&R* Ruling at 14:19-20:

> [I]t is clear beyond cavil that HHS ended plaintiffs' grant awards two years before the planned end of the project period, which is the same thing as saying the agency ended the grants two years before the planned end of the period of performance. And that is exactly what the regulations call a termination of plaintiffs' federal awards.

*Id.* at 15:5-11. That same conclusion is required here.

### 3. The termination of King County's grant was arbitrary, capricious, and contrary to law.

Defendants do not dispute that their decision to shorten the grant's project period violated the APA if it constituted a "termination" under the regulations because HHS neither adhered to the requirements of the regulation nor gave any reason at all for its actions. Indeed, in *P&R*, Defendants explicitly conceded as much. *See P&R* Mot. Hr'g at 23:10-22; 44:18-45:12. Accordingly, for the reasons stated in King County's opening motion, a decision that HHS's action was a termination resolves this case in the County's favor. *See* Dkt. # 20 at 13-19; *see also P&R* Ruling at 22:24-23:6 (finding termination arbitrary, capricious, and contrary to law); *PPGW* Order at 29:14-30:15 (finding termination arbitrary and capricious); *HTN* Op. at 13, 18 n.16 (finding termination unlawful for failure to comply with regulatory requirements; describing HHS's actions as a "paradigm case" of arbitrary and capricious decisionmaking).

### B. Defendants Cannot Defend Their Termination as a "Withholding" Under the 2007 Grants Policy Statement.

Because their actions are indefensible as terminations, Defendants argue that one sentence in the 2007 GPS allows HHS to prematurely end all TPP Program grants without explanation, analysis, or individual consideration. Defendants assert that HHS can "withhold" funds if "[f]or

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 13
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

whatever reason, continued funding would not be in the best interests of the Federal government." Dkt. # 28, Ex. B at 250. But even if, contrary to the regulations, HHS's action could be construed as a "withholding" rather than a termination, Defendants' claimed authority conflicts with its own regulations, the applicable grant language, and the APA's prohibition of arbitrary and capricious action, and cannot stand. *See Amal. Sugar Co. v. Vilsack*, 563 F.3d 822, 833 (9th Cir. 2009).

> **1. The "whatever reason" withholding authority is incompatible with 45 C.F.R. part 75 and is therefore invalid.**

An agency's informal guidance regarding the application of its regulations is only valid if it is a permissible interpretation of those regulations. *See*, *e.g.*, *id.* Indeed, the 2007 GPS itself acknowledged that "[i]n the case of a conflict, statutes and regulations take precedence over requirements . . . in the HHS GPS." Dkt. # 28, Ex. B at 163. The Notice of Award likewise provides an order of precedence in the event of conflict, prioritizing legislation and regulations over the GPS. *See* Dkt. # 23-1, Exs. A, J at 2, 52; *see also PPGW* Order at 9:4-5 ("[R]egulatory or statutory language controls over any conflicting GPS language."). Defendants' interpretation of their grantmaking regulations as providing blanket authority to withhold a continuation award "for whatever reason" is inconsistent with the regulations' carefully circumscribed system of terminations and withholding, and would render multiple provisions of that scheme superfluous. Accordingly, it cannot be sustained. *See P&R* Ruling at 16:6-9 ("[T]he Court finds no similar authority to refuse to make noncompeting continuation awards during the planned period of performance in the regulations.").

Defendants call HHS's action a "withholding," ignoring that the regulations limit withholding of funds in ways that cannot be reconciled with the asserted "whatever reason" authority. 45 C.F.R. § 75.371 authorizes HHS to "[w]ithhold further Federal awards for the project

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 14
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

or program," but only "[i]f a non-Federal entity fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award" and the awarding agency "determines that noncompliance cannot be remedied by imposing additional conditions." 45 C.F.R. § 75.371. Similarly, 45 C.F.R. § 75.207(b)(2) allows HHS to "[w]ithhold[] authority to proceed to the next phase" of a grant, but only "[w]hen an applicant or recipient has a history of failure to comply with" an award's conditions, "[w]hen an applicant or recipient fails to meet expected performance goals," "[w]hen the applicant or recipient is not otherwise responsible," or when the agency determines the applicant or recipient to be a high risk. *Id.* § 75.207(a); *see also id.* § 75.205.

The regulations thus provide HHS with authority to withhold funds only in limited situations, primarily related to noncompliance or poor performance by grantees. The authority Defendants purport to find in the 2007 GPS, to "withhold" awards "for whatever reason," would render these narrowly drawn regulations superfluous.

In interpreting regulations, courts must "construe regulations so as to give effect and meaning to each of a regulation's subsections." *Barboza v. Cal. Ass'n of Prof'l Firefighters,* 651 F.3d 1073, 1078 (9th Cir. 2011).[9] Where an agency's informal guidance renders portions of a regulation superfluous, the canon against superfluity overcomes any deference otherwise due. *See*, *e.g.*, *Caldwell v. Astrue*, No. 07-cv-222, 2008 WL 2713714, at *4 (E.D. Tenn. July 10, 2008) ("[T]he Court need not defer to an agency interpretation of a provision or a word which is contrary to its ordinary meaning nor must deference be accorded to an interpretation of a provision which

---

[9] *Accord, e.g.*, *U.S. v. Alisal Water Corp.*, 431 F.3d 643, 653 (9th Cir. 2005) ("When interpreting a regulation, we must avoid an interpretation that would render another regulation superfluous."); *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976) ("Of course, in the construction of administrative regulations, as well as statutes, it is presumed that every phrase serves a legitimate purpose and, therefore, constructions which render regulatory provisions superfluous are to be avoided.")

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 15
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

renders portions superfluous."); *see also Alaska Trojan P'ship v. Gutierrez*, 425 F.3d 620, 631 (9th Cir. 2005) (rejecting agency interpretation that is "inconsistent with the structure of the [underlying] regulations").

The regulations themselves reinforce the impropriety of Defendants' asserted withholding authority. HHS issued the current version of the governing regulations in 2014, seven years after the 2007 GPS was drafted, and amended them again in 2016. *See* 79 Fed. Reg. 75871-01; 81 Fed. Reg. 89393. Yet HHS chose not to establish the "whatever reason" authority through formal rulemaking. To the contrary, the 2014 amendments specifically superseded "all administrative requirements, program manuals, handbooks and other non-regulatory materials that are inconsistent with the requirements of [45 C.F.R. part 75]," with exceptions not applicable here. 45 C.F.R. § 75.105; *see also* Dkt. # 28, Ex. B at 113 ("The information in [the 2007 GPS] is subject to change following its issuance due to changes in . . . Title[] 45."). Where an agency amends a regulation in a way that conflicts with earlier guidance, that guidance loses any force it might have had. *Cf. Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 659 (D. Conn. 2005), *aff'd*, 464 F.3d 229 (2d Cir. 2006) ("The court cannot defer to an agency interpretation that predates relevant amendments to the statute.").

Moreover, in 2016, HHS codified into the regulations "additional changes . . . based on existing law or HHS policy," 81 Fed. Reg. at 89393—but declined to codify the 2007 GPS, much less the purported "whatever reason" power. By contrast, HHS has included a "best interest" termination option in other grant regulations.[10] HHS was well aware of its ability to codify a "best

---

[10] *See, e.g.*, 42 C.F.R. § 65.6(b) (for covered grants, continuation awards require a determination "that continued funding is in the best interest of the Federal Government"); *id.* § 65a.8(b) (same); *id.* § 51b.106(b) (same); 45 C.F.R. § 1351.14(b) (same); *id.* § 63.23(c)(3)(iii) (for covered grants, continuation awards "will be reviewed on a non-competitive basis to determine . . . [i]f continuation of the project would be in the best interests of the

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

interest" authority in regulations but chose not to do so in the general grantmaking regulations of part 75. HHS appears to have made a considered decision that the "best interest" authority should apply only to specific grant programs, so that most HHS grantees can proceed securely in the knowledge that their grants will be continued for the entire period of performance if they comply with the terms of the grant, perform adequately, and Congress continues funding the grant program. Defendants' arguments here ignore that choice and would create a scheme that has never gone through formal rulemaking and would place a cloud over nearly every public health grant in America. The regulations and well-settled rules of interpretation preclude that result.

### 2. The FOA and the Notices of Award do not incorporate the "whatever reason" provision.

Perhaps recognizing that the 2007 GPS cannot have the force of law, Defendants point to a sentence in the FOA requiring grantees to "comply with all terms and conditions outlined in their grant awards, the [2007 GPS], requirements imposed by program statutes and regulations and HHS grant administration regulations, as applicable, as well as any requirements or limitations in any applicable appropriations acts." Dkt. # 28, Ex. A at 75. Similarly, they make much of the Awards' disclaimer that grantees must "comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in applicable [HHS] Grant Policy Statements." *E.g.*, Dkt. # 23-1, Ex. A at 6. These provisions, Defendants suggest, import the entirety of the 2007 GPS, legitimizing its inconsistencies.

---

Government"); *id.* § 1336.10 (for covered grants, approval throughout project period is subject to, *inter alia*, "a determination by HHS that continued funding is in the best interest of the Government"). In similar cases, Defendants have argued that an HHS regulation providing the departmental appeals board with jurisdiction over "[a] denial of a noncompeting continuation award under the project period system of funding where the denial is for failure to comply with the terms of a previous award," 42 C.F.R. § 50.404(a)(4), would be redundant if HHS lacks the withholding authority asserted in the 2007 GPS. But the existence of these many regulations providing for different types of continuation application denials for specific grant programs belies this argument.

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 17
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

But Defendants ignore two crucial limiting portions of the two "incorporating" passages. First, the FOA and the Awards require compliance with the 2007 GPS only where "applicable." *See* Dkt. # 28, Ex. A at 75; Dkt. #23-1, Ex. A at 6. To the extent that the GPS conflicts with duly enacted regulations, of course, it is invalid and thus inapplicable. *See supra* § I.B.1. Indeed, as noted above, the Awards and even the 2007 GPS itself acknowledge the precedence of the regulations over conflicting portions of the 2007 GPS. *See*, *e.g*., Dkt. # 23-1, Ex. J at 52; Dkt. # 28, Ex. B at 163. The limited language to which Defendants point does not suggest otherwise.

Second, Defendants truncate the language of the FOA and the Awards to suggest that they constituted an "acknowledgment" of or "agreement" to the entirety of the 2007 GPS. But the references to the 2007 GPS require only that recipients "must comply with all terms and conditions" of the applicable GPS. Dkt. # 28, Ex. A at 75. They do not purport to incorporate the terms of the 2007 GPS *in toto*, but instead only require recipients to comply with the various provisions that call for recipients' compliance.[11] "Comply" means to "complete, accomplish [or] perform what is due"; it is synonymous with "obey." *See Webster's Third New International Dictionary of the English Language*, 465 (2002); *see also P&R* Mot. Hr'g at 71:9-15 ("The question is whether or not . . . you really are incorporating into the contract the terms of that policy statement that pertain to the government's actions . . . and I don't see that necessarily from the language that you read."). The "whatever reason" provision is not something for recipients to comply with; rather, it purports to define a situation in which the agency "may decide not to make a non-competing continuation award." Dkt. # 28, Ex. B at 250. Defendants' repeated insistence

---

[11] The 2007 GPS contains several such terms. *See, e.g.*, Dkt. # 28, Ex. B at 163-67 (detailing "public policy requirements" to which grantees must adhere); *id.* at 210-11 (listing actions that cannot be taken without prior approval from the awarding agency).

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 18
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

that King County "accepted" HHS's freewheeling authority to cancel grants "for whatever reason" is thus unavailing and should be rejected.

### 3. Even if the purported withholding authority applies, it does not authorize HHS's unreasoned, blanket cancellation of all grants.

#### a.) HHS did not make a finding that terminating King County's grant was in the Government's best interest or provide a reasoned explanation.

Even if the 2007 GPS controlled, it would not authorize HHS's cancellation of all grants without any reason or explanation. The 2007 GPS requires a determination that "[f]or whatever reason, continued funding would not be in the best interests of the Federal government." Dkt. # 28, Ex. B at 250. HHS made no such determination here, as shown by the complete absence of any analysis or explanation in the administrative record proffered by Defendants.

"It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *accord, e.g.*, *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008). A court "may look only to the administrative record to determine whether the agency has articulated a rational basis for its decision." *Arrington*, 516 F.3d at 1112. It may not consider a "post hoc justification, or infer 'an analysis that is not shown in the record.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 932 n.10 (9th Cir. 2008) (citation omitted). Where an agency does not cite an appropriate basis—or any basis at all—"the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The requirement that agency action be justified by an administrative record applies to grants just as it does to other forms of agency action. *See, e.g.*, *City of Kan. City v. HUD*, 923 F.2d 188, 193-94 (D.C. Cir. 1991) (refusing to accept extra-record

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 19
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

communications between agency and grantee as the basis of grant terminations, because "[t]o judge the adequacy of agency decisionmaking, we must look to the agency decisions themselves").

This rule disposes of Defendants' argument even if the "whatever reason" authority was valid. The administrative record discloses no reason, much less a finding that cancellation of King County's grant or the TPP Program writ large was in the best interest of the Federal government. *See* Dkt. # 28, Exs. A-C, G at 5-349, 362-76; *see also id.* at 1-3 ¶¶ 2-4, 8 (identifying Exs. A, B, C, and G as "part of the administrative record in this case"). All that Defendants can proffer here are a press release and a letter to Congress, which are *post hoc* rationalizations intended to tamp down public and Congressional outrage at HHS's unlawful, unexplained decisions. *See* Dkt. # 28, Exs. E-F at 355-61; *see also* Dkt. # 26 at 21 (identifying Dkt. # 28, Exs. E and F as evidence of "HHS's policy concerns"). As Defendants appear to recognize, these documents are not part of the administrative record. *See* Dkt. # 28 at 2 ¶¶ 6-7 (not identifying Exs. E or F as part of the administrative record). This absence of contemporaneous explanation is fatal to Defendants' position. As explained in *HTN*:

> HHS eventually offered public reasons for ending TPP grants early, and HHS asserts that those reasons are good reasons. They may be, but that is beside the point, because an agency may not justify action through *post hoc* rationalization. Rather, an agency must show that its decision was reasoned at the time it was made. Here, neither party asserts that HHS met this requirement. Therefore, HHS's *post hoc* public justifications for its decision cannot carry the agency's burden to provide reasons for its decisions.

*HTN* Op. at 19 (citation omitted).

Even if the proffered *post hoc* documents could be considered, they would not come close to providing a reasoned basis for HHS's action. The press release, for example, claims that there is "strong evidence of negative impact or no impact" in the first round of TPP Program grants,

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 20
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

which had expired in 2015. Dkt. # 28, Ex. G at 356. But at the time HHS issued the press release, OAH Director Kappeler, OAH's top subject matter expert, had already identified "several errors" in the analysis advanced in the press release, warning that it did not reflect "accurate data" about the TPP Program and that the evidence supporting the program's performance was "very strong." Dkt. # 22-1, Ex. K at 59; *see also* Dkt. # 20 at 16 n.6 (citing post-termination examples of HHS conceding the effectiveness of the TPP Program in general and King County's program in particular). Defendants' newly proffered basis for the terminations thus "runs counter to the evidence before the agency," and is insufficient as a matter of law. *State Farm*, 463 U.S. at 43; *see also*, *e.g.*, *Kan. City*, 923 F.2d at 194 ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decisionmaking, and cannot survive review under the arbitrary and capricious standard.").

Moreover, the rationale in the *post hoc* exhibits has no bearing on King County's grant. HHS awarded King County a grant to conduct a "five-year randomized control study" of a curriculum that was not tested or replicated in the first round of grants—"the first-ever scientifically rigorous evaluation" of the curriculum. Dkt. # 23 (Gerber Decl.) at 2, 3 ¶¶ 7, 11. HHS's decision to cut off funding "will force King County to abandon the study midstream," leaving it "unable to analyze the data already amassed to produce an assessment . . . that is scientifically valid and useful." *Id.* at 4 ¶ 14. Nothing in the press release or the letter to Congress even purports to defend prematurely cutting off ongoing research projects, much less throwing away the $3 million it had already invested in King County's scientific research.

Other documents also show that HHS did not conclude that cancelling all grants was in the public interest before doing so. In an email sent on July 7, 2017, HHS Associate Director for Policy

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Steven Valentine suggested to Chief of Staff for the Office of the Assistant Secretary of Health Valerie Huber[12] that they tell Congress that the grants were canceled because "updated project periods will allow time to review and refocus grant programs for FY 2018 without disrupting services." Morse Decl. Ex. I (HHS Emails (July 7, 2017)). This *post hoc* explanation, even if it could be accepted as the government's rationale, shows how far removed HHS's actual decision was from any conceivable determination that cancelling all 81 grants was in the government's best interest. Mr. Valentine did not say that ending the existing grants was in the "best interests of the Federal government." Dkt. # 28, Ex. B at 250. Rather, he said that "updated project periods" would "allow time to review and refocus grant programs for FY 2018 without disrupting services." Morse Decl. Ex. I. But Defendants were well aware that cutting off the grants disrupted services. *See* Dkt. # 22-1, Ex. F at 34 (acknowledging that "continuation grantees are now having to lay off staff"). HHS never found, nor even suggested, that disrupting services was in the Federal government's best interest, and its internal documents suggest it recognized that the converse was true.

Indeed, even Defendants' current litigation-driven explanation belies the idea that HHS concluded that letting funding lapse for all grantees was in the best interests of the Federal government. Defendants now claim that they have not yet decided whether to fund the current

---

[12] Defendants attack a strawman by suggesting Plaintiff would have "political appointees … excluded from" grantmaking decisions and that its "recourse is at the polls—not in the courts." Dkt. # 26 at 21-22. Plaintiff is not challenging the mere *involvement* of political appointees, but rather their failure to conduct a decision-making process that adhered to the APA. *See, e.g.*, *FCC v. Fox Tele. Stations, Inc.*, 556 U.S. 502, 549 (2009) ("[A]n agency must act consistently. The agency must follow its own rules.") (citation omitted); *Nat'l Venture Capital Ass'n v. Duke*, --- F. Supp. 3d ----, 2017 WL 5990122, at *1 (D.D.C. Dec. 1, 2017) ("Elections have consequences. But when it comes to federal agencies, the Administrative Procedure Act shapes the contours of those consequences."). Moreover, as shown by the internal documents released in the FOIA litigation, their decision-making was "not based on expertise in the particular field," *Burgin v. Office of Pers. Mgmt.*, 120 F.3d 494, 497 (4th Cir. 1997) (citation omitted); to the contrary, it contradicted the actual expert evidence before the agency. Therefore, "great deference is not required." *Id.*; *see also, e.g.*, *Perine v. William Norton & Co.*, 509 F.2d 114, 120 (2d Cir. 1974) ("[D]eference is usually justified on the basis of the agency's superior expertise in the area of its authority.").

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

grantees. *See, e.g.*, Dkt. # 26 at 17 ("HHS has merely determined that . . . funds available under the new appropriation will be recompeted, a process in which [Plaintiff] would be free to participate."). This too is inconsistent with a determination that cutting off funding to King County and other grantees was in the "best interests of the Federal government."

### b.) Courts can review "best interest" determinations.

Defendants retreat to the proposition that their discretion is absolute, arguing that grant decisions are "committed to agency discretion by law." Dkt. # 26 at 18 (discussing 5 U.S.C. § 701(a)(2)). But this is a "very narrow exception . . . applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). When in doubt, courts "adopt[] the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). Regulations and internal rules can limit agency discretion and provide judicially enforceable standards even where underlying statutes do not. *See, e.g.*, *Service v. Dulles*, 354 U.S. 363, 372 (1957) ("[R]egulations validly prescribed by a government administrator are binding upon him as well as the citizen. . . "[T]his principle holds even when the administrative action under review is discretionary in nature.").

As explained above, HHS's regulations limit its discretion to terminate grants during their period of performance. *See supra* § I.A. Numerous courts have found that such regulations provide judicially administrable standards for reviewing grant determinations, including termination decisions, under the APA. *See, e.g.*, *City of Kan. City*, 923 F.2d 188; *Cmty. Action of Laramie Cty.*,

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

*Inc. v. Bowen*, 866 F.2d 347 (10th Cir. 1989); *Califano*, 574 F.2d 518; *City of Los Angeles v. Sessions*, --- F.Supp. 3d ----, 2018 WL 1771184 (C.D. Cal. Apr. 11, 2018); *Navajo Nation v. Azar*, No. 18-0253 (DLF), 2018 WL 1512336 (D.D.C. Mar. 27, 2018).

Defendants dismiss this long line of precedent by citing cases where plaintiffs could not point to applicable standards. *See* Dkt. # 26 at 19-20 & n.10. *Lincoln v. Vigil*, 508 U.S. 182 (1993), for example, dealt with the allocation of "a lump-sum appropriation, which contained no restrictions on use of the funds, for a program not mentioned in a statute or the agency's regulations[.]" *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (describing *Lincoln*). In *Alan Guttmacher Inst. v. McPherson*, 597 F. Supp. 1530 (S.D.N.Y. 1984), the statutory authorization allowed the President to award assistance "on such terms and conditions as he may determine," an authority not subject to any relevant regulations. *Id.* at 1535 & n.1. Such cases have no bearing on the TPP Program, which is a targeted appropriation funding a specific, congressionally created program and subject to extensive grantmaking regulations. *See HTN* Op. at 14 ("[T]he relevant congressional act does impose restrictions on how HHS may distribute TPP funding, and the court has manageable standards to ensure that it acts accordingly."); *see also id.* at 16-17 (identifying statutory restrictions that provide "manageable standards").

The rest of Defendants' cases are of the same ilk. *See* Dkt. # 26 at 19-20 & n.10; *see also PPGW* Order at 23:10-25:2 (distinguishing Defendants' cases). In most of them, the court explicitly noted that there are circumstances in which grant determinations or terminations may be subject to judicial review.[13] In one instance, Defendants cite to a concurring opinion, whose

---

[13] *See Apter v. Richardson*, 510 F.2d 351, 355 (7th Cir. 1975) (noting that even if "the medical merits of NIH decisions on training grants may be committed to the unreviewable discretion of the agency . . . that does not mean that NIH actions wholly escape judicial scrutiny"); *Grassetti v. Weinberger*, 408 F. Supp. 142, 150 (N.D. Cal. 1976) ("[I]t is probable that the medical merits of agency decisions on research grant applications are committed to the

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 24
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

conclusion that a particular grant decision was committed to agency discretion by law was expressly rejected by the panel majority, which applied the "traditional requirement that if an agency decides to promulgate rules, then it is bound by its own regulations even if the action of the agency was discretionary." *Cal. Human Dev. Corp. v. Brock*, 762 F.2d 1044, 1048 n.28 (D.C. Cir. 1985). And in the only two cases that did not include such a caveat, there was no sign of any relevant regulation or statute guiding the administration of the appropriation.[14]

In any case, even if decisions such as this one are presumptively unreviewable, that presumption is rebutted here. In keeping with the narrow scope of § 701(a)(2), courts routinely review whether an agency has acted arbitrarily and capriciously in making a "best interest" finding. *See, e.g.*, *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1544 (Fed. Cir. 1996) (reviewing contract allowing government to terminate if it "determines that a termination is in the Government's interest"); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 659-60 (2003) (explaining why "the few courts holding that a 'best interest' determination is nonreviewable" are wrong and adopting the majority rule); *cf. Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 647 (9th Cir. 2010) (concluding that a determination that a proposed land exchange was in the "public interest" within the meaning of a statute was arbitrary and capricious). While a "best interest" standard may counsel deference to agencies in close cases, nothing about the standard

unreviewable discretion of the agency, subject to judicial scrutiny only where it is alleged that the agency has transgressed a constitutional guarantee or violated an express statutory *or procedural* directive." (emphasis added)); *Cmty. Action of Laramie Cty.*, 866 F.2d at 352 ("[I]f HHS discontinued financial assistance to [the grantee] without sufficient evidence to conclude that federal statutory or regulatory law had been violated, a federal court might determine the agency's action to be 'arbitrary, capricious or an abuse of discretion.'").

[14] *See Kletschka v. Driver*, 411 F.2d 436, 444 (2d Cir. 1969) (finding relief under APA unavailable "given the absence of any guidelines for the control of the V.A.'s discretion"); *Phila. Hous. Auth. v. HUD*, 553 F. Supp. 2d 433, 439 (E.D. Pa. 2008) (identifying no relevant regulations and thus finding that "the enabling statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion" (internal quotation and alteration omitted)).

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 25
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

precludes courts from evaluating whether an agency "offered an explanation for its decision that runs counter to the evidence before the agency" or "relied on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43. Moreover, even courts that have expressed doubt as to whether such a standard is susceptible to review have concluded that they can invalidate actions where the agency "failed to make any finding . . . let alone a finding that [the challenged action] would be in the best interests of the United States." *Dairy Maid Dairy, Inc. v. United States*, 837 F. Supp. 1370, 1377 n.1 (E.D. Va. 1993); *see generally Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995) ("[U]nder the APA the ultimate availability of substantive judicial review is distinct from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply."); *cf. Kan. City*, 923 F.2d at 193 ("the agency termination action remains subject to the *independent* arbitrary and capricious standard of review" (emphasis added)).

At its core, Defendants' argument is that the single phrase "[f]or whatever reason, continued funding would not be in the best interests of the Federal government" allows them to act without reason at all, and immunizes them from the basic requirement that agencies must explain their actions. If that were what HHS intended the 2007 GPS to allow, it could have simply ended the withholding language at "[f]or whatever reason." But it did not: it required a finding that HHS never made. *See HTN* Op. at 20 ("HHS ignores the second, narrowing, clause of the condition it is quoting."). Accordingly, even if the GPS provided HHS with some exercisable authority beyond what the regulations allow, HHS's unexplained fiat would not suffice to invoke it.

### C. King County Is Already Suffering Harm and Will Continue to Suffer Irreparable Harm If the Grant Termination is Allowed to Stand.

Defendants do not contest that King County is facing irreparable harm. *See* Dkt. # 20 at 11-12, 22-24; Dkt. # 23 at 4, 7 ¶¶ 14, 24; Dkt. # 21 (Maisen Decl.) at 4 ¶¶ 24-28; Dkt. # 24 (Gedeon

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 26
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Decl.) at 3 ¶¶ 14-18. Nor can they. King County will be irreparably injured if it is left without a remedy due to Defendants' refusal to process its application for the fourth year of funding in time for that funding to be disbursed. Dkt. # 20 at 22-23; Dkt. # 18 (Stip. Mot. & Agreed Order for Preservation of Remedy & Briefing Schedule) at 2 ¶ 4. Without such funding, King County cannot complete its study of the FLASH curriculum, will be forced to cut two staff positions, and cannot provide promised benefits to the participating schools. Dkt. # 23 at 7 ¶ 24; Dkt. # 21 at 4 ¶¶ 24-28.

Instead, Defendants contend that King County's "delay in seeking relief … dooms Plaintiff's motion." Dkt. # 26 at 22. They are wrong both factually and legally. *Cf. HTN* Op. at 1 n.1 (finding that plaintiffs satisfied the permanent injunction test). As a threshold matter, courts "are loath to withhold relief solely because of delay." *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (internal citations omitted); *see also PPGW* Order at 33:19-34:5 ("[T]he cases cited by Defendants do not 'doom Plaintiffs' motion.' . . . [D]elay is only one factor in the overall consideration."). Indeed, in each of Defendants' cited cases, Dkt. # 26 at 22-23, the court found that the moving party was not at risk of irreparable injury, and merely noted that the delay in seeking relief weakened the moving party's claim. This unremarkable proposition has no bearing here, where King County is incontrovertibly facing imminent irreparable harm.

More to the point, King County has not delayed in challenging Defendants' unlawful action. Quite the contrary, it is *Defendants* who have been dilatory at each pass. King County appealed the termination of its grant on August 3, 2017, but Defendants never responded. Dkt. # 21-1, Ex. A at 2-4. With no explanation forthcoming from the agency, Democracy Forward Foundation, counsel for King County in this case, filed a FOIA request with HHS on August 14, 2017 seeking information on the termination of the TPP Program grants. Dkt. # 22-1, Ex. A at 14

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 27
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

¶ 38; *id.* ¶ 39. The agency failed for three months to release any documents, forcing Democracy

Forward Foundation to file a FOIA suit on November 13, 2017. *Id.* at 17-18. Even then, HHS did

not begin releasing records until just a few weeks before King County filed this instant motion.

Dkt. # 22 (Link Decl.) at 2 ¶ 2. That production contained multiple documents concerning the

unlawfulness of the grant terminations. Dkt. # 22-1, Exs. C-M at 23-78. If anything, it is

Defendants' diligence, not King County's, that is subject to question. *See, e.g.*, *PPGW* Order at

34:13-15 ("The Court is not persuaded here that Plaintiffs unnecessarily delayed in filing this

action and motion. Plaintiffs show that they promptly challenged the action and then filed this

motion . . . ."); *see also, e.g.*, *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*,

31 F.3d 1536, 1544 (10th Cir. 1994) (court "reluctant to criticize plaintiffs for awaiting specific

and concrete documentation [pertaining to their claim]. Without such documentation, they run the

risk of having their claimed injury be deemed speculative.").

At the same time, King County also dedicated significant time and resources to pursuing

alternative sources of funding, a diversion from its organizational mission that thus far has come

up short. *See* Dkt. # 21 at 4 ¶¶ 26-27. During that time, King County's inability to mitigate its

injuries without a judicial remedy became apparent and these injuries ripened. As the Ninth Circuit

has made clear, "tardiness is not particularly probative in the context of ongoing, worsening

injuries," because "the magnitude of the potential harm becomes apparent gradually, undermining

any inference that the plaintiff was sleeping on its rights." *Arc of Cal. v. Douglas*, 757 F.3d 975,

990-91 (9th Cir. 2014) (quotation marks omitted).

Moreover, the need for the specific relief sought by King County in this motion—the

processing of its year-four application—only recently became apparent. Non-competing

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 28
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

continuation applications for King County's grant have been due each April, *see* Dkt. # 23 at 6 ¶ 22, and, only just prior to filing the instant motion did Defendants make known that the processing of King County's application was a two-month undertaking that they would not even commence until ordered by this Court to do so, *see* Dkt. # 18 at 2 ¶ 4.

But even if Defendants could point to some genuine delay, preliminary relief would still be appropriate. There is no likelihood of harm to Defendants, let alone sufficient harm to outweigh King County's undisputed injuries. *See* Dkt. # 20 at 24-25. Defendants assert that King County's "delay" "will double the workload of staff . . . because HHS will, in effect, be administering two different TPP Programs." Dkt. # 26 at 23. But it was Defendants' choice to unlawfully terminate King County's grant and recompete the TPP Program funds, making any purported "administrative problems" entirely of Defendants' own making. *See PPGW Order* at 36:15-37:1 ("Changing the *status quo* to allow Defendants to re-open competition for grant applications would put a burden on both parties. . . . These burdens can be avoided by maintaining the *status quo* and allowing the TPP Program to submit a non-compete application for funding."). It is also unclear how the relief requested by King County—the mere processing of its application—could "double the workload" of the agency, when the applications for the "recompeted" grants will not even be due until June 29, 2018. Moreover, HHS advised King County this month that "OAH project officers are stopping the scheduled monthly check-in calls" effective immediately, which underscores the minimal burden that the purported two versions of the TPP Program entail. Morse Decl. Ex. J (Email from Tara Rice to King County (Apr. 12, 2018)).

Defendants' claims of public injury are equally unconvincing. *See* Dkt. # 20 at 24; *see also PPGW Order* at 39:7 ("The Court determines that the public interest weighs in favor of Plaintiffs

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

. . . .”). Failing to address the public harm from the termination of important public health grants midstream, Defendants insist that the requested relief would "deprive the public of the opportunity to participate in a competitive grant[making] process." Dkt. # 26 at 23. Yet they do not explain why the public has an interest in duplicating a competitive grantmaking process that occurred just three years ago. And any such harm, again, is of Defendants' own making; it was their choice to award five-year grants to these 81 grantees in 2015, then to throw out those grants. The only cognizable public interests here point against Defendants, because cutting short King County's grant would waste millions of federal dollars already spent on a long-term scientific study, in favor of starting from scratch with two-year studies that could not hope to provide the same rigorous, longitudinal results. *See* Morse Decl. Ex. E (Apr. 2018 Tier 2 FOA) at 4 (proposing two-year grants). The public's interest is unquestionably in the completion of competitively awarded, rigorously designed research projects and safeguarding federal dollars appropriated to fund them.

**D.      Defendants' Motion Should Be Denied.**

For the same reasons King County's motion should be granted, Defendants' motions should be denied. Moreover, because there are no material facts are in dispute, the case is ripe for decision on the merits and the Court should decide the summary judgment motions now.

## II.  CONCLUSION

For the foregoing reasons and those stated in King County's opening brief, King County respectfully requests that the Court deny Defendants' motion, grant summary judgment to King County, and enter injunctive relief vacating the termination and requiring HHS to expeditiously process King County's year-four applications in compliance with the governing regulations.

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 30
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

DATED this 27th day of April, 2018.


PACIFICA LAW GROUP LLP

By  _s/ Athanasios P. Papailiou_
    Gregory J. Wong, WSBA #39329
    Athanasios P. Papailiou, WSBA #47591


DEMOCRACY FORWARD

Javier M. Guzman *(Admitted Pro Hac Vice)*
Josephine T. Morse *(Admitted Pro Hac Vice)*
Jeffrey B. Dubner *(Admitted Pro Hac Vice)*

*Attorneys for Plaintiff King County*

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 31
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2018, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 27th day of April, 2018.

/s/ Athanasios P. Papailiou
Athanasios P. Papailiou

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND
SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' CROSS MOTION - 32
Case No. 18-cv-00242-JCC

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750