IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY, a Washington municipal corporation, | Case No.: 2:18-CV-00242-JCC |
| Plaintiff, | DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION TO DISMISS OR FOR SUMMARY JUDGMENT |
| vs. | |
| ALEX M. AZAR II, in his official capacity as Secretary, U.S. Department of Health and Human Services; and THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | NOTE ON MOTION CALENDAR: MAY 4, 2018 |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

# REPLY BRIEF IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants' Reply
Case No. 2:18-CV-00242-JCC

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th Floor
Washington, DC 20005
(202) 353-7971

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.   Plaintiff Cannot Circumvent the Bar on Multi-Year Agreements Erected by the Anti-Deficiency Act and *Leiter* ............................................................................................ 2

    II.  Plaintiff's Theory Hinges on a "Termination" That Never Occurred ............................... 5

        A.  The Regulations Render Plaintiff's Purported Five-Year "Period of Performance" Impossible ................................................................................... 5

        B.  The Grant Awards and the Grants Policy Statement Provide HHS With Discretion to Manage TPP Program Funds ............................................................ 9

        C.  HHS's Decision Not to Renew Plaintiff's Award is Committed to Agency Discretion By Law ............................................................................................ 11

    III. Because No Grant Was "Terminated," Plaintiff's APA Claim Fails .............................. 13

CONCLUSION ................................................................................................................... 14

Defendants' Reply
Case No. 2:18-CV-00242-JCC - ii

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th Floor
Washington, DC 20005
(202) 353-7971

## INTRODUCTION

Plaintiff's sole remaining contention is that its original grant award establishes an entitlement to five years of funding, as long as Plaintiff "compl[ies] with the terms of [its] grant, perform[s] adequately, and Congress continues funding the grant program." Pl.'s Opp. at 17. But, as explained by the grant award itself, the Department of Health and Human Services (HHS) only issued one-year grants to Plaintiff subject to the possibility of continuation for a period of up to five years. The terms and conditions of the awards provide HHS with discretion to make decisions each year about whether to issue a continuation award to Plaintiff. In particular, the grant award terms provide:

> (1) "[P]rojected levels of future support . . . create *no legal obligation* to provide funding beyond the ending date of the current [one-year] budget period." Jacobson Decl., Ex. B, at I-34 (emphasis added); and
>
> (2) "[P]rojected levels of future support are contingent on . . . the continued best interests of the Federal government." *Id.*; *see also id.* at II-89 (same).

The grant award terms also specify that a decision not to renew an award is not a "termination." *Id.* at II-89. Plaintiff agreed to these terms by drawing down millions of dollars in federal funds under the program.

Despite its agreement to these express terms, Plaintiff now seeks injunctive relief that would guarantee it additional years of funding, subject only to appropriations and the propriety of its own conduct under the award. HHS, however, has no authority under the Teen Pregnancy Prevention Program (TPP Program) to commit the government to more than one year of funding at a time. The Anti-Deficiency Act bars HHS, like any other executive agency, from committing the government to obligations before Congress has made an appropriation. The Supreme Court's construction of the Anti-Deficiency Act instead requires HHS to decide *every year* whether to reaffirm and continue the obligation. As a result, the only interpretation of the applicable

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 1

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th floor
Washington, DC 20005
(202) 353-7971

regulations and of the terms and conditions of the grant, which incorporate the Grants Policy Statement, is that Plaintiff can have no cognizable entitlement to two more years of funding.

With no way to circumvent this statutory barrier, Plaintiff ignores it and focuses instead on a single regulatory cross-reference that was never intended to—and does not—override HHS's responsibility to manage taxpayer funds in the best interests of the federal government. HHS's decision to recompete the grant program is committed to its discretion by law and thus is not reviewable under § 701(a)(2) of the Administrative Procedure Act (APA). This Court should grant Defendants' cross-motion for summary judgment and dismiss this case with prejudice.

## ARGUMENT

All of Plaintiff's initial arguments have fallen by the wayside[1] but one: the sole issue left before the Court is whether HHS violated the APA by not renewing Plaintiff's grant. It did not. Congress "delegate[s] policy-making responsibilities" to an agency. *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984). Because the President is "accountable to the people," agencies operating under him are entitled to "resolv[e] the competing interests which Congress . . . intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities." *Id.* at 865-66. This is a feature of administrative law, not a flaw.

### I. Plaintiff Cannot Circumvent the Bar on Multi-Year Agreements Erected by the Anti-Deficiency Act and *Leiter*

Plaintiff's alleged "five-year" promise of project funding fails, because HHS had no authority at any time to commit the TPP Program to more than one year of funding. That is what the grant award says. That is what the Grants Policy Statement says. That is what Congress

---

[1] Plaintiff has voluntarily withdrawn its appropriations- and impoundment-based arguments, conceding that HHS has not impounded Fiscal Year (FY) 2018 appropriations for the TPP Program. *See* Pl.'s Opp. at 2 n.2. Plaintiff has also withdrawn its claim seeking equitable relief to preserve a remedy. *See* Pl.'s Init. Br. at 13 n.5.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 2

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

mandated and what the Supreme Court has held. With no multi-year authorization or appropriation for the TPP Program, the Supreme Court's decision in *Leiter v. United States*, 271 U.S. 204, 206 (1926), controls. *See* Defs.' Opp. at 10-13.

Plaintiff mistakenly tries to distinguish *Leiter* by asserting that (1) grant renewal here remains subject to annual appropriations and (2) HHS remains free to terminate the grant in compliance with its regulations. Pl.'s Opp. at 9-10. Neither condition, however, is sufficient to satisfy the Anti-Deficiency Act. First, *Leiter* also involved multi-year lease agreements─subject to annual appropriations─but the Court held that this condition did not satisfy the statute. *See Leiter*, 271 U.S. at 206-08 (leases were "'contingent upon' . . . appropriations"). "The mere inclusion of a contract provision conditioning the government's obligation on future appropriations is insufficient." *Cray Research, Inc. v. United States*, 44 Fed. Cl. 327, 332 (Fed. Cl. 1999) (citing *Leiter*); *see also* GAO Principles of Federal Appropriations Law, 3rd ed., vol. 2, ch. 6, at 6-55, GAO-06-382SP [hereinafter "GAO Red Book"][2] (3rd ed. 2015), https://www.gao.gov/ assets/210/202819.pdf. [3]

---

[2] The Congressional Budget and Impoundment Control Act of 1974 gives the Government Accountability Office (GAO) specific oversight duties on budgetary matters. *See generally* 31 U.S.C. § 1112(c). GAO publishes the *GAO Red Book* to advise the public of its views on appropriations law. "Although GAO decisions are not binding, [courts] 'give special weight to [GAO's] opinions' due to its 'accumulated experience and expertise in the field of government appropriations.'" *Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (D.C. Cir. 2005) (quoting *United Auto., Aerospace & Agric. Implement Workers v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984)); *Parola v. Weinberger*, 848 F.2d 956, 959 (9th Cir. 1988) (deferring to GAO in area where the agency has "considerable expertise").

[3] Courts that have addressed the Anti-Deficiency Act's application to the TPP Program grants have also mistakenly considered a subject-to-appropriations clause sufficient to save the agreements from scrutiny. *See* Morse Decl., Ex. B, Tr. of Apr. 19, 2018 Oral Ruling in *P&R*, ECF No. 21, at 18:22-24 (finding no Anti-Deficiency Act violation because the TPP grants "expressly provided that continued funding would be dependent upon the future availability of funds"); *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, No. 18-CV-0055-TOR, 2018 WL 1934070, at *5 ("The Funding Announcement also states that the award is 'contingent upon the availability of funds,' which ensures compliance with the ADA."). As explained above, these rulings have rested on fundamental misunderstandings of the Anti-Deficiency Act's application to multi-year agreements because they ignore that the government must have an affirmative right to renew the agreement.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 3

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

Plaintiff's "right to terminate" argument also fails. A five-year commitment (absent a specific Congressional authorization) is *ultra vires* on its face: the government must decide each year to "affirmatively continue" such an agreement. *See Leiter*, 271 U.S. at 207; *Comptroller General Warren To The Postmaster General*, 28 Comp. Gen. 553, April 1, 1949 (concluding thirty-day notice and one-day "for cause" termination provisions did not cure an Anti-Deficiency Act violation); GAO Red Book, vol. 2, ch. 6, at 6-54 ("The reservation of a right to terminate does not save the contract from the prohibition against binding the government in advance of appropriations.").

To satisfy the statute, the government must possess an *affirmative right* to renew the agreement. *See Goodyear Tire & Rubber Co. v. United States*, 276 U.S. 287, 293 (1928) ("Not having affirmatively continued the lease beyond the actual period of occupancy, the Government cannot, under the doctrine of the *Leiter* Case, be bound for a longer term."); *Leiter*, 271 U.S. at 207; *Cray*, 44 Fed. Cl. at 332 ("Each renewal option must be . . . exercised only by the government's affirmative action.").

Plaintiff's other argument under the Anti-Deficiency Act fares no better. Plaintiff suggests that HHS's "project period" imposed no funding obligation on HHS at the time of the initial award. Pl.'s Opp. at 9-11. This construction effectively concedes Defendants' central argument. If Plaintiff obtained no enforceable commitment to five-year funding when it received its initial TPP Program award in 2015, then it has no basis for this suit. HHS made no promise to fund Plaintiff for five years, and even if it did, that promise was void *ab initio*. Either way, Plaintiff's claim fails.

If Plaintiff's interpretation were adopted, it would render HHS a mere spectator in the grant administration process. Plaintiff would be *entitled* to five years of funding so long as funds

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 4

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

were appropriated and Plaintiff complied with the terms of its grant. Pl.'s Opp. at 17. HHS would have no ability to adjust its approach to grant funding based on advances in science or policy changes. To avoid this harsh and unlawful result, the Court—as detailed below—must correctly equate the "period of performance" with the one-year "budget period."

## II. Plaintiff's Theory Hinges on a "Termination" That Never Occurred

### A. The Regulations Render Plaintiff's Purported Five-Year "Period of Performance" Impossible

Plaintiff has no claim unless it can prove it had a multi-year right to funding that was "terminated." HHS's *inability* to commit to multi-year funding, as explained above, establishes that HHS did not terminate Plaintiff's grant.

The regulations, too, confirm that there was no termination. "Termination" refers to the cessation of grant funding before "the planned end of period of performance." 45 C.F.R. § 75.2. A "period of performance" is "the time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award." *Id.* The only time period in the grant documents during which a grantee can "incur new obligations" is the one-year "budget period." That is, HHS authorizes work under the award on a "budget period" basis, which means that the only "time during which the non-Federal entity may incur new obligations to carry out" that "work" is the one-year window in the grant award. *Id.* (defining "federal award" as "[t]he instrument setting forth the terms and conditions" of the grant). Future "budget periods" within a "project period" are not "authorized under the federal award" that Plaintiff received annually. The project period is just an estimate of possible future funding, subject to the agency's discretion and the availability of appropriations. Because Defendants have not ended Plaintiff's funding in the midst of a "budget period," there has been no "termination" here that would trigger the requirements of 45 C.F.R. §§ 75.372-73.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 5

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

The entire structure of the annual TPP Program award process is inconsistent with a five-year obligation. Under the initial Notice of Award, the award to the grantee is for a one-year budget period, with the possibility of funding through the five-year project period. Absent a decision to recompete the funds, each year the grantee must apply for continuing funds for the following year. *See* Jacobson Decl., Ex. B, at I-34. And, each year, HHS reviews the noncompeting continuing applications and determines whether to issue a continuing grant for the following budget year. *Id.* at II-89; *id.*, Ex. C, at 3.

Plaintiff tacitly concedes that the definition of "period of performance" from the grant documents undercuts its theory. So Plaintiff relies on the definitions of "project period" and "period of performance" from 45 C.F.R. § 75.2. Pl.'s Opp. at 4-6. Those definitions—which are cross-references, and which Plaintiff claims are synonyms—cannot mean what Plaintiff contends. If the five-year "project period" were the "period of performance," then Plaintiff could "incur new obligations to carry out the work authorized under the federal award" for the entire five-year "project period," despite only being "authorized under the federal award" for one-year "budget periods."

The definitions were not intended to materially change HHS's grant-making practices, which have been substantially the same for decades. The definitional cross-reference entered the regulations for the first time in 2014 as part of a government-wide update to implement uniform guidance published by the Office of Management and Budget. The 2014 update clarified that "[a]gencies [were] not making new policy with this interim final rule; all regulatory language included here should be consistent with either the policies in the Uniform Guidance or the agencies' *existing* policies and practices." Federal Awarding Agency Regulatory Implementation of Office of Management and Budget's Uniform Administrative Requirements,

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 6

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th floor
Washington, DC 20005
(202) 353-7971

Cost Principles, and Audit Requirements for Federal Awards, 79 Fed. Reg. 75871, 75873 (emphasis added).[4] Plaintiff's discovery of five years of guaranteed funding in the definitions is tantamount to finding an "elephant[] in [a] mousehole[]" and must be rejected. *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

The "closeout" procedures that Plaintiff cites in 45 C.F.R. §§ 75.381 and 75.386 do nothing to support its case. Pl.'s Opp. at 9. These regulations detail procedures for closing out grants, including liquidating obligations and refunding unobligated balances "at the end of the period of performance," which Plaintiff contends would "make no sense to require at the end of each budget period." *Id.* Closeout, however, is only required after "all applicable administrative actions and all required work of the Federal award have been completed." § 75.381. When HHS makes a continuation award, a new budget period starts, funds are awarded, the project continues, and closeout is unnecessary. Closeout obligations are triggered only when HHS does not make a continuation award and the current grant award—along with the time during which Plaintiff may incur award obligations—ends, with no further work to complete.[5]

HHS's decision not to make continuation awards is also consistent with 45 C.F.R. §§ 75.371 & 75.207, despite Plaintiff's argument otherwise. *See* Pl.'s Opp. at 14-15. These two regulations empower HHS to address noncompliant or problematic grantees; they do not address the renewal of continuation funding or purport to limit the circumstances under which HHS may

---

[4] *Barboza v. Cal. Ass'n of Prof'l Firefighters,* 651 F.3d 1073, 1078 (9th Cir. 2011), on which Plaintiff relies, *see* Pl.'s Opp. at 15, underscores the importance of inquiring into an agency's "stated purpose for promulgating [a] regulation." There, the Ninth Circuit looked to a regulatory preamble in evaluating the impact and meaning of a regulation. *Id.* ("[T]he Secretary's stated interpretation of [its regulation] is not only compatible with the regulation's text, it also finds support in the agency's reasons for revising the regulation.").

[5] This is why Plaintiff's Fiscal Year 2017 award required closeout at the end of the period of performance. *See* Gerber Decl., Ex. J, at 1. And this outcome is consistent with the Grants Policy Statement's proviso that closeout is due "if the grant will not be extended or after termination." Jacobson Decl., Ex. B, at II-90.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 7

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th floor
Washington, dc 20005
(202) 353-7971

withhold continuation awards. Section 75.371, titled "Remedies for Noncompliance," lists actions that an agency may take when a grantee does not adhere to "Federal statutes, regulations, or the terms and conditions of a Federal award." *Id.* In addition to suspending or terminating an award, among other options, this regulation identifies "withhold[ing] further Federal awards for the project or program" as a possible remedy for grantee noncompliance. This provision does not speak to or constrain HHS's discretion to issue or not issue a continuation award, a power specifically granted by the Grants Policy Statement.

The other section Plaintiff cites suffers from the same malady. Section 75.207 authorizes HHS to add "specific award conditions" when a grantee is noncompliant (or otherwise problematic). § 75.207(a). The regulation provides a non-exclusive list of conditions that may be imposed under such circumstances, including "[w]ithholding authority to proceed to the next phase until receipt of evidence of acceptable performance within a given period of performance." § 75.207(b)(2). Again, nothing in this section addresses the agency's discretion to renew or not renew grant funding, and it does not purport to limit the circumstances under which HHS may exercise such discretion. Because HHS's authority not to renew awards does not conflict with any regulations, the unremarkable proposition that regulations supersede conflicting policy statements—*see* Pl.'s Opp. at 13-17; *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, No. 18-CV-0055-TOR, 2018 WL 1934070, at *3, 10-11 (E.D. Wash. Apr. 24, 2018)—is irrelevant.

In reality, it is Plaintiff's unlawful construction of its grants that would disrupt the regulatory scheme. For instance, HHS's internal appeal rules distinguish between decisions to "terminate" a grant (which are always appealable) and the "denial of a noncompeting continuation award under the project period system" (which is only appealable "where the denial

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 8

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

is for failure to comply with the terms of a previous award"). 45 C.F.R. pt. 16, App'x A, at C(a)(2)-(3) (stating jurisdiction of HHS's departmental appeals board); 42 C.F.R. § 50.404(a)(1), (4) (same). Plaintiff's interpretation of "period of performance" would render the latter provision redundant because every refusal to renew a grant would be a "termination."[6]

### B. The Grant Awards and the Grants Policy Statement Provide HHS With Discretion to Manage TPP Program Funds

The grant award terms and the Grants Policy Statement provide HHS with substantial discretion in managing TPP Program awards. The Grants Policy Statement has the force of law as part of the terms and conditions of Plaintiff's cooperative agreement with HHS. *E.g.*, *Bennet v. Kentucky*, 470 U.S. 656, 663 (1985) ("The State gave certain assurances as a condition for receiving the federal funds, and if those assurances were not complied with, the Federal Government is entitled to recover amounts spent contrary to the terms of the grant agreement."). Not surprisingly, Plaintiff asserts that the Grants Policy Statement *simply does not apply*. *See* Pl.'s Opp. at 14-20. But Plaintiff consented to the Grants Policy Statement's application on three separate occasions, each time it accepted a Notice of Award. *See* Gerber Decl., Ex. A, at 5 ¶ 4, Ex. C at 4 ¶ 4 & Ex. J at 4 ¶ 1. It also drew down millions of dollars in federal funding after it was expressly advised that an acceptance of funds is an acceptance of the Grants Policy Statement.

---

[6] No court to have considered similar TPP Program claims has relied upon *S. Mut. Help Ass'n v. Califano*, 574 F.2d 518 (D.C. Cir. 1977), a 40-year old case from the D.C. Circuit that Plaintiff cites in support of its "termination" theory. Pl.'s Opp. at 2, 12, 24. That decision addressed a different set of regulations from a predecessor agency that were subsequently "clarified . . . to specifically distinguish a termination of previously awarded funds from a denial of further funding." *In re Nw. Rural Opportunities, Inc.*, DAB 324 (1982), 1982 WL 189564, at *1 & n.1 (discussing 45 C.F.R. § 74.110 (1979) and *Califano*)). The distinction between "terminations" and decisions not to offer continuing support persists in both the regulations and the Grants Policy Statement to this day. 45 C.F.R. pt. 16, App'x A, at C(a)(2)-(3); 42 C.F.R. § 50.404(a)(1), (4); Jacobson Decl., Ex. B, at I-33, I-34, II-89, II-90. Defendants also distinguished this case in detail in the District of Columbia TPP Program litigation. *See Policy & Research v. HHS*, No. 18-CV-00346 (D.D.C.), ECF No. 18, at 12-16.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 9

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

As noted above, the Grants Policy Statement provides that the "projections of future funding levels" during a "project period" "are not guarantees that the project or program will be funded or will be funded at those levels" and "create no legal obligation to provide funding beyond the ending date of the current budget period as shown in the [Notice of Award]." Jacobson Decl., Ex. B, at I-34. HHS can choose to compete a grantee's funds instead of renewing continuing support if it concludes, "[f]or *whatever reason*, continued funding would not be in the best interests of the Federal government." *Id.* at II-89 (emphasis added).[7] That choice is different from a "termination," which is treated separately in the Grants Policy Statement (*compare id.* at II-89, *with id.* at II-90) and the regulations (*compare* 45 C.F.R. pt. 16, App'x A, at C(a)(2)-(3), *with* 42 C.F.R. § 50.404(a)(1), (4)). Plaintiff agreed to these rules when it drew down the letter of credit provided by HHS.

The various funding opportunity announcements ("Funding Announcements") on which Plaintiff also relies as the source of its five-year funding, *see* Pl.'s Opp. at 3-7, 17-18, are—unlike the Grants Policy Statement—not incorporated into the Notices of Award. In fact, the Grants Policy Statement is *explicitly* incorporated into the Funding Announcements. *See, e.g.*, Link Decl., Ex. S, at 82 ("[R]ecipients must comply with . . . [the] Grants Policy Statement . . . ."). Further, the Funding Announcements, unlike the Notices of Award, created no rights. *See Crowley Marine Servs., Inc. v. Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1095 (W.D. Wash. 2014) ("The general rule in the request for bids context is that the bid itself is the offer, not the

---

[7] Plaintiff suggests that certain provisions of the Grants Policy Statement do not apply because the awards stated only that recipients must "comply" with the terms and conditions of HHS's policy guidance. Pl.'s Opp. at 17-19. By regulation, however, HHS "must include wording [in the Notice of Award] to incorporate, by reference, the applicable set of general terms and conditions. [T]he reference must be to the Web site at which the HHS awarding agency maintains the general terms and conditions." 45 C.F.R. § 75.210(b). The Notices of Award do exactly that. *See, e.g.*, Gerber Decl., Ex. A, at 5 ¶ 4 ("You must comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in [the] applicable [HHS Grants Policy Statement] . . . .").

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 10

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

request for bids."). Even if one assumes that the Funding Announcement erroneously suggested that the TPP Program offered five years of funding (and even if HHS *desired* a five-year agreement, which it did not), HHS had no authority to make such a commitment under the Anti-Deficiency Act and its own agency guidance. *See supra*, Argument Part I. Absent express authority to so bind the government, the agreement would be void. *See* Defs.' Opp. at 13 & n.5.[8]

### C. HHS's Decision Not to Renew Plaintiff's Award is Committed to Agency Discretion By Law

Because HHS has complete discretion to manage grant funds to advance the agency's public health mission and carry out Congress's stated intentions for the TPP Program, HHS was under no obligation to issue a reason for its decision to recompete the TPP grants. Determinations about "whether a particular program 'best fits the agency's overall policies'" are quintessentially unreviewable. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (internal quotation marks and citation omitted). Indeed, the court in *Policy & Research v. HHS*, No. 18-CV-346 (D.D.C.), suggested that HHS's "best interests" determination under the Grants Policy Statement would be unreviewable. *See* Morse Decl., Ex. B, Tr. of Apr. 19, 2018 Oral Ruling in *P&R*, ECF No. 21 (*P&R Ruling*), at 13:3-17.

Reviewability is a threshold issue, and must be adjudicated before the Court evaluates the sufficiency of any reasons provided. *See Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation of State of Mont.*, 792 F.2d 782, 792 (9th Cir. 1986) ("[The] issue of the procedures followed by the agency is separate from the issue whether the agency's ultimate decision on the merits is reviewable." (citation omitted)); *P&R Ruling*, at

---

[8] Plaintiff's effort to draw support from non-TPP Funding Announcements is as misguided as it is irrelevant. Pl.'s Opp. at 6-7 & nn.4-5. As Plaintiff admits in its opposition brief, "extra-record" documents should not be evaluated in an APA case. *Id.* at 19 (citing *City of Kansas City v. HUD*, 923 F.2d 188, 193-94 (D.C. Cir. 1991)). Even if such extra-record Funding Announcements were considered, they have no bearing on the TPP Funding Announcement at issue here, which expressly incorporated the Grants Policy Statement and all its terms. *See* Link Decl., Ex. S, at 82.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 11

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

9:17-19 ("[T]he Court must determine, as a threshold matter, whether the agency's action is a reviewable one under the APA before it addresses the merits of plaintiffs' APA claims."). Plaintiff's cases on the reviewability of "best interest" determinations are inapposite. *See Dairy Maid Dairy, Inc. v. United States*, 837 F. Supp. 1370 (E.D. Va. 1993), *PGBA, LLC v. United States*, 57 Fed. Cl. 655 (Fed. Cl. 2003), and *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633 (9th Cir. 2010). In *Dairy Maid*, for example, the court held that a "best interests" determination was reviewable where a statute *required* an agency to make a "written finding" that performance of a contract was "in the best interests of the United States" in order to override an automatic stay of procuring activity triggered by a bid protest. *See* 837 F. Supp. at 1377, 1379-81. In *PGBA*, the court emphasized a similar "written finding" requirement. *See* 57 Fed. Cl. at 660 ("fact that [] findings must be made in writing suggests that Congress intended further review"). And in *Biological Diversity*, the concededly reviewable Bureau of Land Management "public interest" determination required under 43 U.S.C. § 1716, *see* 623 F.3d at 647-48, called for an extraordinarily detailed series of findings. *See* § 1716(a) ("[W]hen considering public interest the Secretary concerned shall give full consideration to better Federal land management and the needs of State and local people, including needs for lands for the economy, community expansion, recreation areas, food, fiber, minerals, and fish and wildlife . . . ."). By contrast, here, neither the Grants Policy Statement nor any other applicable statute, regulation, or guidance requires a "written finding" or detailed explanation of any kind. *See* Jacobson Decl., Ex. B, at I-89. [9]

---

[9] Other cases cited by Plaintiff, Pl.'s Opp. at 21-24, similarly underscore the unreviewability of HHS's decision here. In *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995), for example, the court held, in the grant-making context, that "policy-based resource allocation issues . . . are often committed to agency discretion by law and thus insulated from judicial review." *Id.* ("[T]he court cannot say, 'if you are pursuing [controlled substance] diversion control, you really should focus your energies in x, y, and z' . . . ."); *see also City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087 (C.D. Cal. 2018) (suggesting that "best interest of the Nation" finding would be

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 12

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7ᵀᴴ FLOOR
WASHINGTON, DC 20005
(202) 353-7971

**III.     Because No Grant Was "Terminated," Plaintiff's APA Claim Fails**

With the foregoing legal questions resolved, the proper adjudication of Plaintiff's APA claim is straightforward.  Plaintiff's "arbitrary and capricious" argument takes as its premise that HHS "terminated" Plaintiff's grants.  Pl.'s Opp. at 11-13, 19-26.  But there was no "termination" in this case; Defendants merely chose not to issue further continuing support to Plaintiff (and all grantees) in order to recompete TPP Program funds.  HHS violated no statute or regulation with its decision to recompete the TPP Program at the end of the 2017-18 "budget period."  Indeed, the agency's choice to recompete is consistent with the TPP Program's statutory appropriation, which provides funds for "making competitive contracts and grants."  Pub. L. No. 115-31, 131 Stat. at 536 (2017).

Consequently, this decision is committed to agency discretion by law under 5 U.S.C. § 701(a)(2).  Defendants' opening brief demonstrates that decisions regarding the allocation of funds and selection of participants in a grant program fit squarely within this exception to APA review.  Defs.' Opp. at 18-21.  With over 500 applications for 81 grants in the last competitive grant cycle, Kretschmaier Decl., ¶ 2, and an absence of statutory or regulatory guidance for a court to employ in second-guessing HHS's allocation of funds, the agency's decision about how best to employ taxpayer funds is committed to agency discretion by law.  Accordingly, the Court

---

unreviewable).  And in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 424 (1995), "the Attorney General herself urge[d] review" of the underlying agency decision.  Finally, *Kansas City*, 923 F.2d at 193-94, on which Plaintiff repeatedly relies, Pl.'s Opp. at 19, 21, 23, never even discusses § 701(a)(2) unreviewability.  In *Kansas City*, HUD terminated a grant to Kansas City based on certain untimely evidentiary submissions.  923 F.2d at 193-94.  When it became clear during litigation that the submissions were timely, HUD changed its reason for the termination.  *Id.* at 194.  Unlike the reviewable for-cause termination in *Kansas City*, HHS's decision here is committed to agency discretion by law.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 13

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th floor
Washington, DC 20005
(202) 353-7971

lacks jurisdiction under the APA to review the dispute over Defendants' decision to recompete the grants.[10]

**CONCLUSION**

For the foregoing reasons and those in Defendants' cross-motion, the Court should grant Defendants' motion to dismiss or for summary judgment.

Dated: May 4, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

RUTH A. HARVEY
Director, Commercial Litigation Branch

JOEL McELVAIN
Assistant Branch Director, Federal Programs Branch

MICHAEL J. QUINN
Senior Litigation Counsel, Commercial Litigation Branch

/s/ *Jonathan E. Jacobson*
ALICIA M. HUNT (D.C. Bar No. 484620)
JONATHAN E. JACOBSON
Trial Attorneys
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L St. NW, 7th Floor
Washington, D.C. 20005
Tel: (202) 353-7971
Fax: (202) 514-9163
E-mail: jonathan.e.jacobson@usdoj.gov

---

[10] Alternatively, Defendants request entry of summary judgment on the administrative record because it was not "arbitrary and capricious" to choose to recompete TPP Program funds under the terms and conditions of the grant award that Plaintiff accepted by drawing down its TPP Program funds. *See* Defs.' Opp. at 21-22.

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 14

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

| | |
|---|---|
|1| /s/ *Michael J. Gerardi* |
|2| MICHAEL J. GERARDI |
| | Trial Attorney |
|3| United States Department of Justice |
| | Civil Division, Federal Programs Branch |
|4| 20 Massachusetts Ave. NW, Room 7223 |
|5| Washington, D.C. 20530 |
| | Tel: (202) 616-0680 |
|6| Fax: (202) 616-8460 |
| | E-mail: michael.j.gerardi@usdoj.gov |
|7| |
|8| *Attorneys for Defendants* |

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 15

UNITED STATES DEPARTMENT OF JUSTICE
1100 L ST. NW, 7TH FLOOR
WASHINGTON, DC 20005
(202) 353-7971

## Certificate of Service

I hereby certify that on May 4, 2018, a true and correct copy of the foregoing was served on Plaintiff via its counsel of record through the Court's Electronic Case Filing (ECF) system.

/s/ *Jonathan E. Jacobson*
Jonathan E. Jacobson

Defendants' Reply
Case No. 2:18-CV-00242-JCC - 16

UNITED STATES DEPARTMENT OF JUSTICE
1100 L St. NW, 7th Floor
Washington, DC 20005
(202) 353-7971