THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY,<br><br>                    Plaintiff,<br><br>            v.<br><br>ALEX M. AZAR, in his official capacity as<br>Secretary, U.S. Dept. of Health and Human<br>Services; and U.S. Dept. of Health and Human<br>Services,<br><br>                    Defendants. | CASE NO. C18-0242-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff King County's ("King County" or the "County") motion for a preliminary injunction and summary judgment (Dkt. No. 20) and Defendants Alex Azar and the U.S. Department of Health and Human Services' ("Defendants") cross-motion for summary judgment (Dkt. No. 26). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS King County's motion for summary judgment (Dkt. No. 20) and DENIES Defendants' cross-motion for summary judgment (Dkt. No. 26) for the reasons explained herein.

I.      BACKGROUND

A.  Factual Background

Congress established the Teen Pregnancy Prevention ("TPP") Program in 2010 "to fund

medically accurate and age appropriate programs that reduce teen pregnancy." (Dkt. No. 1 at 1, 6) (citing Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010)). The TPP Program is administered by the U.S. Department of Health and Human Services ("HHS") through its Office of Adolescent Health ("OAH"). (Dkt. No. 20 at 4.) Congress directed OAH to fund two tiers of grants[1]: Tier 1 grants to fund programs with demonstrated positive impacts on sexual behavior outcomes, and Tier 2 grants to fund development and testing of new and innovative approaches to preventing teen pregnancy. *Id.* Congress has appropriated funds for the TPP Program every year since 2010. (*Id.*) HHS awarded a first set of five-year TPP Program grants in 2010 and a second set of grants in 2015. (*Id.* at 1.)

In July 2015, King County received a Tier 2B[2] grant for a long-term study of its High School Family Life and Sexual Health ("FLASH") curriculum. (*Id.* at 7.) The initial Notice of Award ("NOA") approved a cooperative agreement with King County for a five-year "project period," funded through one-year "budget periods." (Dkt. No. 21-1 at 180.) The agreement required King County to submit a non-competing continuation application annually to obtain funds for the following budget year. (Dkt. No. 20 at 2.) The continuation applications allow HHS to ensure that federal funding has been appropriated, a project has been making satisfactory progress, and a grantee is an adequate steward of federal funds. (Dkt. Nos. 28 at 40, 21-1 at 180.) Annual continuation applications include a progress report, work plan, budget, and budget justification for the upcoming year. (Dkt. No. 22-1 at 186.) In 2016, King County's year-two continuation application was approved with commendations. (Dkt. No. 23-1 at 42–43, 49–50.)

In July 2017, HHS approved King County's continuation application for year three of the grant. (Dkt. No. 21-1 at 202.) HHS issued a Notice of Award ("NOA") allocating funds for the

---

[1] The Court uses the term "grant" synonymously with "cooperative agreement."

[2] TPP Program Tier 2B awards focus on "[increasing] the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches for preventing teen pregnancy and related high risk behaviors." (Dkt. No. 22-1 at 104–05.) The awards were issued in the form of "cooperative agreements" with OAH. (Dkt. No. 20 at 6.)

ORDER
C18-0242-JCC
PAGE - 2

ensuing budget year, but also stating that the agency was "[shortening] the project period" from June 30, 2020 to June 30, 2018. (*Id.*) This was the only notice King County received of HHS's decision shortening its grant by two years, and HHS provided no further explanation. (Dkt. No. 20 at 9.) TTP Program grants across the country were similarly summarily "shortened." (*Id.*) King County appealed HHS's action to the agency, characterizing it as a "termination" that failed to comply with HHS regulations. (Dkt. No. 21-1 at 2.) The County received no response. (Dkt. No. 20 at 9.) Despite HHS's "shortening" of TPP Program project periods to end at the close of the 2017–2018 budget period, on March 23, 2018, Congress appropriated year-four funds for the TPP Program. (Dkt. No. 21 at 2.)

King County challenges HHS's action as arbitrary and capricious and contrary to law, and the agency's refusal to process its year-four continuation application as an unlawful withholding of agency action. (Dkt. No. 20 at 13.) Defendants respond that King County had no entitlement to a five-year grant, and HHS acted within its lawful discretion. (Dkt. No. 26 at 9.)

**B. Procedural Posture**

King County moves for summary judgment on its claim that HHS's termination of its grant violated the Administrative Procedure Act ("APA") (Count I).[3] (Dkt. No. 20 at 3, 13 n. 5.) The County also requests a preliminary injunction directing HHS to process King County's year-four non-competing continuation application (Count II).[4] (*Id.*) Defendants cross move for summary judgment, seeking to dismiss the complaint. (Dkt. No. 26 at 9.) The parties' dispute is purely legal. Thus, the Court finds it appropriate to rule on the merits of King County's APA claim (Counts I & II), which moots Plaintiff's motion for an injunction. *See Healthy Teen*

---

[3] The County chose not to advance its arguments that HHS acted contrary to the Continuing Appropriations Act of 2018, the Consolidated Appropriations Act of 2017, and the Impound Control Act, in light of HHS's announcement that it would re-complete appropriated funds for FY18. (Dkt. No. 36 at n. 2.) Thus, the Court will not address these issues.

[4] Count III, based on equitable relief to preserve a remedy, has been mooted by HHS's agreement to refrain from obligating any moneys appropriated for the TPP Program through August 31, 2018. (Dkt. No. 20 at 13 n. 5.)

ORDER
C18-0242-JCC
PAGE - 3

1    *Network v. Azar*, No. C18-0468-CCB (D. Md. Apr. 25, 2018) (similarly converting the plaintiff's

2    motion for an injunction to a motion for summary judgment).

3    **II.      SUMMARY JUDGMENT UNDER THE APA**

4           The APA provides for judicial review of agency actions or any person "adversely

5    affected or aggrieved" by a "final agency action for which there is no other adequate remedy in a

6    court." 5. U.S.C. §§ 702, 704. Where questions before the Court are purely legal, the Court can

7    resolve an APA challenge on a motion for summary judgment. *See Fence Creek Cattle Co. v.*

8    *U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010.)  Federal Rule of Civil Procedure 56

9    provides that summary judgment is appropriate where the moving party "shows that there is no

10   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

11   law." Fed. R. Civ. P. 56(a). However, in APA cases, the Court's role is to determine whether, as

12   a matter of law, evidence in the administrative record supports the agency's decision. *Occidental*

13   *Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

14   **III.     DISCUSSION**

15          This matter turns, in large part, on the proper characterization of the challenged action.

16   King County contends that HHS's decision to shorten its five-year project period was a

17   premature grant "termination." (Dkt. No. 20 at 13.) HHS regulations allow for "termination" of a

18   Federal award: (1) when a grantee "fails to comply with the terms and conditions of the award,"

19   (2) "for cause," (3) with a grantee's consent, or (4) at the grantee's request. 45 C.F.R. § 75.372.

20   King County argues that HHS terminated its award without explanation and in violation of this

21   regulation, an action that was arbitrary and capricious and contrary to law. (Dkt. No. 36 at 2.)

22          In contrast, Defendants characterize HHS's action as a "withholding" of future non-

23   competing continuation awards, a decision not to issue a continuation award, or a decision to re-

24   compete appropriated TPP Program Funds. (Dkt. Nos. 26 at 2, 25; 39 at 4.) Accordingly,

25   Defendants maintain HHS's termination regulation does not apply. Instead, Defendants base

26   their arguments on language in HHS's Grant Policy Statement ("GPS") providing that the

agency may "[withhold] a non-competing continuation award" if: (1) adequate Federal funds are not available; (2) a grantee fails to show satisfactory progress; (3) a grantee fails to meet the terms and conditions of the award; or (4) "*for whatever reason*, continued funding would not be in the best interests of the Federal government." (Dkt. No. 28 at 250) (emphasis added). Defendants argue that each NOA issued to King County incorporated this standard, which provides HHS unfettered discretion to manage grant funds without judicial oversight. (Dkt. No. 39 at 3–4.)

Defendants have attempted to convince multiple courts of their position with no success.[5] For the reasons stated below, this Court reaches a similar conclusion as those courts. The Court will address threshold arguments regarding the nature of the challenged action and reviewability before reaching the merits of King County's APA claims.

### A. Termination

HHS's decision to "[shorten] the project period" constituted an award termination within the meaning of HHS regulations.

The plain language of the regulations compels this finding. HHS regulations define "termination" as "the ending of a Federal award in whole or in part at any time prior to the planned end of [the] period of performance." 5 C.F.R. § 75.2. The same section makes "period of performance" explicitly synonymous with "project period." *Id*. (cross-referencing the terms).[6] The regulations also provide that an agency "must include start and end dates of the period of

---

[5] *See Policy and Research, LLC v. HHS, et al.*, No. C18-0356-KBJ, slip op. (D.D.C. May 11, 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. C18-0055-TOR, slip op. (E.D. Wash. Apr. 24, 2018); *Healthy Teen Network v. Azar*, No. C18-0468-CCB, slip op. (D. Md. Apr. 25, 2018).

[6] Defendants minimize this cross-reference. (Dkt. No. 39 at 4.) However, it is a "recent and considered addition to HHS regulations." *Healthy Teen Network*, No. C18-0468-CCB, slip op. at 9 n. 6. HHS amended the definition of "project period" to cross-reference "period of performance" to avoid confusion from a shift in use of the terms. *Id*. (citing FAA Regulatory Implementation of OMB's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 79 Fed. Reg. 75871, 75875–75896 (Dec. 26, 2014).

performance" in the award itself. *Id*. King County's original NOA provides two start and end dates: one for the budget period and one for the project period. (Dkt. No. 21-1 at 180.) The clear text of the regulation leaves no question that the project period end date of June 30, 2020 represented the end date of the award's period of performance. Thus, HHS terminated the grant under the applicable regulations by discontinuing the award prior to the planned 2020 end date. *See Policy and Research, LLC v. HHS, et al.*, No. C18-0356-KBJ, slip op. at 13 (D.D.C. May 11, 2018); *accord Healthy Teen Network v. Azar*, No. C18-0468-CCB, slip op at 8 (D. Md. Apr. 25, 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, No. C18-0055-TOR, slip op. at 28 (E.D. Wash. Apr. 24, 2018).

Defendants argue that "period of performance" means "budget period." (Dkt. No. 26 at 13.) This interpretation is inconsistent with the definitions referenced above and the regulations' broader text. HHS regulations define "period of performance" as "the time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award." 5 C.F.R. § 75.2. Defendants argue that an award recipient may only "incur new obligations" within each budget period. (Dkt. No. 26 at 13.) But the regulations contemplate that a recipient may incur obligations beyond current budget periods, defining "obligations" as "orders placed for property and services, contracts . . . and similar transactions during a given period that require payment by the non-federal entity during the same or a *future period*." 45 C.F.R. § 75.2; *see also Healthy Teen Network*, No. C18-0468-CCB, slip op. at 9. There is no reference to the term "budget period" in the relevant regulations that would support Defendants' position. *See* 45 C.F.R. § 75.2. Furthermore, the regulations provide for "closeout" procedures for the end of a "period of performance" that are not required, and would not make sense, at the end of a budget period. *See* 5 C.F.R. §§ 75.381, 75.386. These include requirements for different reports due "before the anniversary dates of multiple year federal awards" and after the end of a performance period. *Id.* at § 75.342(b)(1). The Court must interpret regulations "to give effect and meaning to each of the regulation's subsections." *Barboza v. Cal. Ass'n of Prof'l*

1   *Firefighters*, 651 F.3d 1073, 1078 (9th Cir. 2011).

2         Indeed, agency practice undermines Defendants' position. HHS staff internally referred

3   to the challenged action as "[shortening] the *period of performance* [to] 1 year" and a reduction

4   of "the *performance period*." (Dkt. No. 22-1 at 40, 42) (emails from career HHS officials Don

5   Wright and Amy Farb on June 29 and July 2, 2017) (emphasis added). This usage is consistent

6   with other HHS grant announcements that describe periods of performance "not to exceed five

7   years," alongside budget periods of 12 months. (Dkt. No. 37-8 at 14–15.) It is clear that agency

8   practice treats periods of performance as extending beyond individual budget periods and as

9   synonymous with project periods. *See Policy and Research, LLC*, No. C18-0356-KJB, slip op. at

10  17–18.

11        In light of the clear text of the regulation and agency practice, the Court need not defer to

12  the agency's alternative interpretation advanced for the purposes of this litigation. *Christopher v.*

13  *SmithKline Beecham Corp.*, 547 U.S. 142, 155–59 (2012). The Court finds that HHS did, in fact,

14  terminate King County's grant.

15              **B. Anti-Deficiency Act**

16        Defendants argue that Plaintiff's position equating "project period" with "period of

17  performance" would create an Anti-Deficiency Act ("ADA") violation. (Dkt. No. 26 at 10–13;

18  39 at 4.) The ADA provides that "an officer or employee of the United States Government . . .

19  may not . . . involve [the] government in a contract or obligation for the payment of money

20  before an appropriation is made." 31 U.S.C. § 1341(a)(1)(B).

21        The Court finds that HHS's project period/period of performance model satisfies ADA

22  requirements. Defendant relies on *Leiter v. United States* to argue that it must have an absolute

23  right to terminate the award at the end of each budget year for the grant to comply with the ADA.

24  (Dkt. No. 26 at 18.) In *Leiter*, the Supreme Court found that a multi-year contract with a

25  government agency must be contingent on appropriation of funds and the government's

26

affirmative continuation of the agreement each year. 71 U.S. 204, 206–07 (1926).[7] The TPP

Program complies with the requirements set forth in *Leiter* by requiring grantees to apply each

year for affirmative continuation of their awards, which are contingent on available funds. (Dkt.

Nos. 21-1 at 41, 23-1 at 2.)

It is true that HHS policy and regulations limit situations in which the agency can decline

to continue an award during a grant period. (*See* Dkt. No. 21-1 at 41); 45 C.F.R. § 75.372. But

the Court does not view the agency's choice to cabin its discretion in order to best accomplish

grant objectives as contrary to the ADA. HHS has been using this form of grant-making for

many years, and Defendants point to no resulting past ADA violations. To the contrary, the

Government Accountability Office and federal courts have approved this award structure. *See* 1

U.S. Gov't Accountability Office, GAO-04-261SP, PRINCIPLES OF FEDERAL APPROPRIATIONS

LAW, 5-49–5-50 (3rd ed. 2004) (contingent multiyear awards are permissible when necessary to

accomplish objectives defined in the underlying statute); *Planned Parenthood of Greater Wash.

& N. Idaho*, No. C18-0055-TOR, slip op. at 13–14 (cooperative agreements do not obligate

unappropriated funds, but represent HHS's commitment not to act in a way that is arbitrary and

capricious or otherwise contrary to law during the project period). This structure makes sense

from a policy perspective, providing stability for science-based research projects that cannot be

completed in one year. Accordingly, the Court finds Defendants' ADA arguments unpersuasive.[8]

---

[7] *Leiter* involved a multi-year contract for a building lease contingent only on
appropriation of funds. The Government Accountability Office has suggested a more permissive
approach for grants, the case remains highly persuasive. *See* 1 U.S. Gov't Accountability Office,
GAO-04-261SP, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW, 5-49–5-50 (3rd ed. 2004).

[8] Defendants' argument relies largely on reframing King County's suit as a demand for a
guaranteed additional two years of funding. The Court rejects this premise and notes the County
asks only that "HHS adhere to the dictates of the APA and its own regulations" and allow it to
submit future continuation applications, to be reviewed in accordance with those provisions. (*See*
Dkt. Nos. 36 at 12; 39 at 3, 4.) Defendants also assert that the County's interpretation would
entitle it to appropriated funds "so long as it complied with the terms of the grant." (Dkt. No. 39
at 7.) This dramatic statement ignores HHS's ability to terminate a grant for cause, or to modify
its regulations to adopt the "best interest" standard for which Defendants advocate here.

1

### C.  Applicability of the GPS & NOA

2          Defendants also attempt to avoid agency regulations through reliance on the GPS and

3  King County's NOA. The Court finds these documents preempted by regulation and otherwise

4  factually irrelevant to the challenged action.

5          Defendants argue that the terms and conditions of the County's award, incorporated by

6  reference from the GPS, allow HHS unbridled discretion in determining each year whether to

7  "renew grant funding." (Dkt. No. 39 at 3, 10.) Defendants rely on the following statements in the

8  GPS: (1) "projected levels of future support are contingent on . . . the continued best interests of

9  the Federal government," and (2) the agency may decline to approve a continuation award if "*for*

10 *whatever reason*, continued funding would not be in the best interests of the Federal

11 government." (*Id*.; s*ee* Dkt. No. 28 at 157, 250.)

12         These terms conflict with, and are therefore superseded by, agency regulations. Page one

13 of the GPS states that the policy document applies "unless there are statutory, regulatory, or

14 award-specific requirements to the contrary." (Dkt. No. 28 at 111.) The document's terms and

15 conditions portion also explicitly states that "in the case of a conflict, statutes and regulations

16 take precedence over [GPS] requirements." (*Id*. at 163.) The controlling NOA reinforces this

17 principle, providing that in the case of inconsistent policies applicable to the grant, regulations

18 prevail over the NOA's terms and conditions. (Dkt. No. 21-1 at 180.) Finally, HHS regulations

19 explicitly supersede "all administrative requirements, program manuals, handbooks, and other

20 non-regulatory materials that are inconsistent" with their requirements. 45 C.F.R. § 75.105.[9]

21         Defendants deny any conflict between the GPS and HHS regulations. But the Court has

22 already concluded that HHS regulations regarding award termination apply to the challenged

23

24         [9] The governing regulations were issued in 2014 and amended in 2016, whereas the GPS
was drafted in 2007. *See* FAA Regulatory Implementation of OMB's Uniform Administrative
25 Requirements, Cost Principles, and Audit Requirements for Federal Awards, 79 Fed. Reg.
75871-01, 75876 (Dec. 19, 2014); (Dkt. No. 28 at 110). These amendments could have, but did
26 not, codify the GPS's asserted "best interests" standard for termination. (Dkt. No. 36 at 17–18)
(citing other HHS regulations that have done so).

1    action. *See supra* section III.A. This regulation supersedes any conflicting policy guidance on the

2    issue, regardless of whether the GPS is incorporated by the grant agreement or defines

3    "termination" differently. *See Amal. Sugar Co. v. Vilsack*, 563 F.3d 822, 833 (9th Cir. 2009)

4    (agency policy guidance that conflicts with an agency regulation is invalid and does not require

5    court deference); *accord Planned Parenthood of Greater Wash. & N. Idaho*, No. C18-0055-

6    TOR, slip op. at 9. Thus, while it is true that HHS must determine each year whether to continue

7    TPP Program grant funding, this decision must be made within the bounds of HHS's regulations.

8           Furthermore, there is no factual basis to conclude that HHS's action constituted a

9    "withholding" within the terms of the GPS. Defendants characterize HHS's action as a decision

10   not to issue a continuation award—also described in the GPS as a "withholding." (Dkt. Nos. 28

11   at 250, 39 at 10.) The GPS section addressing withholdings provides that an operating division

12   "may decide not to make a non-competing continuation award *within the current competitive*

13   *segment*" for certain reasons, including a finding that continued funding is not in the

14   government's best interest.  (Dkt. No. 28 at 250) (emphasis added). This is not what HHS did.

15   HHS made a decision about *future* awards in the context of *approving* a continuation award for

16   the current competitive segment. King County had not even submitted a non-competing

17   application for the next year. As the Court in *Policy and Research, LLC*, pointed out—there were

18   no funds for the agency to withhold at the time. No. C18-0356-KBJ, slip op. at 30.

19          **D.  Reviewability**

20          In a final effort to avoid scrutiny under the APA, Defendants argue that HHS's decision

21   to shorten the grant project period is not subject to judicial review. (Dkt. Nos. 26 at 18, 39 at 13.)

22   The APA embodies a "basic presumption of judicial review." *Abbott Labs v. Gardner*, 387 U.S.

23   136, 140 (1967). But the presumption is overcome where a challenged agency decision is

24   "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182,

25   192 (1993). This "narrow exception" applies where "a court would have no meaningful standard

26   against which to judge the agency's exercise of discretion," or where the challenged decision

1    "involves a complicated balancing of a number of factors which are peculiarly within [the

2    agency's] expertise." *Lincoln*, 508 U.S at 191 (internal quotation and citation omitted); *Newman*

3    *v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000). The Court concludes that neither exception applies.

4         Defendants first argue that HHS's decision "whether to make continuation awards or re-

5    compete funds" is committed to agency discretion because there is no meaningful standard for

6    the Court to apply. (Dkt. No. 26 at 25.) As discussed above, the challenged agency action was an

7    award termination. HHS regulations provide a clear standard against which the Court may judge

8    this action.[10] *See Cmty. Action of Laramie Cnty., Inc. v. Bowen*, 866 F.2d 347, 352 (10th Cir.

9    1989) (citing *Service v. Dulles*, 355 U.S. 363, 372 (1957) (agency regulations may provide

10   judicially administrable standards for review)); *Cal. Human Dev. Corp. v. Brock*, 762 F.2d 1044,

11   1048 n. 28 (D.C. Cir. 1985) (an agency is bound by its regulations, even if the agency action was

12   discretionary).

13        Nor does HHS's choice to shorten TPP Program awards fall into the category of

14   decisions traditionally left to agency expertise. Defendants rely on *Alan Guttmacher Inst. v.*

15   *McPherson* to argue that courts cannot review decisions not to renew grant funds. 597 F. Supp.

16   1530, 1530 (S.D.N.Y. 1984), *aff'd*, 805 F.2d 1088 (2d Cir. 1986) (declining to review an Agency

17   for International Development decision not to renew a grant funding a family planning

18   publication). The Court agrees with King County that this non-binding case is inapplicable

19   because it involved neither a "targeted appropriation" nor governing regulations limiting the

20   agency's discretion to terminate awards. (Dkt. No. 36 at 24); *see also Planned Parenthood of*

21   *Greater Washington, et al.*, No. C18-0055-TOR at 23. Additional cases Defendants cite are

22   similarly distinguishable; none involve regulations providing a manageable standard to review

23

24

25        _____

26        [10] The Court has found that these regulations supersede language found in the GPS and
     thus provide the controlling standard for this Court's review of the challenged action. Therefore,
     the Court will not address reviewability under Defendants' proposed "best interests" standard.

grant determinations or terminations.[11] (*See* Dkt. No. 26 at 26–27); *Planned Parenthood of Greater Washington, et al.*, No. C18-0055-TOR slip op. at 23 (distinguishing each of Defendants' cases on this basis).

Defendants mischaracterize the challenged action when they label it an allocation decision between various grant options. (Dkt. Nos. 26 at 33, 39 at 15.) HHS made a blanket decision to terminate TPP Program grants, refusing to even consider King County's year-four application for a continuation award. This action did not involve "weighing the technical merits of various research grants." *Planned Parenthood of Greater Washington, et al.*, No. C18-0055-TOR, slip op. at 24. Defendants' cited cases involving such decisions are inapposite. *See Kletschka v. Driver*, 411 F.2d 436, 443 (2d Cir. 1969) (decision to award/deny a grant unreviewable where it relied on review of highly technical project proposals); *Grassetti v. Weingberger*, 408 F. Supp. 142, 150 (N.D. Cal. 1976) (medical merits of grant applications unreviewable unless agency alleged to have violated a "statutory or procedural directive"). That HHS has now decided to re-compete TPP Program funds does not alter the nature of its 2017 action. It is apparent that HHS's decision to terminate King County's TPP Program grant did not involve a "complicated balancing of . . . factors . . . particularly within [HHS's] expertise." *See Lincoln*, 508 U.S. at 193. Therefore, HHS's action is reviewable.

### E.  Arbitrary and Capricious and Contrary to Law

A court reviewing agency action must "hold unlawful and set aside agency action . . . found to be . . . arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A). Although this standard is deferential, it requires at least a "logical and rational" decision-making process. *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015).

---

[11] Defendants also rely on a concurrence in *Cal. Human Dev. Corp. v. Brock*, to argue that allocation of grant funds is committed to agency discretion by law. 762 F.2d 1044, 1053 (D.C. Cir. 1985) (Scalia, J., concurring). But the majority opinion undercuts Defendants' argument, providing for judicial review based the underlying statute and agency regulations. *Id.* at 1048 n. 28.

The agency must have articulated "a satisfactory explanation for its action, including a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation and citation omitted); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2000) (an agency must "articulate a satisfactory explanation for its action"). A court must judge an agency action "solely [on] the grounds invoked by the agency" when it took the action. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

HHS failed to articulate a satisfactory explanation for its decision to shorten King County's project period. In fact, HHS never gave the County an explanation. (Dkt. Nos. 21 at 3; 21-1 at 202.) Defendants argue HHS could decline to renew funding "for whatever reason" and that "policy concerns" in the "public record" were reason enough. (Dkt. No. 26 at 29.) The Court has already found the GPS's "whatever reason" standard inapplicable to the challenged action. *See supra* section III.C. Moreover, Defendants' cited "policy concerns" are not part of the administrative record and are based on documents issued well *after* HHS shortened the grant policy period. (*See id*. at 28) (citing Dkt. No. 28 at 355, 359) (August 27, 2017 HHS "Fact Sheet" and a November 22, 2017 letter to Senator Patty Murray). As Defendants well know, the Court cannot consider *post hoc* justifications or materials outside of the administrative record. *See Chenery Corp.*, 332 U.S. at 196; *Ho-Chunck Inc v. Sessions*, 253 F. Supp. 3d 303, 307 (D.D.C. 2017). HHS's failure to articulate *any* explanation for its action, much less a reasoned one based on relevant factors, exemplifies arbitrary and capricious agency action meriting reversal.  *See State Farm*, 463 U.S. at 43; *Policy and Research*, No. C18-0356-KBJ at 13.

The APA also requires a court to set aside agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A). HHS regulations provide that unless an award recipient consents to or requests termination, HHS may terminate an award only if the recipient "[fails] to comply with the terms and conditions of the award" or for other cause. 45 C.F.R. § 75.372. It is clear that King County did not consent to or request termination. Defendants do not dispute that HHS

made no finding that the County had not complied with the terms and conditions of its grant or that another for cause basis for termination. HHS's failure to comply with its own regulations resulted in agency action contrary to law. The Court therefore must vacate the agency's unlawful decision to "shorten" the relevant project period.

Finally, the APA provides that a court "shall compel agency action unlawfully withheld." 5 U.S.C. § 706(1). HHS's decision to terminate King County's grant without following regulatory requirements was unlawful. Consequently, HHS's refusal to consider King County's future non-competing continuation applications unlawfully withheld agency action.

## IV.   CONCLUSION

For the foregoing reasons, King County's motion for summary judgment (Dkt. No. 20) is GRANTED as to Counts I and II and DENIED as moot as to Count III, its motion for a preliminary injunction is DENIED as MOOT, and Defendants' cross-motion for summary judgment (Dkt. No. 26) is DENIED.

The Court hereby VACATES HHS's decision to terminate King County's grant award and ORDERS the agency to accept and timely process the County's year-four non-competing continuation application as if HHS had not terminated King County's grant award. The application must be processed in accordance with the regulations in 45 C.F.R. section 75, as applicable to Plaintiff as a recipient of grants with five-year periods of performance beginning on July 1, 2017 and ending on June 30, 2020. HHS is ORDERED to process the application in sufficient time for any funding to be made available to King County by August 1, 2018. The Clerk is DIRECTED to close this case.

DATED this 29th day of May 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE